1   Paul R. Kiesel, State Bar No. 119854
      *kiesel@kiesel.law*
2   Helen E. Zukin, State Bar No. 117933
      *zukin@kiesel.law*
3   Jeffrey A. Koncius, State Bar No. 189803
      *koncius@kiesel.law*
4   Nicole Ramirez, State Bar No. 279017
      *ramirez@kiesel.law*
5   **KIESEL LAW LLP**
    8648 Wilshire Boulevard
6   Beverly Hills, CA 90211-2910
    Tel:   310-854-4444
7   Fax:   310-854-0812

8   Attorneys for Plaintiffs and the Proposed Classes

9   *(Additional Attorneys Listed on Signature Page)*

10                  **UNITED STATES DISTRICT COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12   PAUL STOCKINGER, ELIZABETH          Case No.: 17-cv-00035-VAP-KS
     STOCKINGER, GAILYN KENNEDY,
13   BASUDEB DEY, BRENDA FLINN,          **CLASS ACTION**
     ELIEZER CASPER, and YVETTE
14   ALLEY on behalf of themselves and all
     others similarly situated,          **FIRST AMENDED CLASS ACTION**
15                                        **COMPLAINT FOR:**
                    Plaintiffs,
16                                        (1)  Violation of the California Consumers
17          v.                                 Legal Remedies Act, Cal. Civ. Code §
                                               1750 *et seq.*;
18   TOYOTA MOTOR SALES, U.S.A.,          (2)  Violation of the California Unfair
     INC., a California corporation,           Competition Law, Cal. Bus. & Prof.
19                                             Code § 17200 *et seq.*;
                    Defendant.            (3)  Fraud;
20                                        (4)  Negligent Misrepresentation;
                                          (5)  Breach of Express Warranty;
21                                        (6)  Breach of Implied Warranty;
22                                        (7)  Violation of the Magnuson-Moss
                                               Warranty Act, 15 U.S.C. § 2301 *et
23                                             seq.*;
24                                        (8)  Violation of the Song-Beverly
                                               Consumer Warranty Act, Cal. Civ.
25                                             Code § 1791 *et seq.*;
                                          (9)  Unjust Enrichment;
26                                        (10) Violation of the Florida Unfair &
27                                             Deceptive Trade Practices Act, Fla.
                                               Stat. § 501.201 *et seq.*;
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(11) Violation of the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*;

(12) Violation of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.*;

(13) Violation of the Washington Consumer Protection Act, RCW 19.86 *et seq.*; and

(14) Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*

**DEMAND FOR JURY TRIAL**

1

## **TABLE OF CONTENTS**

2
**Page**

3    I.     INTRODUCTION.................................................................. 1

4    II.    JURISDICTION AND VENUE ........................................... 5

5    III.   PARTIES................................................................................ 6

6    IV.   FACTUAL ALLEGATIONS ............................................... 11

7          A.    The Defective HVAC System ................................. 11

8          B.    Defendant's Knowledge of the Defective HVAC System and

9                Associated Safety Hazard ....................................... 16

10               1.    NHTSA Complaints ...................................... 17

11               2.    Technical Service Bulletins.......................... 25

12   V.    TOLLING OF THE STATUTE OF LIMITATIONS AND

13         ESTOPPEL ......................................................................... 29

14   VI.   CLASS ACTION ALLEGATIONS .................................... 30

15   VII.  CLAIMS FOR RELIEF ...................................................... 35

16   VIII. PRAYER FOR RELIEF...................................................... 79

17   IX.   DEMAND FOR JURY TRIAL........................................... 80

18

19

20

21

22

23

24

25

26

27

28

1    The allegations herein are based on personal knowledge as to Plaintiffs' own
2  conduct and are made on information and belief as to all other matters based on an
3  investigation by counsel:[1]

4  **I.    INTRODUCTION**

5    1.    Plaintiffs Paul Stockinger, Elizabeth Stockinger, Gailyn Kennedy,
6  Basudeb Dey, Brenda Flinn, Eliezer Casper and Yvette Alley ("Plaintiffs") bring this
7  class action against Toyota Motor Sales, U.S.A., Inc. ("Toyota" or "Defendant"),
8  individually and on behalf of all persons or entities in the United States who
9  purchased, leased or own a Class Vehicle (defined below), for Defendant's fraud,
10  negligent misrepresentation, breach of express and implied warranties, unfair trade
11  practices, and concealment of a known defect in millions of Toyota and Lexus
12  vehicles sold in the United States.

13    2.    The affected vehicles include: 2010-2015 Toyota 4Runner, 2007-2015
14  Toyota Avalon, 2013-2015 Toyota Avalon HV, 2009-2015 Toyota Corolla, 2008-
15  2015 Toyota Highlander, 2008-2015 Toyota Highlander HV, 2008-2015 Toyota
16  Land Cruiser, 2009-2015 Toyota Matrix, 2006-2015 Toyota Prius, 2012-2015 Toyota
17  Prius C, 2010-2015 Toyota Prius PHV, 2012-2015 Toyota Prius V, 2006-2015
18  Toyota RAV4, 2008-2015 Toyota Sequoia, 2004-2015 Toyota Sienna, 2007-2015
19  Toyota Tundra, 2009-2015 Toyota Venza, 2007-2015 Toyota Yaris, 2007-2014
20  Toyota FJ Cruiser, 2013-2014 Lexus GS 350/450h, 2014 Lexus IS 250/350, 2011-
21  2014 Lexus CT 200h, 2007-2014 Lexus ES 350, 2013-2014 Lexus ES 300h, 2006-
22  2011 Lexus GS 300/350/430/450h/460, 2010-2014 Lexus GX 460, 2010-2012 Lexus
23  HS 250h, 2006-2013 Lexus IS 250/350, 2010-2014 Lexus IS 250C/350C, 2008-2014

---

[1]    Counsel's investigation includes an analysis of publicly available information, including consumer complaints to the National Highway Transportation Safety Administration, Technical Service Bulletins issued by Defendant, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

FIRST AMENDED CLASS ACTION COMPLAINT

1   Lexus IS F, 2012 Lexus LFA, 2007-2014 Lexus LS 460, 2008-2014 Lexus LS 600h,
2   2008-2014 Lexus LX 570, 2010-2014 Lexus RX 350/450h, 2006-2009 Lexus GX
3   470, 2007-2009 Lexus RX 350, and 2006-2008 Lexus RX 450h (the "Class
4   Vehicles").

5       3.    The Class Vehicles incorporate a defective Heating, Ventilation, and Air
6   Conditioning system (the "Defective HVAC System") that emits noxious and foul
7   odors into the vehicles when the Defective HVAC System is in use.  On information
8   and belief, in addition to the nuisance of being exposed to noxious and foul odors,
9   Plaintiffs and Class members (defined below) are exposed to a serious safety hazard
10   because mold and other contaminants are emitted in the air circulated through the
11   Defective HVAC System.

12       4.    This hazardous defect has resulted in numerous complaints to the
13   National Highway Transportation Safety Administration ("NHTSA") and to Toyota
14   and Lexus dealerships across the country beginning in at least 1999.   In addition,
15   Toyota and Lexus, a division of Toyota, have issued numerous Technical Service
16   Bulletins ("TSBs"), beginning in 1997, to their exclusive network of dealerships
17   acknowledging the foul and noxious odors from the Defective HVAC Systems and
18   admitting that ***there is no way to eliminate the odors***.  *See infra* pp. 25-28.

19       5.    Toyota has acknowledged the existence of the problem but has admitted
20   that it cannot fix the issue.  For example, Toyota published a course manual on air
21   conditioning and climate control in which Defendant admitted that HVAC odors "are
22   a common complaint among users," for which "there is no permanent mechanical
23   repair."[2]   According to the course manual, the odors are caused by, *inter alia*,
24   "[m]icrobes [i.e., mold] growing on the evaporator surface" including "small living
25   bacteria . . . carried into the evaporator case [that] grow in the warm, moist

26

27       [2]     *Toyota Air Conditioning and Climate Control Course 752*, TOYOTA MOTOR
28   SALES, U.S.A., INC. (2004) (the "Toyota Course Manual").

environment."[3]  Thus, consumers are sold (and forced to own) vehicles that Toyota knows will accumulate mold and/or emit foul smelling odors.

6.      According to the World Health Organization ("WHO"), "[h]ealthy indoor air is recognized as a basic right" and exposure to mold can result in allergies, asthma, respiratory issues, and immunological reactions.[4]  Thus, Plaintiffs and Class members are exposed to a serious safety hazard as a result of Defendant's wrongful conduct.

7.      The defect has also created additional safety concerns in some Class Vehicles where water that has accumulated in the HVAC System can leak onto the airbag module, illuminating the airbag warning light, disabling the airbag or causing inadvertent deployment.

8.      Despite issuing TSBs to its exclusive network of dealers as early as 1997, Defendant misrepresented the standard, quality or grade of the Class Vehicles and knowingly, actively, and affirmatively omitted and/or concealed the existence of the Defective HVAC System to increase profits by selling additional Class Vehicles. Knowledge and information regarding the Defective HVAC System and associated safety hazard was in the exclusive and superior possession of Defendant and its dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.  Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers and NHTSA, *inter alia*, Defendant was aware of the defect in the Defective HVAC System and fraudulently concealed the defect from Plaintiffs and members of the Classes.

9.      Notwithstanding this knowledge, Toyota continued selling defective vehicles, has failed to disclose the existence of the Defective HVAC System to

---

[3]      *Id.*

[4]      Elisabeth Heseltine and Jerome Rosen, *WHO Guidelines for Indoor Air Quality: Dampness and Mould*, WORLD HEALTH ORGANIZATION (2009) at XI.

1    Plaintiffs and members of the Classes, has not issued a recall, and has not remedied
2    the issue and/or compensated Class Vehicle owners for the material defect.  Rather,
3    Defendant wrongfully and intentionally concealed the defect in the Defective HVAC
4    System from Plaintiffs and members of the Classes.

5        10.    No reasonable consumer expects to purchase or lease a vehicle that
6    contains a concealed defect that causes the Defective HVAC System to emit noxious
7    and foul odors and/or emit mold and other contaminants into the Class Vehicles when
8    the system is in use. The defect is material to Plaintiffs and members of the Classes
9    because when they purchased or leased their Class Vehicles, they reasonably relied
10   on the reasonable expectation that the Class Vehicles would be free from defects and
11   would not emit foul and noxious odors and/or pose an unavoidable safety hazard.
12   Had Defendant disclosed that the Defective HVAC System was defective and would
13   emit foul and noxious odors and/or pose an unavoidable safety hazard from mold
14   growth, Plaintiffs and members of the Classes would not have purchased or leased
15   the Class Vehicles, or would have paid less for their vehicles.

16       11.    Defendant offers warranty coverage for Class Vehicles under one of the
17   following warranties: (1) Toyota New Vehicle Limited Warranty for 36 months or
18   36,000 miles which includes all components other than normal wear and maintenance
19   items; or (2) Lexus Basic Warranty for 48 months or 50,000 miles, whichever occurs
20   first, which "covers repairs and adjustments needed to correct defects in materials or
21   workmanship of any part supplied by Lexus" subject to certain exclusions.   On
22   information and belief, although Defendant has repaired certain of the Class Vehicles
23   based on consumer complaints, those repairs merely replaced air filters and/or
24   performed other measures that, according to the Toyota Course Manual and the TSBs
25   issued by Defendant, are not effective to repair the Defective HVAC System as
26   warranted.

27       12.    Plaintiffs and members of the Classes (defined below) assert claims
28   against Defendant for violation of the California Consumers Legal Remedies Act,

Cal. Civ. Code § 1750 *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, fraud, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and unjust enrichment.  Plaintiff Basudeb Dey and members of the Song-Beverly Sub-Class (defined below) assert claims for violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq*.  Plaintiff Yvette Alley and members of the Colorado Sub-Class (defined below) assert claims for violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq*.  Plaintiff Eliezer Casper and members of the Florida Sub-Class (defined below) assert claims for violation of the Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq*.  Plaintiff Brenda Flinn and members of the Kansas Sub-Class (defined below) assert claims for violation of the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq*.  Plaintiff Gailyn Kennedy and members of the Virginia Sub-Class (defined below) assert claims for violation of the Virginia Consumer Protection Act of 1977, Va. Code § 59.1-196 *et seq*.  Plaintiffs Paul and Elizabeth Stockinger and members of the Washington Sub-Class (defined below) assert claims for violation of the Washington Consumer Protection Act, RCW 19.86 *et seq*.

13.    As a direct result of Defendant's wrongful conduct, Plaintiffs and members of the Classes have been harmed and are entitled to actual damages, including damages for diagnosis, repair and/or replacement costs, damages for the diminished value of their vehicles, compensatory, statutory and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## II.    JURISDICTION AND VENUE

14.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of

FIRST AMENDED CLASS ACTION COMPLAINT

1   states different from Defendant, and greater than two-thirds of the members of the

2   Classes reside in states other than the state in which Defendant is a citizen.  This

3   Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. §

4   1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of

5   diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

6        15.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b)

7   and (c) because Defendant maintains its principal place of business in this District,

8   because a substantial part of the events or omissions giving rise to Plaintiffs' claims

9   occurred in this District, and because Defendant conducts a substantial amount of

10  business in this District.  Defendant has marketed, advertised, sold, and/or leased the

11  Class Vehicles within this District through numerous authorized dealers doing

12  business in this District, and made decisions related to advertisement, marketing,

13  sales, warranties, and recalls of vehicles under the Toyota and Lexus brand names

14  from its Torrance, California headquarters, which is located within this District.

15  Accordingly, Defendant has sufficient contacts with this District to subject Defendant

16  to personal jurisdiction in the District and venue is proper.

17  **III.   PARTIES**

18       **Plaintiffs**

19       16.    Plaintiffs Paul Stockinger and Elizabeth Stockinger (the "Stockinger

20  Plaintiffs") are citizens of the state of Washington and reside in Pullman,

21  Washington.  On or around May 24, 2015, the Stockinger Plaintiffs purchased a new

22  2015 Toyota Sienna from Toyota of Pullman in Pullman, Washington for personal,

23  family, or household purposes.  The Stockinger Plaintiffs continue to own the 2015

24  Toyota Sienna.

25       17.    Unbeknownst to the Stockinger Plaintiffs at the time of purchase, the

26  vehicle contained the Defective HVAC System, which exposes drivers and

27  passengers to noxious and foul odors and emits air which, on information and belief,

28  is filled with mold and other contaminants.  Defendant never warned the Stockinger

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs of the Defective HVAC System and corresponding safety hazard associated with their Class Vehicle.   Given the defect, the Stockinger Plaintiffs have experienced incidents where they have been exposed to noxious and foul odors emitted from the Defective HVAC System, including a "musty water" smell when the vehicle starts.  To date, Defendant has not provided the Stockinger Plaintiffs with a remedy for the defect.

18.    Plaintiff Gailyn Kennedy ("Plaintiff Kennedy") is a citizen of the state of California and resides in San Francisco, California.  On or around November 16, 2006, Plaintiff Kennedy purchased a new 2007 Lexus 350 ES from Lindsay Lexus of Alexandria in Alexandria, Virginia for personal, family, or household purposes. Plaintiff Kennedy continues to own the 2007 Lexus 350 ES.

19.    Unbeknownst to Plaintiff Kennedy at the time of purchase, the vehicle contained the Defective HVAC System, which exposes drivers and passengers to noxious and foul odors and emits air which, on information and belief, is filled with mold and other contaminants.  Defendant never warned Plaintiff Kennedy of the Defective HVAC System and corresponding safety hazard associated with their Class Vehicle.  Given the defect, Plaintiff Kennedy has experienced incidents where she has been exposed to noxious and foul odors emitted from the Defective HVAC System, and is subjected to a musty, burnt caramel smell every time she is in the vehicle.  To date, Defendant has not provided Plaintiff Kennedy with a remedy for the defect.

20.    Plaintiff Basudeb Dey ("Plaintiff Dey") is a citizen of the state of California and resides in Oakland, California.  On or around September 14, 2014, Plaintiff Dey purchased a new 2014 Toyota Prius from Toyota of Berkeley in Berkeley, California for personal, family, or household purposes.  Plaintiff Dey continues to own the 2014 Toyota Prius.

21.    Unbeknownst to Plaintiff Dey at the time of purchase, the vehicle contained the Defective HVAC System, which exposes drivers and passengers to

7    FIRST AMENDED CLASS ACTION COMPLAINT

noxious and foul odors and emits air which, on information and belief, is filled with mold and other contaminants. Defendant never warned Plaintiff Dey of the Defective HVAC System and corresponding safety hazard associated with his Class Vehicle. Given the defect, Plaintiff Dey has experienced incidents where he and occupants of his vehicle have been exposed to noxious and foul odors emitted from the Defective HVAC System. To date, Defendant has not provided Plaintiff Dey with a remedy for the defect.

22.     Plaintiff Brenda Flinn ("Plaintiff Flinn") is a citizen of the state of Missouri and resides in Raymore, Missouri. On or around July 20, 2015, Plaintiff Flinn purchased a new 2015 Toyota Rav4 from Olathe Toyota in Olathe, Kansas for personal, family, or household purposes. Plaintiff Flinn continues to own the 2015 Toyota Rav4.

23.     Unbeknownst to Plaintiff Flinn at the time of purchase, the vehicle contained the Defective HVAC System, which exposes drivers and passengers to noxious and foul odors and emits air which, on information and belief, is filled with mold and other contaminants. Defendant never warned Plaintiff Flinn of the Defective HVAC System and corresponding safety hazard associated with her Class Vehicle. To date, Defendant has not provided Plaintiff Flinn with a remedy for the defect.

24.     Plaintiff Eliezer Casper ("Plaintiff Casper") is a citizen of the state of Florida and resides in Boca Raton, Florida. On or around August 30, 2011, Plaintiff Casper purchased a new 2011 Toyota Sienna in Boca Raton, Florida for personal, family, or household purposes. Plaintiff Casper continues to own the 2011 Toyota Sienna.

25.     Unbeknownst to Plaintiff Casper at the time of purchase, the vehicle contained the Defective HVAC System, which exposes drivers and passengers to noxious and foul odors and emits air which, on information and belief, is filled with mold and other contaminants. Given the defect, occupants of Plaintiff Casper's

FIRST AMENDED CLASS ACTION COMPLAINT

vehicle have experienced incidents where they have been exposed to noxious and foul odors emitted from the Defective HVAC System, including moldy smells. Defendant never warned Plaintiff Casper of the Defective HVAC System and corresponding safety hazard associated with his Class Vehicle.  To date, Defendant has not provided Plaintiff Casper with a remedy for the defect.

26.    Plaintiff Yvette Alley ("Plaintiff Alley") is a citizen of the state of Colorado and resides in Lakewood, Colorado.  On or around June 26, 2008, Plaintiff Alley purchased a new 2009 Toyota Corolla from Fiesta Toyota Dealership in Oklahoma for personal, family, or household purposes.  Plaintiff Alley continues to own the 2009 Toyota Corolla.

27.    Unbeknownst to Plaintiff Alley at the time of purchase, the vehicle contained the Defective HVAC System, which exposes drivers and passengers to noxious and foul odors and emits air which, on information and belief, is filled with mold and other contaminants.  Defendant never warned Plaintiff Alley of the Defective HVAC System and corresponding safety hazard associated with her Class Vehicle.  To date, Defendant has not provided Plaintiff Alley with a remedy for the defect.

28.    None of the advertisements reviewed or representations received by Plaintiffs and members of the Classes contained any disclosure relating to the Defective HVAC System and associated safety hazard.  Had Defendant disclosed that the Class Vehicles contained a Defective HVAC System and corresponding safety hazard, Plaintiffs and members of the Classes would have not purchased or leased their vehicles, or would have paid less for their vehicles.

29.    When Plaintiffs and members of the Classes purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be equipped with a HVAC system that was free from defects and safe to operate.  In fact, Toyota has always emphasized the quality and reliability of the Class Vehicles and knows that consumers, including Plaintiffs and the members of

9      FIRST AMENDED CLASS ACTION COMPLAINT

the Classes, rely upon such factors when purchasing or leasing Class Vehicles. Had Defendant disclosed that the Defective HVAC System in the Class Vehicles could lead to the emission of noxious and foul odors and/or contaminated air, Plaintiffs and members of the Classes would have not purchased or leased their vehicles, or would have paid less for their vehicles.

30. The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used. Plaintiffs and members of the Classes have suffered an ascertainable loss as a result of Defendant's unfair and deceptive conduct, breach of common law and statutory duties, and omissions and/or misrepresentations associated with the Defective HVAC System and associated safety hazard, including but not limited to, out-of-pocket losses and diminished value of their respective vehicles.

31. Neither Defendant nor any of its agents, dealers or other representatives informed Plaintiffs and members of the Classes of the Defective HVAC System and associated safety hazard prior to the purchase or lease of the Class Vehicles.

**Defendant**

32. Defendant Toyota Motor Sales, U.S.A., Inc., is a California corporation, registered to do business in California, with its corporate headquarters located at 19001 South Western Avenue, Torrance, CA 90501.

33. Toyota designs, engineers, manufactures, markets and/or sells vehicles under the Toyota and Lexus brands in California and throughout the United States, through its network of authorized motor vehicle dealers. Toyota engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

34. At all times relevant to this action, Defendant and/or its agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States. Defendant and/or its agents designed, manufactured, and/or installed the Defective HVAC System in the Class Vehicles, and developed and

1  disseminated the owner's manuals and warranty booklets, advertisements and other

2  promotional materials relating to the Class Vehicles.

3       35.   On information and belief, at all times relevant to this action, Defendant

4  made decisions related to advertisement, marketing, sales, warranties, and recalls of

5  vehicles under the Toyota and Lexus brand names from its Torrance, California

6  headquarters, which is located within this District.

## IV.   FACTUAL ALLEGATIONS

### A.   The Defective HVAC System

9       36.   The Class Vehicles are equipped with the Defective HVAC System that

10  emits foul and noxious odors and/or air filled with mold and other contaminants.

11      37.   According to the Toyota Air Conditioning and Climate Control Course

12  752, and as shown in the below illustration, the basic air conditioning system

13  "contains components to push refrigerants through a closed system in order to extract

14  heat out of the vehicle interior and transfer that heat to the outside air" during which

15  process "the refrigerant changes from a liquid to a gas and then back to a liquid."[5]



---

[5]   *Toyota Air Conditioning and Climate Control Course 752*, TOYOTA MOTOR SALES, U.S.A., INC. (2004).

11   FIRST AMENDED CLASS ACTION COMPLAINT

1   38.   As shown below, the Defective HVAC System in the Class Vehicles

2   includes a component called the evaporator, which resides inside the HVAC module.

3   The system has a high pressure and a low pressure side, which includes the expansion

4   valve and the evaporator.   The expansion valve controls the flow and pressure of

5   liquid refrigerant into the evaporator.[6]   A blower draws air through the evaporator to

6   cool and dehumidify the interior air.



17   39.   On information and belief, the Defective HVAC System fails to

18   adequately remove water from the evaporator and surrounding enclosure. The moist

19   environment foul and noxious odors and/or mold and other contaminants, which are

20   emitted into the passenger compartment of the Class Vehicles by the blower.

21   40.   On information and belief, the mold and contaminants being emitted

22   from the Defective HVAC System grow on the evaporator, which is located behind

23   the vehicle's instrument panel.   Below is an image of an evaporator from the Toyota

24   Air Conditioning and Climate Control Course manual.

25

26

27

_____

28   [6]   *See id.*



41.    As cold refrigerant passes through into the evaporator, it absorbs heat from the air and produces liquid water due to dehumidification of the air. The collected water (condensation) is intended to drain from the Defective HVAC System through a rubber hose onto the ground.  Moisture, pollen, and debris, *inter alia*, that enter into the Defective HVAC System create an environment susceptible to the growth of mold and other contaminants.  The Class Vehicles' failure to adequately drain condensed water from the Defective HVAC System results in trapped water, aggravating the tendency of the Defective HVAC System to generate mold and foul and noxious odors.

42.    On information and belief, below is an example of a Lexus evaporator with evidence of mold growth.[7]

---

[7]    *See Toyota and Lexus Air Conditioning Odor – Prevention and Repair of Foul Air*, CARSPEC, available at http://carspecmn.com/toyota-and-lexus-air-conditioning-odor-prevention-and-repair-of-foul-air/ (last visited Dec. 16, 2016).

13    FIRST AMENDED CLASS ACTION COMPLAINT



43.  "In 2004 the Institute of Medicine (IOM) found there was sufficient evidence to link indoor exposure to mold with upper respiratory tract symptoms, cough, and wheeze in otherwise healthy people; with asthma symptoms in people with asthma; and with hypersensitivity pneumonitis in individuals susceptible to that immune-mediated condition.  The IOM also found limited or suggestive evidence linking indoor mold exposure and respiratory illness in otherwise healthy children."[8] Other studies have shown a potential link between mold exposure and the development of asthma in children.[9]

44.  According to WHO's Guidelines for Indoor Air Quality: Dampness and Mould, "microbial pollution involves hundreds of species of bacteria and fungi that grow indoors when sufficient moisture is available" and "[e]xposure to microbial contaminants is clinically associated with respiratory symptoms, allergies, asthma and immunological reactions."[10]

---

[8]    *Molds in the Environment*, CENTERS FOR DISEASES CONTROL AND PREVENTION, available at http://www.cdc.gov/mold/faqs.htm#affect (last visited Dec. 5, 2016).
[9]    *See id.*
[10]   Elisabeth Heseltine and Jerome Rosen, *WHO Guidelines for Indoor Air Quality: Dampness and Mould*, WORLD HEALTH ORGANIZATION (2009) at XII.

45.     No reasonable consumer expects to purchase a vehicle with a Defective HVAC System that exposes them to foul and noxious odors and/or mold and other contaminants.   Further, Plaintiffs and members of the Classes do not reasonably expect Defendant to omit or conceal a defect in the Class Vehicles or omit or conceal a known safety hazard.  Plaintiffs and members of the Classes had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and posed a safety hazard.

46.     Further, as recognized in a Safety Recall issued by Defendant in 2014, in at least some of the Class Vehicles, the trapped water may leak onto the airbag module, which can short circuit the circuit board inside the module, illuminating the airbag warning light and disabling the airbag or causing inadvertent deployment.

47.     As alleged herein, Plaintiffs and members of the Classes unknowingly purchased or leased vehicles that contain the Defective HVAC System and suffered diminished market value and other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendant's material misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Defective HVAC System and safety risk.  The fact that the Class Vehicles contain the Defective HVAC System is material to Plaintiffs and members of the Classes because it diminishes the value of the Class Vehicles and exposes Plaintiffs and Class members to foul and noxious odors and/or a safety hazard to drivers and passengers of the Class Vehicles.

48.     As a result of Defendant's material misrepresentations and omissions, including its failure to disclose that the Class Vehicles incorporate the Defective HVAC System, Defendant has caused Plaintiffs and members of the Classes to suffer actual damages, including but not limited to out-of-pocket expenses and the diminished value of their vehicles, and have been damaged by the exposure to foul and noxious odors and/or mold and other contaminants.

1

2

**B.    Defendant's Knowledge of the Defective HVAC System and
Associated Safety Hazard**

3    49.    Toyota has known since at least 1997 of the defect and safety hazard

4    associated with the Defective HVAC System that emits foul and noxious odors

5    and/or air filled with mold and other contaminants.

6    50.    Knowledge and information regarding the Defective HVAC System

7    were in the exclusive and superior possession of Defendant and its dealers, and that

8    information was not provided to Plaintiffs and members of the Classes.  Based on

9    pre-production testing, pre-production design failure mode analysis, production

10   design failure mode analysis, early consumer complaints made to Defendant's

11   network of exclusive dealers, aggregate warranty data compiled from those dealers,

12   repair order and parts data received from the dealers, consumer complaints to dealers

13   and NHTSA, and testing performed in response to consumer complaints, *inter alia*,

14   Defendant was aware (or should have been aware) of the HVAC defect in the Class

15   Vehicles and fraudulently concealed the defect and safety hazard from Plaintiffs and

16   members of the Classes.

17   51.    Defendant fraudulently, intentionally, negligently and/or recklessly

18   omitted and concealed from Plaintiffs and members of the Classes the defect in the

19   Class Vehicles even though Defendant knew or should have known of design and/or

20   manufacturing defects in Class Vehicles.

21   52.    Defendant knew, or should have known, that the defect in the Defective

22   HVAC System and associated safety risk were material to owners and lessees of the

23   Class Vehicles and were not known or reasonably discoverable by Plaintiffs and

24   members of the Classes before they purchased or leased Class Vehicles, or before the

25   warranties on their Class Vehicles expired.

26   53.    Notwithstanding Defendant's exclusive and superior knowledge of the

27   Defective HVAC System, Defendant failed to disclose the defect to consumers at the

28   time of purchase or lease of the Class Vehicles (or any time thereafter) and continued

to sell Class Vehicles containing the defect through the 2015 model year. Defendant intentionally concealed the defect in the Defective HVAC System and associated safety hazard, failed to provide any notice of the defect and associated safety hazard to Plaintiffs and members of the Classes, and failed to recall the vehicles to remedy the defect.

### 1. NHTSA Complaints

54. Consumers who purchased or leased Class Vehicles have filed numerous complaints with NHTSA, beginning in at least 1999, reporting and detailing the defect in the Defective HVAC System.

55. Federal law requires Toyota to monitor defects which can cause a safety issue and report them within five (5) days. Toyota regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defect through these complaints, *inter alia*.

56. Below is a sample of consumer complaints made to NHTSA:

**1999 TOYOTA AVALON**
**Date Complaint Filed: 03/26/1999**
**Date of Incident:**
**Component(s): EQUIPMENT**
**NHTSA ID Number: 704938**

MY NEIGHBOR AND I PURCHASED TOYOTA AVALON'S THREE WEEKS APART FROM SPARKS TOYOTA. HE IN DECEMBER '98, AND I IN JANUARY '99. AFTER TWO WEEKS OF OWNING MY CAR I ASKED HIM IF HE HAD A FOUL ODOR IN HIS CAR AS I DID, HE SAID, "YES." WE PURSUED THE CAUSE TOGETHER. CALLED TOYOTA IN TORRANCE, CA, AND A WOMEN ADMITTED THAT THE ODOR WAS COMING FROM THE A/C. SHE STATED IT COULD GO AWAY BY ITSELF OR TO MINIMIZE THE ODOR, RUN THE A/C ON OUTSIDE AIR. CALLED SPARKS TOYOTA SERVICE DEPARTMENT, THEY STATED IT COULD BE A CLOGGED OR RESTRICTED CONDENSATION LINE. WE BOTH HAD OUR CARS CHECKED OUT, NO PROBLEM WAS FOUND WITH THE DRAIN LINES. BOTH CARS WERE SPRAYED WITH A BACTERIAL DEODORANT. SERVICE MANAGER RECOMMENDED TO HAVE FACTORY REPRESENTATIVE TROY HEWEL

LOOK AT ONE OF OUR CARS TO MAKE A DETERMINATION AS TO THE CAUSE OF THE ODOR. WE COMPLIED. HEWEL AT FIRST DID NOT KNOW OF ANY PROBLEM, BUT DURING OUR CONVERSATION HE PRODUCED MATERIAL FROM HONDA/ARTICLES FROM USA TODAY/AUTOMOTIVE NEWS AND THE UNIVERSITY OF CALIFORNIA, BERKLEY WELLNESS LETTER ABOUT ISSUES WITH A/C EVAPORATORS. BOTH OF US AGREED TO HAVE OUR EVAPORATORS REPLACED, AS SUGGESTED BY THE HEWEL. TO THE BOTH OF US IT SEEMS TO BE AN INDUSTRY PROBLEM. WHY ISN'T THE BUYER INFORMED OF THE ODOR AT PURCHASE? WHY IN THIS CASE, DOES TOYOTA AT FIRST DENY THAT THERE IS AN A/C PROBLEM, BUT WHEN QUESTIONED FURTHER, ADMITS THERE IS? WHAT HEALTH RISKS ARE INVOLVED FOR DRIVER AND PASSENGERS? ISN'T THERE ALSO AN ENVIRONMENTAL CONCERN, BY USING FRESH AIR (INSTEAD OF RECIRCULATION) TO COOL THE CAR, MORE FUEL HAS TO BE BURNT, RAISING THE POLLUTENT LEVELS ADMITTED TO THE ATMOSPHERE? WE WOULD LIKE TO HEAR FROM NHTSA ON THESE ISSUES, THANK YOU! *AK

**2000 TOYOTA 4 RUNNER**
**Date Complaint Filed: 03/19/2004**
**Date of Incident: 09/22/2000**
**Component(s): EQUIPMENT**
**NHTSA ID Number: 10062604**

I BOUGHT MY 4-RUNNER 6-00 ABOUT 3 MONTHS AFTER I BOUGHT IT WE NOTICED AND TERRIBLE ODER COMING FROM THE AIR CONDITIONER AND HEATER. WHEN I BROUGHT IT TO THE DEALER THEY SPRAYED IT WITH SOMETHING TO KILL THE MOLD. JUST 2 MONTHS LATER THE ODER WAS BACK SO I BROUGHT IT BACK, THEY DID IT SPRAYED IT AGAIN AND TOLD ME IT WAS THE CLIMATE I LIVE IN AND I WOULD HAVE TO LIVE WITH IT OR PAY TO HAVE THE ODER REMOVED FROM NOW ON. THE ALSO TOLD ME EVERYONE DOWN SOUTH HAS THE SAME PROBLEM. WELL, I HAVE ONLY FOUND ONE PERSON WITH THE PROBLEM I HAVE. SO, I WROTE TO TOYOTA AND THEY ALSO REFUSE TO FIX MY PROBLEM. THESE ARE EXPENSIVE VEHICLES WE SHOULD NOT HAVE TO SMELL AN AWFUL ODER EVERY TIME WE NEED THE A/C OR HEATER. BUT WHAT UPSETS ME NOW IS THAT MY COMPLAINT IS NOT EVEN IN THE SYSTEM TO LET OTHERS READ ABOUT IT, MAYBE SO OTHERS MAY THINK THEY ARE THE ONLY ONES WITH THAT TYPE OF PROBLEM AND SHUT UP LIKE I DID. I SENCERLY HOPE MY LETTER IS POSTED WITH OTHER COMPLAINTS SO I DON'T SUSPECT TOYOTA TO BE

TRYING TO COVER UP THIER CUSTOMERS PROBBLEMS. IT WOULD ALSO BE NICE TO HERE FROM SOMEONE CONCERNING THIS MATTER.*AK

**2002 TOYOTA SEQUOIA**
**Date Complaint Filed: 03/20/2004**
**Date of Incident: 03/20/2004**
**Component(s): EQUIPMENT**
**NHTSA ID Number: 10062704**

I PURCHASED A 2002 SEQUOIA WHICH I HAVE TAKEN TO THE CHAMPION TOYOTA SERVICE CENTER TWICE FOR THEM TO LOOK AT THE AIR CONDITIONING SYSTEM. THERE WAS A MOLDY, MUSTY SMELL TO THE AIR BLOWING THROUGH THE VENTS ON BOTH THE RECYCLE AND FRESH AIR. THE FIRST TIME CHAMPION TOYOTA SIMPLY SPRAYED A DISINFECTANT IN THE SYSTEM AND THIS HELPED FOR ABOUT TWO TO THREE MONTHS. THE NEXT TIME BEFORE I TOOK THE AUTO TO CHAMPION I MADE A CALL TO WHAT I REMEMBER AS THE TOYOTA MANUFACTURING SERVICE CENTER AND THE PERSON ON THE PHONE TOLD ME THAT THE DISINFECTANT SPRAY WOULD DO NOTHING TO SOLVE THE PROBLEM AND THAT THE SERVICE CENTER MUST GO INTO THE AIR SIDE OF THE A/C SYSTEM AND MAKE SOME CHANGES AND CLEAN OUT THE SYSTEM FROM ALL THE MOLD. I THEN TOOK THE AUTO TO CHAMPION (CORPUS CHRISTI, TX) AND GAVE THEM THIS INFORMATION AND THE DEPARTMENT I SPOKE WITH. THEY, FROM WHAT I UNDERSTAND, MADE THE CALL AND THEN ATTEMPTED TO FIX THE PROBLEM. THIS WAS LATE LAST SUMMER AND WE USED THE A/C SYSTEM VERY LITTLE. WE ARE CURRENTLY USING THE SYSTEM MUCH MORE AND THE MOLDY, MUSTY SMELL IS BACK AND IT IS NOW EVEN STRONGER. I WANT TO KNOW IF THERE IS A RECALL AS CHAMPION TOLD ME THEY HAVE HAD OTHER SEQUOIA'S IN FOR THE SAME ISSUES. *JB

**2004 LEXUS RX330**
**Date Complaint Filed: 12/23/2004**
**Date of Incident: 11/10/2003**
**Component(s): EQUIPMENT**
**NHTSA ID Number: 10104402**

THE AIR CONDITIONING SYSTEM OF MY 2004 LEXUS RX330 HAS UNPLEASANT ODOR WHEN IT IS TURNED ON. I AM PERSONALLY ALLERGIC TO THE ODOR RELEASED BY THE SYSTEM. *AK

**2004 LEXUS RX330**
**Date Complaint Filed: 01/11/2006**
**Date of Incident: 01/10/2006**
**Component(s): UNKNOWN OR OTHER**
**NHTSA ID Number: 10147438**

MY LEXUS RX330 (2004) HAS 20,000 MILES AND THE A/C HAS A FOUL ODOR WHICH THE DEALERSHIP SAID IS MOLD. THEY SAID THE PROBLEM OCCURS WHEN USING RECYCLED AIR FUNCTION WITH THE AC AND SAID THE MANUFACTURER SAYS NOT TO USE IT BECAUSE IT ALLOWS MOLD TO GROW. THEY SPRAYED AC SYSTEM W/ AC ODOR TREATMENT. I THINK THE MOLD IS A SAFETY PROBLEM AS MANY PEOPLE ARE ALLERGIC, AND THIS IS A DEFECT WITH THE AC SYSTEM. SERVICE DEPT SAID THE PROBLEM IS OCCURRING WITH OTHER LUXURY CARS (JAGUAR, BMW). *JB

**2006 TOYOTA HIGHLANDER**
**NHTSA ID Number: 10158668**
**Date Complaint Filed: 05/31/2006**
**Date of Incident: 05/04/2006**

WHEN I USE THE A/C AND TURN IT OFF A BAD ODOR COMES FROM THE VENT . THIS IS A NEW 2006 HIGHLANDER, THE NEXT DAY I BROUGHT IT TO THE DEALER HE SAID TAKE FOR SERVICE , THEY TOLD ME TO DRIVE IT FOR A FEW MORE DAYS . I PUT 1500 MILES AND THE ODOR IS STILL THERE . I TOOK IT FOR SERVICE AGAIN . THE MECHANIC SAID TO USE A DEODORIZER ON THE VENT. I AM NOT A SATISFIED CUSTOMER. I WANT THIS ISSUE RESOLVED. I PAID FOR THE HIGHLANDER NOT THE SMELL THAT CAME WITH IT. *NM

**2008 TOYOTA TUNDRA**
**Date Complaint Filed: 09/17/2010**
**Date of Incident: 09/16/2010**
**Component(s): ENGINE AND ENGINE COOLING , EQUIPMENT**
**NHTSA ID Number: 10356149**

I HAVE A TOYOTA TUNDRA 2008, AFTER THE DEALER CHANGE THE A/C CABIN FILTER START A WET RAG SMELL INSIDE THE CAR( MOLD SMELL) , THIS PROBLEM STARTED A YEAR BEFORE, WHEN YOU USED THE A/C ON MAX OR RECIRCULATE THE SMELL IS LESS BUT WHEN YOU USE ON VENT ONLY OR AIR FROM OUTSIDE SMELLS A LOT, HAS BEEN PAST ALREADY A YEAR AND THE DEALER DONT WANT TO DO

FIRST AMENDED CLASS ACTION COMPLAINT

ANYTHING ABOUT IT EVEN THAT I HAVE A PLATINUM TOYOTA CARE SERVICE PLAN. NOW ALL MY FAMILY ARE EXPERIEMENTING ALL KIND OF ALLERGIES INCLUDE HAY FEVER_TYPE SYMPTOMS, SUCH AS SNEEZING, RUNNY NOSE, RED EYES AND SKIN RASH. THE DEALER HAD CHANGE THE A/C CABIN FILTER TWICE BUT THE PROBLEM STILL THERE. WE THINK THAT THERES MOLD ON THE A/C SYSTEM. THEY SAID THAT PROBABLY IS NOT CONDENSATING THE WATER SO WELL OR IS LETTING THE OUTSIDE WATER COMES IN TO THE A/C SYSTEM WHICH PROBABLY IS A A/C DESIGN PROBLEM. *TR

**2002 LEXUS GS430**
**Date Complaint Filed: 05/17/2013**
**Date of Incident: 05/18/2011**
**Component(s): STRUCTURE**
**NHTSA ID Number: 10512483**

LIKE MANY OTHERS THAT I KNOW THAT OWN A LEXUS SC430. I THINK I HAVE A MOLD PROBLEM. I HAVE HEARD OF PEOPLE BECOMING VERY ILL FROM CAR. I ALSO SMELL A PROBLEM WITH AC AND HAVE CONDENSATION ON INSIDE OF WINDOWS. *TR

**2006 LEXUS IS 250**
**NHTSA ID Number: 10441181**
**Date Complaint Filed: 12/25/2011**
**Date of Incident: 12/20/2011**

FOR 3-YEARS WE HAVE COMPLAINED TO THE DEALERSHIP REGARDING THE MUSTY SMELL COMING FROM THE A/C VENTS. WE WERE ADVISED BY THE DEALERSHIP TO CUT OFF THE A/C BEFORE ARRIVING HOME TO ALLOW THE UNIT TO DRAIN. WE ALSO WERE ADVISED TO SPRAY LYSOL INTO THE OUTSIDE COWL VENTS WHICH DID IMPROVE THE ODOR BUT THIS A/C MUSTY SMELL HAS ALWAYS BEEN AN ISSUE AND IS ALL OVER THE INTERNET. ON 12/20/2011, WE NOTICED WATER WAS APPARENTLY ENTERING THE PASSENGER COMPARTMENT. THE CARPET WAS WET AND THERE WAS EXCESSIVE MOISTURE AND WATER UNDER CARPET. UPON NOTICING THIS PROBLEM WE SCHEDULED AN APPOINTMENT WITH THE DEALERSHIP. I WAS ADVISED THAT MOST LIKELY, THE A/C DRAIN FLAP WAS STUCK AND CORRECTION FOR THIS DEFECT REQUIRED REMOVAL OF THE DRAIN FLAP TO ALLOW THE DRAIN TO FLOW AND NOT BACK UP AND ENTER THE PASSENGER COMPARTMENT. THE DEALER STATED THIS DEFECT HAS OCCURRED BEFORE INVOLVING THE IS250. COST TO CORRECT THIS DEFECT WAS

$240 BECAUSE THE TRANSMISSION HAD TO BE DROPPED TO ACCESS THE DRAIN LINE. REMOVING THE WATER/MOISTURE AND DRYING THE CARPET WAS ESTIMATED AT $2K. AGAIN, THIS OBVIOUS DEFECT IS ALL OVER THE NET AND APPARENTLY WELL KNOWN BY THE DEALERSHIP. ALL LEXUS OWNERS SHOULD BE NOTIFIED BY LEXUS SO ALL CAN AVOID THIS POTENTIAL SAFETY ISSUE INVOLVING MOLD AND THE HIGH COST OF REPAIR. IF THE WATER IS NOT NOTICED AND WATER CONTINUES TO BUILD UP IN THE A/C AND UNDER THE CARPETS SERIOUS MOLD RELATED SAFETY ISSUES COULD OCCUR. I DON'T KNOW HOW LONG OUR CAR LEAKED OR BACKED UP WATER BUT A MUSTY SMELL FOR THE PAST 3-YEARS HAS BEEN NOT ONLY OFFENSIVE BUT DANGEROUS CONSIDERING THE SAFETY HAZARDS ASSOCIATED WITH MOLD HERE IN FLORIDA. I RESPECTFULLY SUBMIT THAT THIS DEFECT SHOULD BE ADDRESSED IMMEDIATELY. *TR

**2013 TOYOTA SIENNA**
**NHTSA ID Number: 10547627**
**Date Complaint Filed: 10/11/2013**
**Date of Incident: 09/12/2013**

THE AIR COMING OUT OF THE VENT AS SOON AS I START THE CAR SMELLS LIKE A DIRTY WET TOWEL. THIS SMELL WILL LAST ABOUT 10-15 MINUTES IF I TURN OFF THE AC. TOYOTA SAID THIS IS NOTHING ABNORMAL FROM ANOTHER OTHER SIENNA. *TR

**2013 TOYOTA AVALON**
**NHTSA ID Number: 10548745**
**Date Complaint Filed: 10/21/2013**
**Date of Incident: 05/29/2013**

RE:REPORT RECEIPT DATE: OCT 17, 2013 NHTSA CAMPAIGN NUMBER: 13V442000 COMPONENT(S): AIR BAGS , ELECTRICAL SYSTEM , EQUIPMENT TOYOTA NEEDS TO CORRECT THE DEFECTIVE DRAIN LINE. THE CONDENSATE THAT IS NOT DRAINING OUT OF THE EVAPORATOR IS ENCOURAGING THE GROWTH OF MOLD IN THE EVAPORATOR WITH AN ACCOMPANYING OBNOXIOUS ODOR. COULD THE MOLD BE A TOXIC MOLD? THE ROOT PROBLEM NEEDS TO BE SOLVED. *TR

**2013 TOYOTA SIENNA**
**NHTSA ID Number: 10640049**
**Date Complaint Filed: 09/29/2014**
**Date of Incident: 03/21/2014**

FOR THE PAST 6 MONTHS, OUR VEHICLE, A 2013 TOYOTA SIENNA THAT WE PURCHASED NEW, HAS EMITTED A VERY FOUL ODOR FROM THE AIR CONDITIONING SYSTEM. FROM ALL THE INFORMATION I HAVE, THIS APPEARS TO BE FROM MOLD GROWTH. I AM WORRIED THAT ASIDE FROM BEING EXTREMELY UNPLEASANT, IT IS A SAFETYCONCERN. AFTER NUMEROUS TRIPS TO TWO DIFFERENT TOYOTA DEALERS FOR SERVICE, AN INSPECTION BY A SOUTHEAST TOYOTA REPRESENTATIVE, AND FOLLOWING ALL THE GUIDELINES FOUND IN THE TECHNICAL SERVICE BULLETIN, WE HAVE NOT HAD ANY IMPROVEMENT. THE ODOR IS SPORADIC BUT PERSISTENT, USUALLY OCCURRING SEVERAL TIMES A WEEK. AS I'VE EXPLAINED TO TOYOTA, THERE ARE THREE DISTINCT "SMELLS" (VINEGAR, WET DOG, AND ONE JUST VERY, VERY BAD). WE FILED A FORMAL COMPLAINT WITH TOYOTA LAST SPRING, WROTE LETTERS TO MANY TOYOTA REPRESENTATIVES, MET WITH THE GENERAL MANAGER AT THE DEALER WHERE WE PURCHASED IT, AND HAVE BEEN IN PHONE CONTACT THE PAST THREE WEEKS WITH A REPRESENTATIVE FROM THE OFFICE OF [XXX] , CEO AND PRESIDENT OF TOYOTA NORTH AMERICA. TOYOTA MAINTAINS THIS IS AN ENVIRONMENTAL ISSUE AND NOT A MECHANICAL ONE, THEREFORE THEY WON'T FIX IT. I HAVE OTHER VEHICLES IN THE SAME ENVIRONMENT WITHOUT THIS PROBLEM. BEING THAT THIS VAN WAS PURCHASED NEW, MY FIRST NEW VEHICLE EVER, MAKES IT EVEN MORE UPSETTING. WHILE ONE DEALERSHIP SAID A RECALL IS POSSIBLE, UNLESS THIS IS DEEMED A SAFETYCONCERN, I DO NOT SEE TOYOTA ADDRESSING THIS ISSUE. PLEASE HELP. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR

**2013 TOYOTA SIENNA**
**NHTSA ID Number: 10654246**
**Date Complaint Filed: 11/11/2014**
**Date of Incident: 10/23/2012**

FROM THE ONSET OF PURCHASE OF A 2013 TOYOTA SIENNA XLE, THE AIR CONDITIONER HAS EMITTED A FOUL ODOR THAT SMELLS LIKE MOLD. NOR WILL THE A/C SYSTEM ADEQUATELY COOL THE VEHICLE UNTIL BEING DRIVEN SOMETIMES AS LONG AS TEN MILES, IF THEN. WE

HAVE BEEN TOLD TO TURN OFF THE A/C BEFORE ARRIVING HOME TO ELIMINATE THE ODOR AND GIVEN A TOYOTA PRINT OUT THAT THIS IS A KNOWN PROBLEM THAT IS SPECIFIC TO THE 2013 TOYOTA SIENNA. ON THE LAST SCHEDULED MAINTENANCE FREON WAS ADDED BUT DID NOT ELIMINATE THE ODOR OR IMPROVED THE A/C OUTPUT. THE FOUL ODOR NEVER GOES AWAY WHILE DRIVING AND MAY BE AN ENVIRONMENTAL HAZARD FOR PERSONS WITH A LUNG OR BREATHING CONDITION. THIS IS A TOTALLY UNACCEPTABLE SOLUTION FOR THE RISK OF BEING EXPOSED TO A POTENTIAL DANGEROUS AND UNKNOWN NOXIOUS FUME TO THE OWNER OF THE VEHICLE. *TR

**2011 LEXUS IS 250**
**NHTSA ID Number: 10661019**
**Date Complaint Filed: 11/26/2014**
**Date of Incident: 11/20/2012**

ABOUT SIX MONTHS AFTER GETTING THIS CAR BRAND NEW I STARTED SMELLING A FOUL ODOR. IT HAPPENED EVERY TIME I USED THE AIR CONDITIONING. WHEN I WENT TO OPEN THE FRESH AIR MODE A MOLDY/MUSTY SMELL EMANATED THROUGHOUT THE CAR. IT CONTINUED AND I TOOK THE CAR IN SEVERAL TIMES TO LEXUS. THEY CHANGED THE CABIN FILTERS, EVEN USED A STATE OF THE ART PROCESS TO ELIMINATE THE ODOR - BUT IT KEPT COMING BACK. THEY CLAIMED IT WAS AN ENVIRONMENTAL ISSUE. HOWEVER I GOT AN ATTORNEY WHO SUGGESTED I HIRE A MOLD EXPERT AND SURE ENOUGH THEY FOUND A TOXIC MOLD IN THE ENGINE. LEXUS STILL REFUSED TO DO ANYTHING ABOUT THIS. EVERYONE WHO HAS BEEN IN MY CAR SMELLS THIS EXCEPT THE PEOPLE AT LEXUS. IT IS DOCUMENTED THAT THE MOLD EXISTS, BUT THEY REFUSE TO ADMIT IT'S PROBABLY DUE TO A LEAK IN THE A/C SYSTEM. THEY WOULD NEVER TAKE THE A/C APART TO FIND THE LEAK SO I'VE HAD TO DRIVE THIS SMELLY CAR FOR THE PAST 2 1/2 YEARS....I'M GOING TO TURN IT IN EARLY FOR FEAR OF BREATHING IN THIS TOXIC MOLD AND SHAME ON LEXUS FOR NOT BEING CONCERNED ABOUT MY SAFETY. AN AIR CONDITIONING EXPERT IN LOS ANGELES TOLD ME HE HAS HAD SEVERAL COMPLAINTS ABOUT SIMILAR SMELLS FROM THE IS. MY DOCTOR SAID THIS MOLD IS MAN MADE AND NOT ENVIRONMENTAL SO IT MUST BE FROM WATER CONDENSATION. ALSO, MY CAR HAD SEVERAL OTHER ISSUES LIKE THE FRESH AIR MODE WOULD NOT STAY OPEN SO THAT THE WATER CONDENSATION COULD DRY OUT. THAT HAD TO BE REPAIRED TWO OR THREE TIMES. *TR

**2014 TOYOTA HIGHLANDER**
**NHTSA ID Number: 10690920**
**Date Complaint Filed: 02/26/2015**
**Date of Incident: 06/23/2014**

PURCHASED NEW 2014 TOYOTA HIGHLANDER IN MAY 2014, AFTER APPROXIMATELY 30 DAYS OF OWNERSHIP A FOUL ODOR BEGAN TO EMIT FROM A/C UNIT WHENEVER VEHICLE WAS STARTED. AFTER 3 TRIPS TO SELLING DEALER TO CORRECT THE PROBLEM I WAS GIVEN TOYOTA T-SB-0142-13 WHICH INFORMS ME THAT THERE ARE 23 TOYOTA VEHICLES WHICH MAY EXPERIENCE THIS PROBLEM. DEALERSHIP ATTEMPTED TO PLACE BLAME ON VARIOUS ITEMS BUT, SINCE TOYOYA PUBLISHED A TSB IT LEADS ME TO BELIEVE THAT TOYOTA KNOWS ABOUT THE PROBLEM BUT IS NOT WANTING IT TO BECOME KNOWN AS IT MIGHT IMPACT THEIR SELLING VEHICLES. MY A/C EXPERIENCE LEADS ME TO BELIEVE THE PROBLEM IS CAUSED BY AN IMPROPERRLY DESIGNED A/C SYSTEM WHICH IS FAILING TO DRAIN ALL THE MOISTURE FROM THE A/C SYSTEM THEREBY ALLOWING MOLD, MILDEW, ALGAE TO GROWN IN THE UNDRAINED LEFT OVER WATER IN A/C SYSTEM

**2014 TOYOTA HIGHLANDER**
**NHTSA ID Number: 10821383**
**Date Complaint Filed: 01/21/2016**
**Date of Incident: 07/15/2015**

THE HVAC SYSTEM DOES NOT DRAIN COMPLETELY IN HOT CLIMATES, CAUSING A BUILD UP OF MOLD/MILDEW IN THE AC SYSTEM, BLOWING IT INTO THE CAR. THE ODOR IS FOUL AND DAMAGING TO CUSTOMERS RESPIRATORY SYSTEMS. THIS OCCURS IN THE SUMMER, IN HOT MONTHS WITH THE AC IS USED ON A DAILY BASIS. IT DOES NOT OCCUR IN THE WINTER.

## 2.      Technical Service Bulletins

57.     As a result of Defendant's exclusive and superior knowledge regarding the Defective HVAC System, Toyota released several TSBs under its Toyota and Lexus brands describing the issue to its exclusive network of dealerships beginning on or around May 9, 1997.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

58.     On or around May 9, 1997, Toyota issued a TSB titled "Air Conditioning Evaporator Odor" for all Toyota Models to its exclusive network of dealerships.  *See* Exhibit A.  TSB AC002-97 described the defect as follows:

> A musty odor may be emitted from the air conditioning system of some vehicles which are usually operated in areas with high temperature and humidity.  It is most noticeable when the air conditioner is first turned "ON" after the vehicle has been parked for several hours.  The odor could result from one or more of the following conditions:
>
> 1. Blockage of the evaporator housing drain pipe, resulting in the build up of condensate.
>
> 2. Microbial growth in the evaporator, arising from dampness in the evaporator housing where the cooling air flow is dehumidified.

*Id*.

59.     On or around August 6, 2009, Toyota issued another TSB related to HVAC odors for certain Camry and Prius models to its exclusive network of dealerships.  *See* Exhibit B.  The TSB stated that "[s]ome Camry, Camry HV, and Prius models may exhibit an intermittent HVAC system odor. A newly designed evaporator sub-assembly has been made available to decrease the potential for HVAC odor." *Id.*  T-SB-0261-09 further stated that "[t]his repair is covered under the Toyota Comprehensive Warranty . . . in effect for 36 months or 36,000 miles, whichever occurs first, from the vehicle's in-service date." *Id.*

60.     On or around November 29, 2011, Toyota issued a revision to the August 6, 2009 TSB to its exclusive network of dealerships, updating production change information, and again informing dealers that a newly designed evaporator sub-assembly has been made available to decrease the potential for HVAC odor.  *See* Exhibit B.  T-SB-0261-09 Rev1 again stated that "[t]his repair is covered under the Toyota Comprehensive Warranty . . . in effect for 36 months or 36,000 miles, whichever occurs first, from the vehicle's in-service date."  *Id.*  However, it also

1    noted that "[w]arranty application is limited to occurrence of the specified condition

2    described in this bulletin." *Id.*

3         61.    On or around September 12, 2013, Toyota issued yet another TSB

4    related to HVAC odors, titled "HVAC Odor Maintenance", which attempted to

5    explain the odors as "naturally occurring from the HVAC system and/or related

6    environmental factors." *See* Exhibit C.  T-SB-0142-13 informed Toyota dealers that

7    "there is ***no way to eliminate*** these odors" and that bulletin procedures should be

8    followed "to minimize the odors experienced." *Id.* (emphasis added).

9         62.    T-SB-0142-13 was updated on April 9, 2015 "to include 2015 model

10   year Toyota vehicles." *Id.*  According to the updated version, the TSB applied to the

11   following Toyota models:  2010-2015 Toyota 4Runner, 2007-2015 Toyota Avalon,

12   2013-2015 Toyota Avalon HV, 2009-2015 Toyota Corolla, 2008-2015 Toyota

13   Highlander, 2008-2015 Toyota Highlander HV, 2008-2015 Toyota Land Cruiser,

14   2009-2015 Toyota Matrix, 2006-2015 Toyota Prius, 2012-2015 Toyota Prius C,

15   2010-2015 Toyota Prius PHV, 2012-2015 Toyota Prius V, 2006-2015 Toyota RAV4,

16   2008-2015 Toyota Sequoia, 2004-2015 Toyota Sienna, 2007-2015 Toyota Tundra,

17   2009-2015 Toyota Venza, 2007-2015 Toyota Yaris and 2007-2014 Toyota FJ

18   Cruiser.

19        63.    On or around September 12, 2013, Toyota issued a TSB titled "HVAC

20   Odor Maintenance" under the Lexus brand to its exclusive network of Lexus

21   dealerships.  *See* Exhibit D.  L-SB-0060-13 was substantially similar to T-SB-0142-

22   13, and applied to the following Lexus models: 2013-2014 Lexus GS 350/450h, 2014

23   Lexus IS 250/350, 2011-2014 Lexus CT 200h, 2007-2014 Lexus ES 350, 2013-2014

24   Lexus ES 300h, 2006-2011 Lexus GS 300/350/430/450h/460, 2010-2014 Lexus GX

25   460, 2010-2012 Lexus HS 250h, 2006-2013 Lexus IS 250/350, 2010-2014 Lexus IS

26   250C/350C, 2008-2014 Lexus IS F, 2012 Lexus LFA, 2007-2014 Lexus LS 460,

27   2008-2014 Lexus LS 600h, 2008-2014 Lexus LX 570, 2010-2014 Lexus RX

28   350/450h, 2006-2009 Lexus GX 470, 2007-2009 Lexus RX 350 and 2006-2008

27        FIRST AMENDED CLASS ACTION COMPLAINT

Lexus RX 450h.  *See id.*  Toyota informed Lexus dealers that "***there is no way to eliminate these odors***" and that bulletin procedures should be followed "to minimize the odors experienced." *Id.*

64.     Plaintiffs were never provided with copies of or information about the TSBs described above.  Further, on information and belief, the TSBs were not directly communicated to consumers.  Thus, despite Toyota's knowledge of the defect and associated safety hazard, which Defendant recognized was in the majority of Toyota and Lexus models, Defendant failed to disclose the defect to owners and lessors of the Class Vehicles, including Plaintiffs and members of the Classes, and instead, intentionally concealed the defect.  In addition, Toyota has failed to provide an effective remedy or replace the Defective HVAC System.

65.     In addition to the TSBs related to the Defective HVAC System, on or around February 26, 2014, Toyota issued a safety recall for certain 2011-2013 Toyota models.  *See* Exhibit E (the "Recall Letter").  According to the Recall Letter, "[c]ondensed water can accumulate at the bottom of the HVAC unit housing in the subject vehicles if the HVAC drain hose becomes clogged." *Id.* Toyota described the corresponding safety issue as follows:

> Due to the location of the housing seam, which is directly above the airbag control module, the accumulated water could leak through the seam onto the module.  If the circuit board inside the module becomes wet, a short circuit could occur between adjacent terminals of specific circuits, resulting in illumination of the airbag warning light.  In some instances, the air bag(s) could become disabled or could inadvertently deploy.  An airbag that deploys inadvertently can, under some circumstances, increase the risk of minor injury or the possibility of a crash.  An inoperative airbag can increase the risk of injury in a severe crash.

*Id.*

66.     Thus, Toyota was aware of the defect related to the failure of water to adequately drain from the Defective HVAC System, and issued a safety recall for certain vehicles due to the associated risk with the air bag control module becoming wet.  Rather than repairing or replacing the Defective HVAC System, Toyota stated

that "[t]he remedy will involve inspecting the HVAC housing and airbag control module, sealing the HVAC housing, and installing a protective cover on the bottom of the housing above the Airbag Control Module." *Id.*

67.     The TSBs, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendant's network of exclusive dealers and NHTSA, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, and testing performed in response to consumer complaints, evidences that since as early as 1997, Defendant has had exclusive and superior knowledge regarding the defect in the Defective HVAC System and associated safety hazard.   Further, Defendant gained its knowledge of the defect through sources not available to Plaintiffs and members of the Classes.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

68.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defective HVAC System and the misrepresentations and omissions alleged herein.   Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Defective HVAC System and could not reasonably discover the defect or Defendant's deception with respect to the defect.

69.     Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or that the Class Vehicles contained a Defective HVAC System and corresponding safety hazard.   As alleged herein, the existence of the Defective HVAC System and corresponding safety hazard were material to Plaintiffs and members of the Classes at all relevant times.   Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence that Defendant was concealing the defect in the Defective HVAC System.

70. At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class Vehicles and to disclose the Defective HVAC System and associated safety hazard.

71. Defendant knowingly, actively and affirmatively concealed the facts alleged herein including the Defective HVAC System and safety hazard. Plaintiffs and members of the Classes reasonably relied on Defendant's knowing, active, and affirmative concealment.

72. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

73. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Sub-Classes:

**Nationwide Class**: All persons or entities in the United States who purchased, leased or own a Class Vehicle (the "Nationwide Class" or "Class");

**California Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California who purchased, leased or own a Class Vehicle (the "California Sub-Class");

**Song-Beverly Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of California (the "Song-Beverly Sub-Class");

**Colorado Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of Colorado and all persons or entities in the State of Colorado who purchased, leased or own a Class Vehicle (the "Colorado Sub-Class");

**Florida Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Florida and all persons or entities in the State of Florida who purchased, leased or own a Class Vehicle (the "Florida Sub-Class");

1  **Kansas Sub-Class**: All persons or entities who purchased or leased a Class

2  Vehicle in the State of Kansas and all persons or entities in the State of Kansas who

3  purchased, leased or own a Class Vehicle (the "Kansas Sub-Class");

4  **Virginia Sub-Class**: All persons or entities who purchased or leased a Class

5  Vehicle in the State of Virginia and all persons or entities in the State of Virginia who

6  purchased, leased or own a Class Vehicle (the "Virginia Sub-Class"); and

7  **Washington Sub-Class**: All persons or entities who purchased or leased a

8  Class Vehicle in the State of Washington and all persons or entities in the State of

9  Washington who purchased, leased or own a Class Vehicle (the "Washington Sub-

10  Class") (together with the California Sub-Class, Song-Beverly Sub-Class, Colorado

11  Sub-Class; Florida Sub-Class, Kansas Sub-Class and Virginia Sub-Class, the "Sub-

12  Classes").

13  74.    Excluded from the Class and Sub-Classes are Defendant and its parents,

14  subsidiaries and corporate affiliates.    Plaintiffs reserve the right to revise the

15  definition of the Class and Sub-Classes based upon subsequently discovered

16  information and reserve the right to establish additional subclasses where appropriate.

17  The Class and Sub-Classes are collectively referred to herein as the "Classes."

18  75.    The Classes are so numerous that joinder of all members is

19  impracticable.    Plaintiffs believe that there are at least thousands of proposed

20  members of the Classes throughout the United States.

21  76.    Common questions of law and fact exist as to all members of the Classes

22  and predominate over any issues solely affecting individual members of the Classes.

23  The common and predominating questions of law and fact include, but are not limited

24  to:

25  •    Whether Defendant violated the California Consumers Legal Remedies

26      Act, Cal. Civ. Code § 1750 *et seq.*;

27  •    Whether Defendant violated the California Unfair Competition Law,

28      Cal. Bus. & Prof. Code § 17200 *et seq.*;

- Whether the Defective HVAC System installed in the Class Vehicles contains a design defect and/or a defect in material, manufacturing and/or workmanship;

- Whether the Defective HVAC System installed in the Class Vehicles presents a safety hazard;

- Whether Defendant knew or should have known that the Defective HVAC System installed in the Class Vehicles is defective and presents a safety hazard;

- Whether Defendant had a duty to disclose that the Defective HVAC System installed in the Class Vehicles is defective and/or presents a safety hazard;

- Whether Defendant breached its duty to disclose that the Defective HVAC System installed in the Class Vehicles is defective and/or presents a safety hazard;

- Whether Defendant intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Defective HVAC System installed in the Class Vehicles is defective and/or presents a safety hazard;

- Whether Defendant negligently falsely misrepresented or omitted material facts including the fact that the Defective HVAC System installed in the Class Vehicles is defective and/or presents a safety hazard;

- Whether Defendant made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and/or the Defective HVAC System;

- Whether members of the Classes would pay less for a Class Vehicle if Defendant, at the time of purchase or lease, disclosed that the Defective HVAC System was defective and/or presents a safety hazard;

FIRST AMENDED CLASS ACTION COMPLAINT

- Whether members of the Classes would have purchased or leased a Class Vehicle if Defendant, at the time of purchase or lease, disclosed that the Defective HVAC System was defective and/or presents a safety hazard;

- Whether Defendant actively concealed material facts from Plaintiffs and members of the Classes in order to, *inter alia*, sell more Class Vehicles;

- Whether Defendant breached its express and/or implied warranties to Plaintiffs and members of the Classes;

- Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.;

- Whether Defendant violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq*.;

- Whether Defendant was unjustly enriched by its conduct;

- Whether Defendant violated the Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq*.;

- Whether Defendant violated the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq*.;

- Whether Defendant violated the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq*.;

- Whether Defendant violated the Washington Consumer Protection Act, RCW 19.86 *et seq*.;

- Whether Defendant violated the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq*.; and

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

77. Plaintiffs' claims are typical of the claims of the Classes Plaintiffs seek to represent. As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same illegal actions and conduct by Defendant.

78. Plaintiffs are willing and prepared to serve the Class and Sub-Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Class and Sub-Classes and have no interests adverse to or in conflict with the interests of the other members in the Classes.

79. Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes. Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

80. Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

81. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

82. Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

83. The Classes may also be certified under Rule 23(b)(1)(A) and (B) because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant, would be dispositive of the interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

84.    The Classes may also be certified under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

85.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

86.    The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers and/or on the internet.

## VII.    CLAIMS FOR RELIEF

**COUNT I**
**Violation of the Consumers Legal Remedies Act,**
**Cal. Civ. Code § 1750 *et seq.***
**On behalf of the Nationwide Class or, alternatively,**
**on behalf of the California Sub-Class**

87.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

88.    Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

89.    The Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") "protect[s] consumers against unfair and deceptive business practices." *See* Cal. Civ. Code § 1760.

90.    Plaintiffs and members of the Classes are consumers within the meaning of Cal. Civ. Code § 1761(d).

91.     Plaintiffs and members of the Classes purchased their Class Vehicles primarily for personal, family, or household purposes.

92.     The Class Vehicles are goods within the meaning of Cal. Civ. Code § 1761(a).

93.     Defendant violated and continues to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*: (1) representing that Class Vehicles have characteristics which they do not; (2) representing that the Class Vehicles are of a particular standard when they are of another; and (3) advertising the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code § 1170.

94.     Defendant further violated the CLRA by failing to disclose within the warranty period, or any time thereafter, the material fact that the Class Vehicles incorporate a Defective HVAC System that is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth.

95.     Defendant also violated the CLRA by actively concealing the material fact that the Class Vehicles incorporate a Defective HVAC System that is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard for the purpose of selling additional Class Vehicles and/or transferring the cost of repair or replacement of the Defective HVAC System to Plaintiffs and Class members.

96.     The fact that the Defective HVAC System installed in the Class Vehicles is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard is material because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a Defective HVAC system that would expose them and other vehicle occupants to foul and noxious odors and/or an associated safety hazard.  No reasonable consumer expects a vehicle to incorporate a Defective HVAC System that exposes drivers and other

vehicle occupants to foul and noxious odors and/or an associated safety hazard from mold growth.

97.    Defendant has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

98.    Defendant's unlawful acts and practices affect the public interest, and trade and commerce in the State of California, and present a continuing safety hazard to Plaintiffs and members of the Classes.

99.    As a direct and proximate result of Defendant's violations of the CLRA, Plaintiffs and members of the Classes have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective HVAC System; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective HVAC System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective HVAC System.

100.    With this filing, and on this Count, Plaintiffs and members of the Classes seek an order enjoining Defendant's unfair and deceptive practices.

101.    Defendant's violations of the CLRA were willful and oppressive.

102.    Plaintiffs have provided Defendant with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).   The notice was transmitted to Defendant on January 11, 2017 and more than thirty days have passed and, to date, Defendant has failed to remedy its violations of the CLRA. Therefore, Plaintiffs and members of the Classes are entitled to seek monetary relief for Defendant's violation of the CLRA.

103.   Plaintiffs and members of the Classes seek actual damages, punitive damages, statutory damages, restitution, attorneys' fees and any other relief proper under the CLRA.  *See* Cal. Civ. Code § 1780.

**COUNT II**
**Violation of Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq*.**
**On behalf of the Nationwide Class or, alternatively,**
**on behalf of the California Sub-Class**

104.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

105.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

106.   California Business & Professions Code § 17200 *et seq*. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."

107.   As alleged herein, Defendant has violated the UCL by engaging in unlawful, unfair and fraudulent business acts or practices.

108.   In violation of the UCL, Defendant employed unfair, unlawful and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles.  Defendant knowingly concealed, suppressed and/or omitted material facts regarding the Defective HVAC System and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs and members of the Classes.

109.   Defendant actively suppressed the fact that the Defective HVAC System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects.  Further, Defendant employed

unfair, unlawful and fraudulent business practices to deny repair or replacement of Defective HVAC System within a reasonable time in violation of the UCL.

110. Defendant breached its warranties, the CLRA, the Song-Berry Consumer Warranty Act, and the Magnuson-Moss Warranty Act as alleged herein in violation of the UCL.

111. Defendant's unfair, unlawful and fraudulent business practices were likely to deceive a reasonable consumer. Plaintiffs and members of the Classes had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and posed a safety risk. Defendant possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective HVAC System and associated safety risks, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as the Plaintiffs and members of the Classes did.

112. Defendant intentionally and knowingly misrepresented and omitted facts regarding the Defective HVAC System and associated safety hazard with the intent to mislead Plaintiffs and members of the Classes. Defendant knew, or should have known, that the Defective HVAC System is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth.

113. Defendant owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to Plaintiffs and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective HVAC System. Rather than disclose the defect, Defendant engaged in unfair, unlawful and fraudulent business practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

114. Defendant's unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System were intended to mislead consumers and misled Plaintiffs and members of the Classes.

115. At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective HVAC System and its corresponding safety hazard were material to Plaintiffs and members of the Classes. When Plaintiffs and members of the Classes purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and would not emit foul and noxious odors and/or pose an unavoidable safety hazard. Had Defendant disclosed that the Defective HVAC System was defective and would emit foul and noxious odors and/or pose an unavoidable safety hazard, Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

116. Defendant had a continuous duty to Plaintiffs and members of the Classes to refrain from unfair, unlawful and fraudulent practices under the UCL and to disclose the defect and associated safety hazard. Defendant's unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System and corresponding safety hazard are substantially injurious to consumers. As a result of Defendant's knowing, intentional concealment and/or omission of the Defective HVAC System and associated safety hazard in violation of the UCL, Plaintiffs and members of the Classes have suffered harm and/or continue to suffer harm by the threat of being exposed to foul and noxious odors and/or an unavoidable safety hazard, and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective HVAC System, and the diminished value of their vehicles as a result of

FIRST AMENDED CLASS ACTION COMPLAINT

Defendant's unfair, unlawful and fraudulent acts and practices in the course of its business.

117.   Defendant has knowingly and willfully engaged in the unfair, unlawful and fraudulent business practices alleged herein.  Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

118.   Defendant's unfair, unlawful and fraudulent acts and practices have harmed and continue to harm Plaintiffs and members of the Classes, have negatively affected the public interest, and present a continuing safety hazard to Plaintiffs and members of the Classes.

119.   Plaintiffs and members of the Classes seek an order enjoining Defendant's unfair, unlawful, and fraudulent practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

## COUNT III
### Fraud
**On behalf of the Nationwide Class or, alternatively,
on behalf of the California, Colorado, Florida, Kansas, Virginia, and
Washington Sub-Classes**

120.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

121.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the California, Colorado, Florida, Kansas, Virginia, and Washington Sub-Classes.

122.   Defendant intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective HVAC System installed in

the Class Vehicles is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth, with the intent that Plaintiffs and members of the Classes rely on Defendant's misrepresentations or omissions.  As a direct result of Defendant's fraudulent conduct, members of the Classes have suffered actual damages.

123.   In connection with the purchase or lease of each of the Class Vehicles, Defendant provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  Specifically, Defendant provided: (1) a Toyota New Vehicle Limited Warranty for 36 months or 36,000 miles which includes all components other than normal wear and maintenance items; or (2) a Lexus Basic Warranty for 48 months or 50,000 miles, whichever occurs first, which "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Lexus" subject to certain exclusions.  Under the warranties provided to Plaintiffs and members of the Classes, Defendant promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Defective HVAC System, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.

124.   At the time of sale or lease of the Class Vehicles, Defendant informed Plaintiffs and members of the Classes in its Toyota Warranty and Maintenance Guides that "[o]ur excellent warranty coverage is evidence that we stand behind the quality of our vehicles. We're confident — as you should be — that your Toyota will provide you with many years of enjoyable driving."[11]  Further, Defendant knew that quality and reliability were two factors that Plaintiffs and members of the Class relied on when deciding to purchase or lease Class Vehicles, stating "[w]e realize that your

---

[11] *2015 Sienna Warranty and Maintenance Guide* at 9, available at http://www.toyota.com/t3Portal/document/omms-s/T-MMS-15Sienna/pdf/2015_Toyota_Sienna_WMG.pdf (last visited Dec. 8, 2016).

confidence in the quality and reliability of our products was a key factor in your decision to buy a Toyota."[12]

125.  With regard to its Lexus brands, Defendant informed Plaintiffs and members of the Classes in its Lexus Warranty and Maintenance Guides that "[y]ou have purchased one of the finest vehicles built in the world today, and it is backed by one of the finest warranties in the industry."[13] Defendant further states that "[t]his excellent warranty coverage demonstrates not only our confidence in Lexus vehicles, but also our commitment to every Lexus customer[,]" and that "[w]e're dedicated to ensuring that you enjoy exceptional quality, dependability and peace of mind throughout your ownership experience."[14]

126.  Although Defendant informed Plaintiffs and members of the Classes that it would stand behind the quality and reliability of the Class Vehicles and repair or remedy any issues that arose during the warranty periods, Defendant knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a Defective HVAC System, concealed the defect, and never intended to repair or replace the Defective HVAC System during the warranty periods.  Defendant admitted in its TSBs that its recommended HVAC Odor Maintenance procedure "*will NOT eliminate the odors experienced*, but it's provided to help reduce the intensity of these odors[,]" and "*there is no way to eliminate these odors*."  *See* Exs. C and D. To date, Defendant has not provided Plaintiffs or members of the Classes with a repair or remedy that will eliminate the odors, and has not offered to replace the Defective HVAC Systems.

---

[12]    *Id.* at 9.

[13]    *2007 Lexus ES, GS, IS, LS, SC Warranty and Services Guide*, at 14, available at http://drivers.lexus.com/lexusdrivers/resources/manuals-warranty (last visited Dec. 8, 2016).

[14]    *Id.*

127.   Defendant owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to Plaintiffs and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective HVAC System.  Rather than disclose the defect, Defendant intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective HVAC System installed in the Class Vehicles is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

128.   The fact that the Defective HVAC System installed in the Class Vehicles is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard is material because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a Defective HVAC System that would expose them and other vehicle occupants to foul and noxious odors and/or an associated safety hazard.  No reasonable consumer expects a vehicle to incorporate a Defective HVAC System that exposes drivers and other vehicle occupants to foul and noxious odors and/or an associated safety hazard.

129.   Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defective HVAC System, or would have paid less for the Class Vehicles.

130.   Defendant knew its false misrepresentations and concealment and suppression of material facts were false and misleading and knew the effect of misrepresenting and concealing those material facts.   Defendant knew its concealment and suppression of the Defective HVAC System would sell more Class Vehicles and would discourage Plaintiffs and members of the Classes from seeking replacement or repair of the Defective HVAC System.  Further, Defendant intended

44    FIRST AMENDED CLASS ACTION COMPLAINT

to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Defective HVAC System, in order to decrease costs and increase profits.

131.   Defendant acted with malice, oppression, and fraud.

132.   Plaintiffs and members of the Classes reasonably relied upon Defendant's knowing, affirmative and active false representations, concealment, and omissions.   As a direct and proximate result of Defendant's false representations, omissions and active concealment of material facts regarding the Defective HVAC System and associated safety hazard, Plaintiffs and members of the Classes have suffered actual damages in an amount to be determined at trial.

**COUNT IV**
**Negligent Misrepresentation**
**On behalf of the Nationwide Class or, alternatively,**
**on behalf of the California, Colorado, Florida, Kansas, Virginia, and**
**Washington Sub-Classes**

133.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

134.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class or, alternatively, on behalf of the California, Colorado, Florida, Kansas, Virginia, and Washington Sub-Classes.

135.   Defendant owed a duty to disclose the defect in the Defective HVAC System and its corresponding safety hazard to Plaintiffs and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the defect and the associated risks.

136.   Defendant negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective HVAC System installed in the Class Vehicles is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard.

As a direct result of Defendant's negligent conduct, members of the Classes have suffered actual damages.

137. The fact that the Defective HVAC System installed in the Class Vehicles is defective is material because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from a defect that would expose drivers and occupants to foul and noxious odors and/or an associated safety hazard. No reasonable consumer expects a vehicle to present a defect that exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth.

138. Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendant's negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Defective HVAC System, or would have paid less for the Class Vehicles. Plaintiffs and members of the Classes justifiably relied upon Defendant's negligent false representations and omissions of material facts.

139. As a direct and proximate result of Defendant's negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Defective HVAC System, Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT V**
**Breach of Express Warranty**
**On behalf of the Nationwide Class or, alternatively,**
**on behalf of the California, Colorado, Florida, Kansas, Virginia, and**
**Washington Sub-Classes**

140. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

141.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the California, Colorado, Florida, Kansas, Virginia, and Washington Sub-Classes.

142.   Defendant marketed the Class Vehicles as safe, built to last, and reliable vehicles.   Such representations formed the basis of the bargain in Plaintiffs' and members of the Classes' decisions to purchase or lease the Class Vehicles.

143.   Defendant is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code.

144.   With respect to leases, Defendant is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code.

145.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

146.   In connection with the purchase or lease of each of the Class Vehicles, Defendant provides warranty coverage for the Class Vehicles under one or more manufacturer's warranties.   Specifically, Defendant provided: (1) a Toyota New Vehicle Limited Warranty for 36 months or 36,000 miles which includes all components other than normal wear and maintenance items; or (2) a Lexus Basic Warranty for 48 months or 50,000 miles, whichever occurs first, which "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Lexus" subject to certain exclusions.   Under the warranties provided to Plaintiffs and members of the Classes, Defendant promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Defective HVAC System, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.   As alleged herein, Defendant breached these warranties.

147.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Classes purchased or leased their Class Vehicles.

148.   Plaintiffs and members of the Classes experienced the existence of the defect in the Defective HVAC System within the warranty periods but had no knowledge of the existence of the defect and associated safety hazard, which were known and concealed by Defendant.   Despite the existence of the warranties, Defendant failed to adequately inform Plaintiffs and members of the Classes that the Class Vehicles contained the Defective HVAC System and failed to provide a suitable repair or replacement of the Defective HVAC System free of charge within a reasonable time.

149.   Defendant breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

150.   On information and belief, Defendant has not suitably repaired or replaced the Defective HVAC System free of charge for Plaintiffs and members of the Classes despite the existence of the defect in the Class Vehicles at the time of sale or lease.

151.   Defendant was provided notice of the defect in the Defective HVAC System by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant has known of and concealed the defect in the Defective HVAC System and has failed to provide a suitable repair or replacement of the Defective HVAC System free of charge within a reasonable time.

152.   Any attempt by Defendant to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.   Among other things, Plaintiffs and the members of the Classes did not determine these time limitations, the terms of

48      FIRST AMENDED CLASS ACTION COMPLAINT

1   which unreasonably favored Defendant.   A gross disparity in bargaining power

2   existed between Defendant and members of the Classes, and Defendant knew or

3   should have known that the Class Vehicles were defective at the time of sale or lease

4   and that the Defective HVAC System posed a safety hazard.

5   153.   Further, the limited warranty promising to repair and/or correct a

6   manufacturing defect fails in its essential purpose because the contractual remedy is

7   insufficient to make Plaintiffs and members of the Classes whole because, on

8   information and belief, Defendant has failed and/or has refused to adequately provide

9   the promised remedies within a reasonable time.

10   154.   Defendant knew that the Class Vehicles were inherently defective and

11   did not conform to their warranties and Plaintiffs and members of the Classes were

12   induced to purchase or lease the Class Vehicles under false and/or fraudulent

13   pretenses.

14   155.   As a direct and proximate result of Defendant's breach of express

15   warranties, Plaintiffs and members of the Classes have been damaged in an amount to

16   be determined at trial.

17   156.   Finally, because of Defendant's breach of express warranty as set forth

18   herein, Plaintiffs and members of the Classes assert, as additional and/or alternative

19   remedies, the revocation of acceptance of the goods and the return to Plaintiffs and

20   members of the Classes of the purchase or lease price of all Class Vehicles currently

21   owned or leased, and for such other incidental and consequential damages as allowed.

22   **COUNT VI**

23   **Breach of Implied Warranty of Merchantability,**
**On behalf of the Nationwide Class or, alternatively,**

24   **on behalf of the California, Colorado, Florida, Kansas, Virginia, and**

25   **Washington Sub-Classes**

26   157.   Plaintiffs incorporate and reallege each preceding paragraph as though

27   fully set forth herein.

28

158.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the California, Colorado, Florida, Kansas, Virginia, and Washington Sub-Classes.

159.   Plaintiffs and members of the Classes purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.   At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.   Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

160.   Defendant is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code.

161.   With respect to leases, Defendant is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code.

162.   The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

163.   Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

164.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.   The Class Vehicles contain an inherent defect in the Defective HVAC System (at the time of sale or lease and thereafter) and present an undisclosed safety hazard to drivers and occupants.   Thus, Defendant breached its implied warranty of merchantability.

165.   Defendant cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

166.   Defendant was provided notice of the defect in the Defective HVAC System by numerous consumer complaints made to its authorized dealers nationwide,

FIRST AMENDED CLASS ACTION COMPLAINT

complaints to NHTSA, and through its own testing. Affording Defendant a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Defective HVAC System and, on information and belief, has refused to repair or replace the Defective HVAC System free of charge within a reasonable time.

167.  As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

168.  Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective HVAC System posed a safety hazard.

169.  Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

170.  The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

**COUNT VII**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, *et seq.***
**On behalf of the Nationwide Class or, alternatively,**
**on behalf of the California, Colorado, Florida, Kansas, Virginia, and**
**Washington Sub-Classes**

171.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

172.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the California, Colorado, Florida, Kansas, Virginia, and Washington Sub-Classes.

173.   Plaintiffs satisfy the MMWA jurisdictional requirement because Plaintiffs allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

174.   Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

175.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

176.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

177.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

178.   Defendant provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  Specifically, Defendant provided: (1) a Toyota New Vehicle Limited Warranty for 36 months or 36,000 miles which includes all components other than normal wear and maintenance items; or (2) a Lexus Basic Warranty for 48 months or 50,000 miles, whichever occurs first, which "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Lexus" subject to certain

exclusions.   Under warranties provided to members of the Classes, Defendant promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Defective HVAC System, at no cost to owners and lessees of the Class Vehicles.   As alleged herein, Defendant breached these warranties.

179.   Plaintiffs and members of the Classes experienced the defect in the Defective HVAC System within the warranty periods but Defendant failed to inform Plaintiffs and members of the Classes of the existence of the Defective HVAC System and associated safety hazard, and failed to provide a suitable repair or replacement of the Defective HVAC System free of charge within a reasonable time.

180.   Any attempt by Defendant to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in Defendant's warranty periods are also unconscionable and inadequate to protect Plaintiffs and members of the Classes.   Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendant.   A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

181.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

182.   Defendant breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defective HVAC System.   Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or

1  workmanship that fails to operate as represented by Defendant and presents a safety
2  risk.

3       183.   Affording Defendant a reasonable opportunity to cure its breach of
4  warranties would be unnecessary and futile.  At the time of sale or lease of each Class
5  Vehicle and all relevant times thereafter, Defendant knew, or was reckless in not
6  knowing, of the material misrepresentations and omissions concerning the standard,
7  quality or grade of the Class Vehicles and the existence of the Defective HVAC
8  System, but failed to repair or replace the Defective HVAC System and/or disclose
9  the defect.  Under the circumstances, the remedies available under any informal
10 settlement procedure would be inadequate and any requirement that Plaintiffs resort
11 to an informal dispute resolution procedure and/or afford Defendant a reasonable
12 opportunity to cure their breach of warranties is excused and thereby deemed
13 satisfied.

14      184.   Plaintiffs and members of the Classes would suffer economic hardship if
15 they returned their Class Vehicles, but did not receive the return of all payments
16 made by them to Defendant.  Thus, Plaintiffs and members of the Classes have not
17 re-accepted their Class Vehicles by retaining them.

18      185.   The amount in controversy of Plaintiffs' individual claims meets or
19 exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of
20 $50,000, exclusive of interest and costs, computed on the basis of all claims to be
21 determined in this lawsuit.

22      186.   Plaintiffs, individually and on behalf of members of the Classes, seek all
23 damages permitted by law, including diminution in the value of the Class Vehicles, in
24 an amount to be proven at trial.

25

26

27

28

**COUNT VIII**
**Unjust Enrichment**
**On behalf of the Nationwide Class or, alternatively,**
**on behalf of the California, Colorado, Florida, Kansas, Virginia, and**
**Washington Sub-Classes**

187.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

188.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the California, Colorado, Florida, Kansas, Virginia, and Washington Sub-Classes.

189.   Plaintiffs and members of the Classes conferred a benefit on Defendant by leasing or purchasing the Class Vehicles.  Defendant was and should have been reasonably expected to provide Class Vehicles free from the Defective HVAC System and associated safety risks.

190.   Defendant unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its false representations, omissions and concealment of the defect in the Defective HVAC System in Class Vehicles.

191.   As a proximate result of Defendant's false representations, omissions and concealment of the defect in Defective HVAC System in Class Vehicles, and as a result of Defendant's ill-gotten gains, benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Classes.  It would be inequitable for Defendant to retain its ill-gotten profits without paying the value thereof to Plaintiffs and members of the Classes.

192.   Plaintiffs and members of the Classes are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct.

193.   Plaintiffs and members of the Classes seek an order requiring Defendant to disgorge its gains and profits to Plaintiffs and members of the Classes, together with interest, in a manner to be determined by the Court.

1
2
3

**COUNT IX**
**Violation of Song-Beverly Consumer Warranty Act,**
**Cal. Civ. Code § 1791 *et seq*.**
**(On behalf of Plaintiff Dey and the Song-Beverly Sub-Class)**

4
5

194.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

6
7

195.   Plaintiff Dey brings this count on behalf of himself and members of the Song-Beverly Sub-Class.

8
9
10
11
12
13
14

196.   Plaintiff Dey and members of the Song-Beverly Sub-Class purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

15
16
17
18
19
20
21
22
23
24
25
26

197.   Defendant provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  Specifically, Defendant provided: (1) a Toyota New Vehicle Limited Warranty for 36 months or 36,000 miles which includes all components other than normal wear and maintenance items; or (2) a Lexus Basic Warranty for 48 months or 50,000 miles, whichever occurs first, which "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Lexus" subject to certain exclusions.  Under warranties provided to members of the Classes, Defendant promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Defective HVAC System, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendant breached these warranties.

27
28

198.   Plaintiffs and members of the Classes experienced the defect in the Defective HVAC System within the warranty periods but Defendant failed to inform Plaintiffs and members of the Classes of the existence of the Defective HVAC System and associated safety hazard, and failed to provide a suitable repair or replacement of the Defective HVAC System free of charge within a reasonable time.

199.   Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used, including for safe and reliable transportation.

200.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.   The Class Vehicles contain an inherent defect in the Defective HVAC System (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.   Thus, Defendant breached its implied warranties of merchantability and fitness.

201.   Any attempt by Defendant to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in Defendant's warranty periods are also unconscionable and inadequate to protect Plaintiffs and members of the Classes.   Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendant.   A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

202.   Defendant was provided notice of the defect in the Defective HVAC System by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA, and through its own testing.   Affording Defendant a

reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Defective HVAC System and, on information and belief, has refused to repair or replace the Defective HVAC System free of charge within a reasonable time.

203.   Defendant breached its express and implied warranties in violation of Cal. Civ. Code § 1791 *et seq*.

204.   As a direct and proximate result of Defendant's breach of its express and implied warranties, Plaintiffs and members of the Classes have suffered actual damages in an amount to be proven at trial.

205.   Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

206.   Plaintiff Dey and members of the Song-Beverly Sub-Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendant's willful conduct alleged herein. Plaintiff Dey and members of the Song-Beverly Sub-Class also seek reimbursement, replacement of the Defective HVAC Systems, and/or revocation of the purchase or lease of the Class Vehicles, and all other relief available under Cal. Civ. Code § 1794.

207.   The applicable statute of limitations for the express and implied warranty claims have been tolled by the discovery rule and fraudulent concealment. The applicable statute of limitations for implied warranty claims has also been tolled by the terms of the express warranty.

**COUNT X**
**Violation of Florida's Unfair & Deceptive Trade Practices Act,**
**Fla. Stat. § 501.201 *et seq*.**
**(On Behalf of Plaintiff Casper and the Florida Sub-Class)**

208.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

209.   Plaintiff Casper brings this count on behalf of himself and members of the Florida Sub-Class.

210.   Plaintiff and Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

211.   Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

212.   The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

213.   In violation of the FUDTPA, Defendant employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles.  Defendant knowingly concealed, suppressed and/or omitted material facts regarding the Defective HVAC System and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Casper and the Florida Sub-Class.

214.   Defendant actively suppressed the fact that the Defective HVAC System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects.  Further, Defendant employed unfair and deceptive trade practices to deny repair or replacement of the Defective HVAC System within a reasonable time in violation of the FUDTPA.  Defendant also breached its warranties as alleged herein in violation of the FUDTPA.

215.   Defendant's unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Casper and members of the Florida Sub-Class had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and

posed a safety risk.  Defendant possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective HVAC System and associated safety risks, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as Plaintiff Casper and members of the Florida Sub-Class did.

216.   Defendant intentionally and knowingly misrepresented and omitted facts regarding the Defective HVAC System and associated safety hazard with the intent to mislead Plaintiffs and Florida Sub-Class members.  Defendant knew, or should have known, that the Defective HVAC System is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard.

217.   Defendant owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to Plaintiff Casper and Florida Sub-Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective HVAC System.  Rather than disclose the defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

218.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System were intended to mislead consumers and misled Plaintiff Casper and Florida Sub-Class members.

219.   At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective HVAC System and its corresponding safety hazard were material to Plaintiff Casper and Florida Sub-Class members.  When Plaintiff Casper and Florida Sub-Class members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from defects and would not emit foul and noxious odors and/or pose an unavoidable safety hazard.  Had Defendant

disclosed that the Defective HVAC System was defective and would emit foul and noxious odors and/or pose an unavoidable safety hazard, Plaintiff Casper and Florida Sub-Class members would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

220.   Defendant had a continuous duty to Plaintiff Casper and members of the Florida Sub-Class to refrain from unfair and deceptive practices under the FUDTPA and to disclose the defect and associated safety hazard.  Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System and corresponding safety hazard are substantially injurious to consumers.  As a result of Defendant's knowing, intentional concealment and/or omission of the Defective HVAC System and associated safety hazard in violation of the FUDTPA, Plaintiffs and members of the Florida Sub-Class have suffered harm and/or continue to suffer harm by the threat of being exposed to foul and noxious odors and/or an unavoidable safety hazard, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective HVAC System, and the diminished value of their vehicles as a result of Defendant's deceptive and unfair acts and practices in the course of its business.

221.   Defendant has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

222.   Defendant's deceptive acts or practices occurred in the conduct of trade or commerce.  Defendant knew or should have known that its unlawful conduct violated the FUDTPA.

223.   Defendant's unlawful acts and practices affect the public interest, and trade and commerce in the State of Florida, and present a continuing safety hazard to Plaintiff Casper and members of the Florida Sub-Class.

224.   As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiff Casper and members of the Florida Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective HVAC System; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective HVAC System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective HVAC System.

225.   Defendant intentionally and knowingly misrepresented and/or omitted material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the Florida Sub-Class.

226.   Defendant knew or should have known that its conduct violated the FUDTPA.

227.   As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiff and the Florida Sub-Class have suffered injury-in-fact and/or actual damage.

228.   Plaintiff and the Florida Sub-Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

229.   Plaintiff and the Florida Sub-Class also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the FUDTPA.

**COUNT XI**
**Violation of the Kansas Consumer Protection Act,**
**Kan. Stat. Ann. § 50-623 *et seq*.**
**(On Behalf of Plaintiff Flinn and the Kansas Sub-Class)**

230.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

231.   Plaintiff Flinn brings this count on behalf of herself and members of the Kansas Sub-Class.

232.   Toyota is a "supplier" under the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-624(l) (the "KCPA").

233.   Plaintiff Flinn and members of the Kansas Sub-Class are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b).

234.   Plaintiff Flinn and members of the Kansas Sub-Class purchased or leased their Class Vehicles for personal, family, household, business or agricultural purposes.

235.   The sale and lease of the Class Vehicles to Plaintiff Flinn and members of the Kansas Sub-Class were "consumer transaction[s]" within the meaning of Kan. Stat. Ann. § 50-624(c).

236.   Under the KCPA, "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a).

237.   The KCPA specifically prohibits the following deceptive acts or practices: (1) knowingly making representations or with reason to know that "[p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" (2) knowingly making representations or with reason to know that "property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" (3) "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and (4) "the

1  willful failure to state a material fact, or the willful concealment, suppression or
2  omission of a material fact." Kan. Stat. Ann. § 50-626.

3      238.  The KCPA further provides that "[n]o supplier shall engage in any
4  unconscionable act or practice in connection with a consumer transaction."  Kan.
5  Stat. Ann. § 50-627(a).

6      239.  Defendant violated the KCPA by, *inter alia*: (1) representing that the
7  Class Vehicles have characteristics, uses, benefits, and qualities which they do not
8  have; (2) representing that the Class Vehicles are of a particular standard and quality
9  when they are not; (3) advertising the Class Vehicles with the intent not to sell them
10  as advertised; (4) willfully using, in any oral or written representation, exaggeration,
11  falsehood, innuendo or ambiguity as to a material fact; (5) willfully failing to state a
12  material fact, or willfully concealing, suppressing or omitting a material fact; and (6)
13  engaging in unconscionable acts or practices in connection with the lease and/or sale
14  of the Class Vehicles.

15      240.  In violation of the KCPA, Defendant employed unfair and deceptive acts
16  or practices, fraud, false pretense, misrepresentations, or concealment, suppression or
17  omission of a material fact with intent that others rely upon such concealment,
18  suppression or omission, in connection with the sale and/or lease of Class Vehicles.
19  Defendant knowingly concealed, suppressed and/or omitted material facts regarding
20  the Defective HVAC System and associated safety hazard and misrepresented the
21  standard, quality or grade of the Class Vehicles, which directly caused harm to
22  Plaintiff Flinn and the Kansas Sub-Class.

23      241.  Defendant actively suppressed the fact that the Defective HVAC System
24  in Class Vehicles is defective and presents a safety hazard because of materials,
25  workmanship, design and/or manufacturing defects.  Further, Defendant employed
26  unfair and deceptive trade practices to deny repair or replacement of the Defective
27  HVAC System within a reasonable time in violation of the KCPA.  Defendant also
28  breached its warranties as alleged herein in violation of the KCPA.

242.   Defendant's unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Flinn and members of the Kansas Sub-Class had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and posed a safety risk.  Defendant possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective HVAC System and associated safety risks, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as Plaintiff Flinn and members of the Kansas Sub-Class did.

243.   Defendant intentionally and knowingly misrepresented and omitted facts regarding the Defective HVAC System and associated safety hazard with the intent to mislead Plaintiffs and Kansas Sub-Class members.  Defendant knew, or should have known, that the Defective HVAC System is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard.

244.   Defendant owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to Plaintiff Flinn and Kansas Sub-Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective HVAC System.  Rather than disclose the defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

245.  Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System were intended to mislead consumers and misled Plaintiff Flinn and Kansas Sub-Class members.

246.   At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective HVAC System and its corresponding safety hazard were material to Plaintiff Flinn and

65   FIRST AMENDED CLASS ACTION COMPLAINT

Kansas Sub-Class members.  When Plaintiff Flinn and Kansas Sub-Class members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and would not emit foul and noxious odors and/or pose an unavoidable safety hazard.  Had Defendant disclosed that the Defective HVAC System was defective and would emit foul and noxious odors and/or pose an unavoidable safety hazard, Plaintiff Flinn and Kansas Sub-Class members would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

247.   Defendant had a continuous duty to Plaintiff Flinn and members of the Kansas Sub-Class to refrain from unfair and deceptive practices under the KCPA and to disclose the defect and associated safety hazard.  Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System and corresponding safety hazard are substantially injurious to consumers.  As a result of Defendant's knowing, intentional concealment and/or omission of the Defective HVAC System and associated safety hazard in violation of the KCPA, Plaintiffs and members of the Kansas Sub-Class have suffered harm and/or continue to suffer harm by the threat of being exposed to foul and noxious odors and/or an unavoidable safety hazard, and damages to be determined at trial.   Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective HVAC System, and the diminished value of their vehicles as a result of Defendant's deceptive and unfair acts and practices in the course of its business.

248.   Defendant has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

249.  Defendant's deceptive acts or practices occurred in the conduct of trade or commerce.  Defendant knew or should have known that its unlawful conduct violated the KCPA.

250.  Defendant's unlawful acts and practices affect the public interest, and trade and commerce in the State of Kansas, and present a continuing safety hazard to Plaintiff Flinn and members of the Kansas Sub-Class.

251.  As a direct and proximate result of Defendant's violations of the KCPA, Plaintiff Flinn and members of the Kansas Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective HVAC System; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective HVAC System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective HVAC System.

252.  Plaintiff Flinn and members of the Kansas Sub-Class seek actual damages against Defendant in an amount to be determined at trial and/or statutory damages pursuant to the KCPA.  *See* Kan. Stat. Ann. § 50-624.

253.  Plaintiffs and members of the Kansas Sub-Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the KCPA.  *See* Kan. Stat. Ann. § 50-623 *et seq*.

### COUNT XII
### Violation of the Virginia Consumer Protection Act,
### Va. Code Ann. § 59.1-196 *et seq*.
### (On Behalf of Plaintiff Kennedy and the Virginia Sub-Class)

254.  Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

255.  Plaintiff Kennedy brings this count on behalf of herself and members of the Virginia Sub-Class.

256. Defendants, Plaintiff Kennedy, and members of the Virginia Sub-Class are "persons" within the meaning of Va. Code § 59.1-198.

257. The sale and lease of the Class Vehicles are "consumer transaction[s]" within the meaning of Va. Code § 59.1-198.

258. The Class Vehicles are "goods" within the meaning of Va. Code § 59.1-198.

259. Defendant is a "supplier" within the meaning of Va. Code § 59.1-198.

260. Defendant violated the Virginia Consumer Protection Act ("VCPA") by *inter alia*: (1) "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" (2) [m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model; (3) [a]dvertising goods or services with intent not to sell them as advertised; and (4) [u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code § 59.1-200(A).

261. In violation of the VCPA, Defendant employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles. Defendant knowingly concealed, suppressed and/or omitted material facts regarding the Defective HVAC System and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Kennedy and the Virginia Sub-Class.

262. Defendant actively suppressed the fact that the Defective HVAC System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects. Further, Defendant employed unfair and deceptive trade practices to deny repair or replacement of Defective HVAC System within a reasonable time in violation of the VCPA. Defendant also breached its warranties as alleged herein in violation of the VCPA.

263.   Defendant's unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Kennedy and members of the Virginia Sub-Class had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and posed a safety risk.  Defendant possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective HVAC System and associated safety risks, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as the Plaintiff Kennedy and members of the Virginia Sub-Class did.

264.   Defendant intentionally and knowingly misrepresented and omitted facts regarding the Defective HVAC System and associated safety hazard with the intent to mislead Plaintiff Kennedy and Virginia Sub-Class members.  Defendant knew, or should have known, that the Defective HVAC System is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard.

265.   Defendant owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to Plaintiff Kennedy and Virginia Sub-Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective HVAC System.  Rather than disclose the defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

266.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System were intended to mislead consumers and misled Plaintiff Kennedy and Virginia Sub-Class members.

267.   At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective HVAC System and its corresponding safety hazard were material to Plaintiff Kennedy and

Virginia Sub-Class members.   When Plaintiff Kennedy and Virginia Sub-Class members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and would not emit foul and noxious odors and/or pose an unavoidable safety hazard.   Had Defendant disclosed that the Defective HVAC System was defective and would emit foul and noxious odors and/or pose an unavoidable safety hazard, Plaintiff Kennedy and Virginia Sub-Class members would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

268.   Defendant had a continuous duty to Plaintiff Kennedy and members of the Virginia Sub-Class to refrain from unfair and deceptive practices under the VCPA and to disclose the defect and associated safety hazard.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System and corresponding safety hazard are substantially injurious to consumers.   As a result of Defendant's knowing, intentional concealment and/or omission of the Defective HVAC System and associated safety hazard in violation of the VCPA, Plaintiff Kennedy and members of the Virginia Sub-Class have suffered harm and/or continue to suffer harm by the threat of being exposed to foul and noxious odors and/or an unavoidable safety hazard, and damages to be determined at trial.   Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective HVAC System, and the diminished value of their vehicles as a result of Defendant's deceptive and unfair acts and practices in the course of its business.

269.   Defendant has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

270.   Defendant's deceptive acts or practices occurred in the conduct of trade or commerce.   Defendant knew or should have known that its unlawful conduct violated the VCPA.

271.   Defendant's unlawful acts and practices affect the public interest, and trade and commerce in the State of Virginia, and present a continuing safety hazard to Plaintiff Kennedy and members of the Virginia Sub-Class.

272.   As a direct and proximate result of Defendant's violations of the VCPA, Plaintiff Kennedy and members of the Virginia Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective HVAC System; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective HVAC System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective HVAC System.

273.   Plaintiff Kennedy and members of the Virginia Sub-Class seek actual damages against Defendant in an amount to be determined at trial and/or statutory damages pursuant to the VCPA based on Defendant's wanton and willful conduct, costs, attorneys' fees, restitution, disgorgement of funds, and any other just and proper relief available under the VCPA.  *See* Va. Code § 59.1-204.

**COUNT XIII**
**Violation of the Washington Consumer Protection Act,**
**RCW 19.86 *et seq.***
**(On Behalf of the Washington Sub-Class)**

274.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

275.   The Stockinger Plaintiffs assert this count on behalf of themselves and members of the Washington Sub-Class.

71     FIRST AMENDED CLASS ACTION COMPLAINT

276.   The Stockinger Plaintiffs and members of the Washington Sub-Class are persons within the context of the Washington Consumer Protection Act, RCW 19.86 *et seq.* (the "WCPA").  *See* RCW 19.86.010(1).

277.   Defendant is a person within the context of the WCPA.  *See id.*

278.   Defendant is engaged in trade and commerce within the context of the WCPA.  *See* RCW 19.86.010(2).

279.   As alleged herein, Defendant committed unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the WCPA.  *See* RCW 19.86.020.

280.   In violation of the WCPA, Defendant employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles.  Defendant knowingly concealed, suppressed and/or omitted material facts regarding the Defective HVAC System and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to the Stockinger Plaintiffs and the Washington Sub-Class.

281.   Defendant actively suppressed the fact that the Defective HVAC System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects.  Further, Defendant employed unfair and deceptive trade practices to deny repair or replacement of the Defective HVAC System within a reasonable time in violation of the WCPA.  Defendant also breached its warranties as alleged herein in violation of the WCPA.

282.   Defendant's unfair and deceptive trade practices were likely to deceive a reasonable consumer.  The Stockinger Plaintiffs and members of the Washington Sub-Class had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and posed a safety risk.  Defendant possessed superior knowledge as to

FIRST AMENDED CLASS ACTION COMPLAINT

the quality and characteristics of the Class Vehicles, including the Defective HVAC System and associated safety risks, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as the Stockinger Plaintiffs and members of the Washington Sub-Class did.

283.  Defendant intentionally and knowingly misrepresented and omitted facts regarding the Defective HVAC System and associated safety hazard with the intent to mislead Plaintiffs and Washington Sub-Class members.  Defendant knew, or should have known, that the Defective HVAC System is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard.

284.  Defendant owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to the Stockinger Plaintiffs and Washington Sub-Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective HVAC System.  Rather than disclose the defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

285. Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System were intended to mislead consumers and misled the Stockinger Plaintiffs and Washington Sub-Class members.

286.  At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective HVAC System and its corresponding safety hazard were material to the Stockinger Plaintiffs and Washington Sub-Class members.  When the Stockinger Plaintiffs and Washington Sub-Class members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from defects and would not emit foul and noxious odors and/or pose an unavoidable safety hazard.  Had Defendant disclosed that the Defective HVAC

System was defective and would emit foul and noxious odors and/or pose an unavoidable safety hazard, the Stockinger Plaintiffs and Washington Sub-Class members would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

287.   Defendant had a continuous duty to the Stockinger Plaintiffs and members of the Washington Sub-Class to refrain from unfair and deceptive practices under the WCPA and to disclose the defect and associated safety hazard. Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System and corresponding safety hazard are substantially injurious to consumers.   As a result of Defendant's knowing, intentional concealment and/or omission of the Defective HVAC System and associated safety hazard in violation of the WCPA, Plaintiffs and members of the Washington Sub-Class have suffered harm and/or continue to suffer harm by the threat of being exposed to foul and noxious odors and/or an unavoidable safety hazard, and damages to be determined at trial.   Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective HVAC System, and the diminished value of their vehicles as a result of Defendant's deceptive and unfair acts and practices in the course of its business.

288.   Defendant has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.   Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

289.   Defendant's unlawful acts and practices affect the public interest, and trade and commerce in the State of Washington, and present a continuing safety hazard to the Stockinger Plaintiffs and members of the Washington Sub-Class.

290.   As a direct and proximate result of Defendant's violations of the WCPA, the Stockinger Plaintiffs and members of the Washington Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective HVAC System; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective HVAC System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective HVAC System.

291.   The Stockinger Plaintiffs and members of the Washington Sub-Class seek actual damages against Defendant in an amount to be determined at trial and compensatory and treble damages pursuant to RCW 19.86.090.

292.   The Stockinger Plaintiffs and members of the Washington Sub-Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the WCPA.  *See* RCW 19.86 *et seq*.

### COUNT XIV
### Violation of the Colorado Consumer Protection Act,
### Colo. Rev. Stat. § 6-1-101 *et seq*.
### (On Behalf of the Colorado Sub-Class)

293.   Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

294.   Plaintiff Alley asserts this count on behalf of herself and members of the Colorado Sub-Class.

295.   Defendant is a person within the context of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq*. (the "CCPA").  *See* Colo. Rev. Stat. § 6-1-102(6).

296.   As alleged herein, Defendant committed unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CCPA.  *See* Colo. Rev. Stat. § 6-1-101.

297. Defendant violated the CCPA by *inter alia*: "(e) [k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods . . . ; (g) [r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another . . . ; (i) [a]dvertis[ing] goods, services, or property with intent not to sell them as advertised . . .; and (u) [f]ail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

298. In violation of the CCPA, Defendant employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles. Defendant knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Defective HVAC System and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to the Plaintiff Alley and the Colorado Sub-Class.

299. Defendant actively suppressed the fact that the Defective HVAC System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects. Further, Defendant employed unfair and deceptive trade practices to deny repair or replacement of the Defective HVAC System within a reasonable time in violation of the CCPA. Defendant also breached its warranties as alleged herein in violation of the CCPA.

300. Defendant's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiff Alley and members of the Colorado Sub-Class had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and

posed a safety risk.  Defendant possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective HVAC System and associated safety risks, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as Plaintiff Alley and members of the Colorado Sub-Class did.

301.   Defendant intentionally and knowingly misrepresented and omitted facts regarding the Defective HVAC System and associated safety hazard with the intent to mislead Plaintiffs and Colorado Sub-Class members.  Defendant knew, or should have known, that the Defective HVAC System is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard.

302.   Defendant owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to the Plaintiff Alley and Colorado Sub-Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective HVAC System.  Rather than disclose the defect, Defendant engaged in unfair and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

303.   Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System were intended to mislead consumers and misled Plaintiff Alley and Colorado Sub-Class members.

304.   At all relevant times, Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective HVAC System and its corresponding safety hazard were material to the Plaintiff Alley and Colorado Sub-Class members.   When Plaintiff Alley and Colorado Sub-Class members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from defects and would not emit foul and noxious odors and/or pose an unavoidable safety hazard.  Had

1  Defendant disclosed that the Defective HVAC System was defective and would emit

2  foul and noxious odors and/or pose an unavoidable safety hazard, Plaintiff Alley and

3  Colorado Sub-Class members would not have purchased or leased the Class Vehicles,

4  or would have paid less for their vehicles.

5       305.   Defendant had a continuous duty to the Plaintiff Alley and members of

6  the Colorado Sub-Class to refrain from unfair and deceptive practices under the

7  CCPA and to disclose the defect and associated safety hazard.  Defendant's unfair

8  and deceptive acts or practices, affirmative misrepresentations and/or material

9  omissions regarding the Defective HVAC System, and corresponding safety hazard

10 are substantially injurious to consumers.   As a result of Defendant's knowing,

11 intentional concealment and/or omission of the Defective HVAC System and

12 associated safety hazard in violation of the CCPA, Plaintiff Alley and members of the

13 Colorado Sub-Class have suffered harm and/or continue to suffer harm by the threat

14 of being exposed to foul and noxious odors and/or an unavoidable safety hazard, and

15 damages to be determined at trial.   Owners and lessees of Class Vehicles also

16 suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for

17 diagnosis and repair or replacement of the Defective HVAC System, and the

18 diminished value of their vehicles as a result of Defendant's deceptive and unfair acts

19 and practices in the course of its business.

20      306.   Defendant has knowingly and willfully engaged in the unfair and

21 deceptive trade practices alleged herein.   Further, Defendant unconscionably

22 marketed the Class Vehicles to uninformed consumers in order to maximize profits

23 by selling additional Class Vehicles containing the undisclosed defect and

24 corresponding safety hazard.

25      307.   Defendant's unlawful acts and practices affect the public interest and

26 trade and commerce in the State of Colorado, were in bad faith, and present a

27 continuing safety hazard to the Plaintiff Alley and members of the Colorado Sub-

28 Class.

78    FIRST AMENDED CLASS ACTION COMPLAINT

308.    As a direct and proximate result of Defendant's violations of the CCPA, Plaintiff Alley and members of the Colorado Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective HVAC System; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective HVAC System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective HVAC System.

309.    Plaintiff Alley and members of the Colorado Sub-Class seek actual damages against Defendant in an amount to be determined at trial and statutory, treble, and/or punitive damages under the CCPA.

310.    Plaintiff Alley and members of the Colorado Sub-Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the CCPA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiffs and the Class and Sub-Classes, and award the following relief:

- An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Classes, and Plaintiffs' counsel as counsel for the Class and Sub-Classes;

- An order awarding declaratory relief and enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief;

- A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5

- An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

6

- An order awarding any applicable statutory and civil penalties;

7
8

- An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

9
10

- An award of costs, expenses, and attorneys' fees as permitted by law; and

11
12

- Such other or further relief as the Court may deem appropriate, just, and equitable.

13

## IX.    DEMAND FOR JURY TRIAL

14
15

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

16
17
18
19
20
21
22
23
24
25
26
27
28

DATED: March 24, 2017

KESSLER TOPAZ
 MELTZER & CHECK, LLP

By:   */s/ Peter A. Muhic*
      Joseph H. Meltzer
       *jmeltzer@ktmc.com*
      Peter A. Muhic
       *pmuhic@ktmc.com*
      Melissa L. Troutner
       *mtroutner@ktmc.com*
      280 King of Prussia Road
      Radnor, PA 19087
      Tel.:  (610) 667-7706
      Fax:  (610) 667-7056

      **KIESEL LAW LLP**
      Paul R. Kiesel
      Helen Zukin
      Jeffrey A. Koncius
      Nicole Ramirez

      *Attorneys for Plaintiffs and the Proposed Classes*