1   Paul R. Kiesel, State Bar No. 119854
    *kiesel@kiesel.law*
2   Helen E. Zukin, State Bar No. 117933
    *zukin@kiesel.law*
3   Jeffrey A. Koncius, State Bar No. 189803
    *koncius@kiesel.law*
4   Nicole Ramirez, State Bar No. 279017
    *ramirez@kiesel.law*
5   **KIESEL LAW LLP**
    8648 Wilshire Boulevard
6   Beverly Hills, CA 90211-2910
    Tel:  310-854-4444
7   Fax:  310-854-0812

8   Attorneys for Plaintiffs and the Proposed Classes

9   *(Additional Attorneys Listed on Signature Page)*

10   **UNITED STATES DISTRICT COURT**

11   **CENTRAL DISTRICT OF CALIFORNIA**

12

PAUL STOCKINGER, ELIZABETH STOCKINGER, GAILYN KENNEDY, BASUDEB DEY, BRENDA FLINN, ELIEZER CASPER, and YVETTE ALLEY on behalf of themselves and all others similarly situated,

    Plaintiffs,

    v.

TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,

    Defendant.

**Case No.: 17-cv-00035-VAP-KS**

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date:  June 5, 2017
Time:  2:00 p.m.
Judge:  Hon. Virginia A. Phillips
Ctrm.:  8A, 8th Floor

1

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................................................ 3

LEGAL STANDARD ................................................................................ 4

ARGUMENT ............................................................................................. 5

    I.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A DEFECT ..................................................................................... 5

    II.    PLAINTIFFS SUFFICIENTLY PLEAD BREACH OF WARRANTY ............................................................................ 8

        A.    Toyota Breached its Express Warranties............................ 8

            1.    The Warranties Cover the Alleged Defect .............. 8

            2.    Toyota Refuses to Remedy the Defect..................... 9

        B.    Toyota Breached its Implied Warranties........................... 11

        C.    Plaintiffs State MMWA and Song-Beverly Claims ........... 13

    III.    PLAINTIFFS SUFFICIENTLY PLEAD COMMON-LAW FRAUD ................................................................................... 14

        A.    Plaintiffs' Fraud Claims Satisfy Rule 9(b) ....................... 14

        B.    Toyota Had a Duty to Disclose ........................................ 16

    IV.    PLAINTIFFS STATE FRAUD CLAIMS UNDER STATE CONSUMER PROTECTION STATUTES ................................. 20

    V.    THE ECONOMIC LOSS RULE DOES NOT BAR PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS ................... 23

    VI.    PLAINTIFFS HAVE SUFFICIENTLY STATED EQUITABLE CLAIMS IN THE ALTERNATIVE .............................................. 24

    VII.    PLAINTIFFS KENNEDY AND ALLEY'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS ................... 25

    VIII.  THE COURT SHOULD NOT DISMISS CLAIMS BROUGHT ON BEHALF OF CLASS MEMBERS WHO PURCHASED OTHER VEHICLES ........................................................................ 26

CONCLUSION ....................................................................................... 27

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alin v. Am. Honda Motor Co.*,
   No. 08-cv-4825, 2010 WL 1372308 (D.N.J. Mar. 31, 2010) .............................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................. 4, 5

*Avedisian v. Mercedes-Benz USA, LLC*,
   No. 12-cv-936, 2013 WL 2285237 (C.D. Cal. May 22, 2013) .......................... 14

*Balistreri v. Pacifica Police Dept.*,
   901 F. 2d 696 (9th Cir. 1988) ......................................................... 4

*Becerra v. Gen. Motors LLC*,
   No. 15-cv-2365, 2017 WL 951028 (S.D. Cal. Mar. 10, 2017) ................... 20, 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................. 4, 7

*In re Brooke Corp.*,
   No. 08-cv-22786, 2012 WL 1759322 (Bankr. D. Kan. May 15,
   2012) ............................................................................... 24

*Brown v. Hain Celestial Grp., Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) ................................................. 26

*Bryde v. Gen. Motors, LLC*,
   No. 16-cv-02421, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) .................... 12

*Byler v. Deluxe Corp.*,
   No. 16-cv-493, 2016 WL 8669404 (S.D. Cal. Aug. 18, 2016) .......................... 27

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ............................................................ 4

*Carideo v. Dell, Inc.*,
    706 F. Supp. 2d 1122 (W.D. Wash. 2010)......................................................17, 18

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)..........................................................................12

*Coe v. Philips Oral Healthcare, Inc.*,
    No. 13-cv-518, 2014 WL 722501 (W.D. Wash. Feb. 24, 2014)........................11

*Commander Props. Corp. v. Beech Aircraft Corp.*,
    164 F.R.D. 529 (D. Kan. 1995)........................................................................14

*Crescent Wood Working Co. v. Accent Furniture, Inc.*,
    No. 04-cv-1318, 2005 WL 5918848 (C.D. Cal. Aug. 10, 2005) ..........................7

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015).......................................................................9, 13

*Decker v. Mazda Motor of Am., Inc.*,
    No. 11-cv-0873, 2011 WL 5101705 (C.D. Cal. Oct. 24, 2011)........................21

*DeCoteau v. FCA US LLC*,
    No. 15-cv-00020, 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015)...................7, 8

*In re Donnell*,
    479 B.R. 592 (D. Colo. 2012) ..........................................................................18

*Drilling Consultants, Inc. v. Hartford Life & Annuity Ins. Co.*,
    No. 12-cv-2690, 2014 WL 12575842 (M.D. Fla. Apr. 11, 2014).....................18

*Ehrlich v. BMW of N. Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010)..............................................................17

*Eisen v. Porsche Cars North America, Inc.*,
    No. 11-cv-9405, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ..........................16

*Evans v. Trinity Indus., Inc.*,
    137 F. Supp. 3d 877, 884 (E.D. Va. 2015).......................................................25

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..............................................16, 19, 24

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Ferrari v. Nat. Partners, Inc.*,
    No. 15-cv-04787, 2016 WL 4440242 (N.D. Cal. Aug. 23, 2016) ..................... 12

*Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*,
    983 F. Supp. 948 (D. Colo. 1997) ........................................................... 11

*Galoski v. Stanley Black & Decker, Inc.*,
    No. 14-cv-553, 2015 WL 5093443 (N.D. Ohio Aug. 28, 2015)........................ 10

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
    No. 15-cv-04125-VAP, 2016 WL 6562064 (C.D. Cal. Apr. 21,
    2016) (Phillips, J.) ................................................................................. 5

*Glaser v. Enzo Biochem, Inc.*,
    126 F. App'x 593 (4th Cir. 2005) ........................................................... 14

*Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*,
    399 F. Supp. 2d 1185 (D. Kan. 2005) ...................................................... 17

*Harrell v. Colonial Holdings, Inc.*,
    923 F. Supp. 2d 813 (E.D. Va. 2013)....................................................... 24

*Huntair, Inc. v. Gladstone*,
    774 F. Supp. 2d 1035 (N.D. Cal. 2011) ...................................................... 5

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)................................................................... 5

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012)............................................... 1, 12, 13

*Koulajian v. Trek Bicycle Corp.*,
    No. 90-cv-3156, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992)............................ 9

*Longest v. Green Tree Servicing LLC*,
    74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015)............................................... 24

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    No. 12-cv-07849, 2013 WL 5574626 (D.N.J. Oct. 9, 2013) ........................... 17

*Marsikian v. Mercedes Benz USA, LLC*,
    No. 08-cv-04876, 2009 WL 8379784 (C.D. Cal. May 4, 2009) ...................... 16

iv

*Martorella v. Deutsche Bank Nat'l Trust Co.*,
  931 F. Supp. 2d 1218 (S.D. Fla. 2013)................................................24

*McCabe v. Daimler AG*,
  948 F. Supp. 2d 1347 (N.D. Ga. 2013) ..............................................17

*Mier v. Owens*,
  57 F.3d 747 (9th Cir. 1995)................................................................4

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ....................................16, 19, 24

*O'Shea v. Epson Am., Inc.*,
  No. 09-cv-8063, 2011 WL 3299936 (C.D. Cal. Jul. 29, 2011)...........22

*Oddo v. Arcoaire Air Conditioning & Heating*,
  No. 15-cv-01985, 2017 WL 372975 (C.D. Cal. Jan. 24, 2017)............5

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 Fed. App'x 489
  (9th Cir. 2009) ..................................................................................22

*Ortiz v. Fibreboard Corporation*,
  527 U.S. 815 (1999) .........................................................................26

*Philips v. Ford Motor Co.*,
  No. 14-cv-02989, 2016 WL 1745948 (N.D. Cal. May 3, 2016)........25

*Robert W. Thomas & Anne McDonald Thomas Revocable Trust v.
  Inland Pac. Colo., LLC*,
  No. 11-cv-03333, 2012 WL 2190852 (D. Colo. June 14, 2012) ........24

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
  Case No. 15-cv-8629 FMO (C.D. Cal. Sept. 27, 2016), ECF No. 38..............1, 2

*Sanchez-Knutson v. Ford Motor Co.*,
  52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014) ....................................13

*Sater v .Chrysler Group, LLC*,
  No. 14-cv-00700-VAP, 2015 WL 736273 (C.D. Cal. Feb. 20, 2015)
  (Phillips, J.)..................................................................................*passim*

v

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010)............................................................. 6, 7

*Sonner v. Schwabe North America, Inc.*,
    No. 15-cv-1358-VAP, 2017 WL 474106 (C.D. Cal. Feb. 2, 2017)
    (Phillips, J.)..................................................................................... 26

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017).................................................................. 7

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014)................................................... 10

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
    492 F. Supp. 2d 1314 (M.D. Fla. 2007) ............................................... 21

*Thomas v. Brett Sports & Entm't, Inc.*,
    No. 16-cv-00480, 2016 WL 4472995 (C.D. Cal. Aug. 23, 2016) ..................... 27

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
    Practices, & Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. Nov. 30, 2010)................................. 8, 11, 13, 16

*Victorino v. FCA US LLC*,
    No. 16-cv-1617, 2016 WL 6441518 (S.D. Cal. Nov. 1, 2016)................ 8, 16, 25

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009)................................................................ 27

*In re Volkswagen Timing Chain Litig.*,
    Case No. 16-cv-2765 (D.N.J. May 8, 2016), ECF No. 48, at 33 ........................ 13

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008)................................................................ 21

*Williams v. Gradall Co.*,
    990 F. Supp. 442 (E.D. Va. 1998)................................................... 13, 22

*Williams v. Yamaha Motor Company Ltd.*,
    851 F.3d 1015 (9th Cir. 2017)............................................................... 22

vi

*Yagman v. General Motors Company*,
  No. 14-cv-4696, 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) ...................... 7, 8

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................................................. 21

**State Cases**

*Alejandre v. Bull*,
  195 Wash. 2d 674 (Wash. 2007) ........................................................................... 23

*Berschauer Phillips Const. Co. v. Concrete Sci. Servs. of Seattle,*
  *L.L.C.*, 135 Wash. App. 1025 (Wash. Ct. App. 2006) ........................................ 12

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230 (2011) ................................................................................ 18

*Buckland v. Threshold Enterprises, Ltd.*,
  155 Cal. App. 4th 798 (2007) ................................................................................ 21

*Cole v. Hewlett Packard Co.*,
  84 P.3d 1047 (Kan. Ct. App. 2004) ...................................................................... 21

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ................................................................................ 21

*Colo. Motor Vehicle Dealer Bd. v. Butterfield*,
  9 P.3d 1148 (Colo. Ct. App. 2000) ....................................................................... 14

*David v. Hett*,
  270 P.3d 1102 (Kan. 2011) .................................................................................... 24

*Eastwood v. Horse Harbor Found., Inc.*,
  241 P. 3d 1256 (Wash. 2010) ................................................................................ 23

*Gandy v. Trans World Comput. Tech. Grp.*,
  787 So. 2d 116 (Fla. Dist. Ct. App. 2001) ........................................................... 14

*Gonzales v. Assocs. Fin. Serv. Co. of Kansas*,
  967 P.2d 312 (1998) ............................................................................................... 18

*Hodges v. Johnson*,
  199 P.3d 1251 (Kan. 2009) ............................................................................ 11, 12

PLAINTIFFS' MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

*Hooper v. Barnett Bank of W. Florida,*
   474 So.2d 1253 (Fla. App. 1985) ........................................................................ 18

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington,*
   *Inc.*, 170 P.3d 10 (Wash. 2007) ....................................................................... 21

*Investors Equity Life Holding Co. v. Schmidt,*
   195 Cal.App.4th 1519 (2011) ......................................................................... 25

*Isip v. Mercedes-Benz USA, LLC,*
   155 Cal. App. 4th 19 (2007) .................................................................... 1, 11

*Jackowski v. Borchelt,*
   278 P.3d 1100 (Wash. 2012) ......................................................................... 23

*Jiminez v. Super. Ct.,*
   29 Cal. 4th 473 (2002) .................................................................................. 23

*Kirkham v. Smith,*
   23 P.3d 10 (Wash. Ct. App. 2001) ................................................................. 14

*Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.,*
   965 P.2d 105 (Colo. 1998) ............................................................................ 18

*Maronda Homes, Inc. of Florida v. Lakeview Reserve Homeowners*
   *Ass'n, Inc.*, 127 So. 3d 1258 (Fla. 2013) ...................................................... 11

*Mocek v. Alfa Leisure, Inc.,*
   114 Cal. App. 4th 402 (2003) ........................................................................ 11

*Morgen Indus., Inc. v. Vaughan,*
   471 S.E.2d 489 (Va. 1996) ............................................................................ 11

*Patterson v. BP Am. Prod. Co.,*
   360 P.3d 211 (Colo. Ct. App. 2015) .............................................................. 25

*Robinson Helicopter Co. v. Dana Corp.,*
   34 Cal. 4th 979 (2004) .................................................................................. 14

*In re Takata Airbag Prod. Liab. Litig.,*
   No. 15-md-2599, 2017 WL 775811 (S.D. Fla. Feb. 27, 2017) ........................ 18

PLAINTIFFS' MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

*Thomas v. Ruddell Lease-Sales, Inc.*,
    716 P.2d 911 (Wash. 1986) .................................................................... 11

**State Statutes**

CAL. COM. CODE § 2719(2) .................................................................... 9

COLO. REV. STAT. § 4-2-719(2) ............................................................ 9

FLA. STAT. § 672.719(2) ......................................................................... 9

K.S.A. 84-2-314(2)(c) .............................................................................. 11

Kan. Stat. Ann. § 84-2-719(2) .................................................................. 9

VA. CODE ANN. § 59.1-508.3(b) ............................................................ 9

Wash. Rev. Code Ann. § 62A.2-719(2) .................................................... 9

**Rules**

FED. R. CIV. P. 8(a) .................................................................................. 2

FED. R. CIV. P. 8(a)(3) ............................................................................ 24

FED. R. CIV. P. 9(b) ......................................................................... *passim*

FED. R. CIV. P. 12(b)(6) ........................................................................... 4

Fed. R. Civ. P. 23(a) ................................................................................ 26

An automobile should safely and reliably transport passengers without emitting noxious and foul odors into the passenger cabin.  As other courts have recognized, "[a] vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Keegan v. Am. Honda Motor Co.,* 838 F. Supp. 2d 929, 946 (C.D. Cal. 2012) (quoting *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007)).

Despite numerous consumer complaints and long-standing knowledge that the Heating, Ventilation, and Air Conditioning system  installed in Class Vehicles (the "Defective HVAC System") is defective and emits foul odors into the vehicles' passenger compartments, Defendant Toyota Motor Sales U.S.A., Inc. ("Defendant" or "Toyota") has failed to provide Plaintiffs and Class members with an adequate remedy.[1]  As Judge Olguin recently recognized in a similar case against Toyota, "Toyota cannot turn a blind eye (or in this case a pinched nose) to the many reports of noxious and foul odors emitted by the Camry's HVAC system." *Salas v. Toyota Motor Sales, U.S.A., Inc.,* Case No. 15-cv-8629 FMO (C.D. Cal. Sept. 27, 2016),

---

[1] As defined in the First Amended Complaint ("FAC"), Class Vehicles include: 2010-2015 Toyota 4Runner, 2007-2015 Toyota Avalon, 2013-2015 Toyota Avalon HV, 2009-2015 Toyota Corolla, 2008-2015 Toyota Highlander, 2008-2015 Toyota Highlander HV, 2008-2015 Toyota Land Cruiser, 2009-2015 Toyota Matrix, 2006-2015 Toyota Prius, 2012-2015 Toyota Prius C, 2010-2015 Toyota Prius PHV, 2012-2015 Toyota Prius V, 2006-2015 Toyota RAV4, 2008-2015 Toyota Sequoia, 2004-2015 Toyota Sienna, 2007-2015 Toyota Tundra, 2009-2015 Toyota Venza, 2007-2015 Toyota Yaris, 2007-2014 Toyota FJ Cruiser, 2013-2014 Lexus GS 350/450h, 2014 Lexus IS 250/350, 2011-2014 Lexus CT 200h, 2007-2014 Lexus ES 350, 2013-2014 Lexus ES 300h, 2006-2011 Lexus GS 300/350/430/450h/460, 2010-2014 Lexus GX 460, 2010-2012 Lexus HS 250h, 2006-2013 Lexus IS 250/350, 2010-2014 Lexus IS 250C/350C, 2008-2014 Lexus IS F, 2012 Lexus LFA, 2007-2014 Lexus LS 460, 2008-2014 Lexus LS 600h, 2008-2014 Lexus LX 570, 2010-2014 Lexus RX 350/450h, 2006-2009 Lexus GX 470, 2007-2009 Lexus RX 350, and 2006-2008 Lexus RX 450h.  FAC ¶ 2.

1

ECF No. 38, at 18 n.11, attached as Exhibit 1 to the Declaration of Peter A. Muhic ("Muhic Decl.") filed contemporaneously.

In its Memorandum of Points and Authorities in Support of Motion to Dismiss First Amended Complaint ("Motion" or "Mot."), Toyota does not challenge the basic fact that no reasonable consumer expects to purchase a vehicle containing an HVAC system that emits foul odors.  Instead, Toyota argues that it is not the Defective HVAC System that has caused these unacceptable conditions, but instead other sources like "dirty gym clothes and take-out food; variations in outside temperature; and the frequency and settings of HVAC system usage."  Mot. at 2.

Toyota's self-serving hypothesis regarding the source of the odors and contaminants emitted by Class Vehicles directly contradicts the allegations in the First Amended Class Action Complaint ("FAC"), which must be taken as true on a motion to dismiss.  Plaintiffs allege in no uncertain terms that the Defective HVAC System has caused noxious and foul odors to be emitted into Class Vehicles – not the other sources that Toyota suggests.  *See* FAC ¶¶ 3, 5, 10, 17, 19, 21, 23, 25, 27, 36-42, 49.   Toyota's hypothetical, counter-factual speculation is a wholly insufficient basis to dismiss Plaintiffs' FAC.

Like the plaintiffs in *Salas,* and the numerous other cases concerning similar allegations about automotive defects, Plaintiffs here have pleaded sufficient facts to state claims against Toyota.  This is true with respect to claims subject to notice pleading under Federal Rule of Civil Procedure 8(a), as well Plaintiffs' fraud claims which are examined under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.   Accordingly, as this Court and others have done when considering similar claims involving automobile defects, this Court should deny Toyota's Motion and allow Plaintiffs to pursue recovery for the common wrongs they and Class members have suffered.

2

# FACTUAL BACKGROUND

The Class Vehicles are equipped with a Defective HVAC System that promotes and emits foul and noxious odors and/or mold and other contaminants into the air. FAC ¶ 36. Specifically, the Defective HVAC System fails to adequately remove water from the Defective HVAC Systems' evaporators and surrounding enclosures, thus causing a moist environment that promotes foul odors and microbial growth. FAC ¶ 39. As cold refrigerant passes through and into the Defective HVAC System's evaporator, it absorbs heat from the air and produces liquid water as the air is dehumidified. FAC ¶ 41. A properly functioning HVAC system will drain the condensed, collected water through a rubber hose onto the ground. *Id.* However, the Defective HVAC System fails to adequately drain this condensed water, aggravating the tendency of the mold growth and causing and foul and noxious odors to be emitted from the Defective HVAC system from pollen, debris and other contaminants that become trapped in the undrained water. *Id.*

The Defective HVAC System has created at least two safety hazards. First, where the undrained water has led to mold and microbial growth on the evaporator, the mold and microbial pollution is sent into the passenger compartment. Indoor exposure to mold has been linked to upper respiratory tract symptoms, cough, and wheeze in otherwise healthy people; with asthma symptoms in people with asthma and with hypersensitivity pneumonitis in individuals susceptible to that immune-mediated condition. FAC ¶ 43. There is also evidence linking mold exposure with respiratory illness in otherwise healthy children, and there is evidence of a potential link between mold exposure and the development of asthma in children. FAC ¶¶ 43-44. Further, as recognized in a Safety Recall issued by Defendant in 2014, the trapped water has the potential to leak into the airbag module, which can short circuit the circuit board inside the module, illuminating the airbag warning light and

3

disabling the airbag or causing inadvertent deployment.  FAC ¶ 46.  No reasonable consumer expects to purchase a vehicle with a Defective HVAC System that exposes them to foul and noxious odors and/or unsafe conditions.  Plaintiffs and members of the Class had no reasonable way to know that the Class Vehicles contained Defective HVAC Systems and posed a safety hazard.  FAC ¶ 45.

In unknowingly purchasing or leasing these Class Vehicles with Defective HVAC Systems, Plaintiffs and members of the Class paid more for their vehicles than they should have and suffered increased depreciation and diminished market value and other damages, including health risks, as a result of Toyota's material misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Defective HVAC System.  FAC ¶¶ 47, 48.  Accordingly, Plaintiffs bring this lawsuit seeking recovery on their own behalf and on behalf of similarly situated Class members.

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in favor of Plaintiffs, accept the allegations of the complaint as true, and determine whether Plaintiffs' factual allegations present plausible claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).  A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Under Rule 12(b)(6), the Court must draw all reasonable inferences in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept*., 901 F. 2d 696, 699 (9th Cir. 1988) (citation omitted).

4

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

Fraud claims are subject to the heightened pleading standard under Rule 9(b), under which a plaintiff must "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This heightened pleading standard is required so a defendant "can defend against the charge and not just deny that they have done anything wrong." *Sater v .Chrysler Group, LLC,* No. 14-cv-00700-VAP, 2015 WL 736273, at *3(C.D. Cal. Feb. 20, 2015) (Phillips, J.) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1024 (9th Cir. 2009)). However, "[w]hen a claim rests on a fraudulent omission, the Rule 9(b) standard is somewhat relaxed because 'a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act.'" *Oddo v. Arcoaire Air Conditioning & Heating*, No. 15-cv-01985, 2017 WL 372975, at *18 (C.D. Cal. Jan. 24, 2017) (quoting *Huntar, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011)). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

## ARGUMENT

## I.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A DEFECT

Although Toyota attempts to couch its argument as being based on plausibility and specificity, Toyota's challenge is really directed at refuting Plaintiffs' claims that the Defective HVAC System causes odors and contaminants to be emitted into the passenger compartments of Class Vehicles. Mot. at 8-12. As this Court has recognized, arguments that raise facts contrary to the complaint are not appropriate at the motion to dismiss stage. *See GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc*., No. 15-cv-04125-VAP, 2016 WL 6562064, at *10 (C.D. Cal. Apr. 21, 2016) (Phillips, J.) (rejecting defendants' "attempt to couch

their argument as one regarding specificity," finding that if defendants intend "to raise facts contrary to the complaint . . . they must wait until a later stage in the proceedings").

Taking the allegations in the FAC as true, and drawing reasonable inferences in favor of Plaintiffs, there can be no question that Plaintiffs have alleged viable claims based on a Defective HVAC system in the Class Vehicles.  As described above, Plaintiffs allege the Defective HVAC System fails to properly drain water and moisture, creating an environment that is susceptible to the growth of mold and other contaminants and/or causes foul odors to be emitted into the passenger compartments of the Class Vehicles.  FAC ¶¶ 39-41.

Moreover, it is well established that claims made on information are sufficient when they are accompanied by "a statement of facts on which the belief is founded."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted).  Here, Plaintiffs' allegations about the foul odors being emitted from the Defective HVAC System are based on personal experience, not upon "information and belief" as Toyota suggests.  *See* FAC ¶ 17 (Stockinger Plaintiffs exposed to noxious and foul odors emitted from the Defective HVAC System, including "a 'musty water' smell when the vehicle starts"); ¶ 19 (Defective HVAC System installed in Plaintiff Kennedy's vehicle emits "a musty, burnt caramel smell every time she is in the vehicle"); ¶ 21 (Plaintiff Dey "experienced incidents where he and occupants of his vehicle have been exposed to noxious and foul odors emitted from the Defective HVAC System"); ¶ 23 (Plaintiff Flinn's vehicle contains a Defective HVAC System that "exposes drivers and passengers to noxious and foul odors"); ¶ 25 (Plaintiff Casper and occupants "have experienced incidents where they have been exposed to noxious and foul odors emitted from the Defective HVAC System, including moldy smells"); ¶ 27 (Plaintiff Alley's vehicle

6

contains a Defective HVAC System, "which exposes drivers and passengers to noxious and foul odors").

While Plaintiffs' allegations about the odors emanating from the Defective HVAC System are based on first hand experienced, Plaintiffs also allege upon information and belief that the foul smelling air is also "filled with mold and other contaminants." *Id.*  Here, as alleged, Plaintiffs' belief is based on information contained in **Toyota's own course manuals** that the odors are caused by, *inter alia*, "[m]icrobes [i.e., mold] growing on the evaporator surface" including "small living bacteria . . . carried into the evaporator case [that] grow in the warm, moist environment" of the HVAC System.  FAC ¶ 5.  As such, Plaintiffs have pled sufficient facts to support their allegation that the odor is caused by "mold or other contaminants" in the HVAC System, and Toyota's argument should be rejected. *See Crescent Wood Working Co. v. Accent Furniture, Inc.*, No. 04-cv-1318, 2005 WL 5918848, at *4 (C.D. Cal. Aug. 10, 2005) (allegations based on information and belief are sufficient, "so long as the allegations are accompanied by a statement of facts upon which the belief is founded" and can support a reasonable inference of fraud) (citation omitted); *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief . . . where the belief is based on factual information that makes the inference of culpability plausible.") (citation omitted).

Toyota's reliance on *Yagman v. General Motors Company*, No. 14-cv-4696, 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) and *DeCoteau v. FCA US LLC*, No. 15-cv-00020, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) is misplaced.  In *Yagman*, an auto defect case, the plaintiff alleged only that the "vehicle's engine stopped working" and that it "experienced a total electrical failure" – nothing more with respect to the defect.  2014 WL 4177295, at *3.  On defendant's motion to dismiss, the court understandably found that plaintiff had not "pled sufficient facts

7

to support his suggestion that a manufacturing defect is a plausible cause of the harm." *Id.*   Likewise, in *DeCoteau*, the complaint included only a "conclusory allegation that the Transmission Defect exists and is responsible for [] injuries," which the court found insufficient.  2015 WL 6951296, at *3.   Unlike the bare-bones allegations in both *Yagman* and *DeCoteau*, Plaintiffs here allege sufficient facts supporting their claim that the odors were caused by a defect in the HVAC System.  *See Victorino v. FCA US LLC*, No. 16-cv-1617, 2016 WL 6441518, at *4-5 (S.D. Cal. Nov. 1, 2016) (distinguishing *Yagman* and *DeCoteau*).

## II.   PLAINTIFFS SUFFICIENTLY PLEAD BREACH OF WARRANTY

Toyota's arguments for dismissing Plaintiffs' claims for breach of express and implied warranties are unavailing.

### A.   Toyota Breached its Express Warranties

The Defective HVAC System is covered by Toyota's New Vehicle Limited Warranty and the Lexus Basic Warranty; however, although Toyota has repaired certain Class Vehicles based on consumer complaints, those repairs merely replaced air filters and/or performed other measures that, according to the Toyota Course Manual and the Technical Service Bulletins ("TSBs") issued by Defendant, are *not* effective to repair the Defective HVAC System as warranted.  FAC ¶¶ 11, 56.

#### 1.   The Warranties Cover the Alleged Defect

Toyota's mischaracterization of Plaintiffs' allegations as solely concerning a design defect does not control whether the complaint survives.  At "the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin v. Am. Honda Motor Co*., No. 08-cv-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754

8

F. Supp. 2d 1145, 1181 (C.D. Cal. Nov. 30, 2010) ("*Toyota I*").   Here, while Plaintiffs do allege that the Defective HVAC System is defectively designed, Plaintiffs also allege that the noxious and foul odors could also be caused by defects in materials, workmanship, or manufacture.  *See* ¶¶ 45, 109, 111, 123, 146, 149. Plaintiffs unmistakably allege that condensed water is collecting in the evaporator and surround enclosure when it is supposed to drain out though a hose onto the ground.  FAC ¶ 41.  While the trapped water may be caused by a defective design, discovery is needed to determine whether the water could also become trapped due to defects in the manufacturing process or particular materials that were used in the HVAC assembly.

Furthermore, although this Court held otherwise in *Sater,* other courts have found that design defects are covered by warranties covering workmanship.  *See Koulajian v. Trek Bicycle Corp*., No. 90-cv-3156, 1992 WL 28884, at *2 (S.D.N.Y. Feb. 11, 1992) (the term "'workmanship' could refer to . . . designs as well as to implementation of those designs in the manufacturing process").  *See also Daniel v. Ford Motor Co*., 806 F.3d 1217, 1225 (9th Cir. 2015) (where an express warranty is ambiguous, it "must be construed to guarantee against both manufacturing and design defects.").

### 2.    Toyota Refuses to Remedy the Defect

Additionally, Plaintiffs' express warranty claims do not fail on account of Plaintiffs' purported failure to allege that they "sought repairs of the alleged defect during the warranty period for his or her vehicle" or that "Toyota failed to repair the vehicle in response to such a request."  Mot. at 13.  Where a warrantor is unable to cure a defect, the limitation requiring repair is nullified.  *See* U.C.C. § 2-719(2)[2]

[2] This U.C.C. provision has been adopted in all six states in which Plaintiffs reside. *See* CAL. COM. CODE § 2719(2); COLO. REV. STAT. § 4-2-719(2); FLA. STAT. § 672.719(2); VA. CODE ANN. § 59.1-508.3(b); Kan. Stat. Ann. § 84-2-719(2); Wash. Rev. Code Ann. § 62A.2-719(2).

9

1  ("Where circumstances cause an exclusive or limited remedy to fail of its essential

2  purpose, remedy may be had as provided in this [code]."); *Galoski v. Stanley Black*

3  *& Decker, Inc.*, No. 14-cv-553, 2015 WL 5093443, at *6 (N.D. Ohio Aug. 28,

4  2015) (denying defendant's motion for summary judgment with respect to breach of

5  express warranty claim based on futility argument and noting that "[defendant] does

6  not contend that it could have repaired or replaced the product with a working

7  version").

8      Toyota has made abundantly clear that any effort on Plaintiffs' part to seek a

9  permanent fix to the defect would have been futile.  Indeed, beginning in 1997,

10  Toyota and Lexus issued a series of TSBs to their exclusive network of dealerships

11  acknowledging the foul and noxious odors emanating from the Defective HVAC

12  Systems *and admitting that there is no way to rectify the problem and eliminate the*

13  *odors*.  FAC ¶ 4.  Toyota also admitted in its course manual on air conditioning and

14  climate control that HVAC odors "are a common complaint" of Class Vehicle

15  owners and that "there is no permanent mechanical repair."  *Id.*  Plaintiffs'

16  allegations of futility are further supported by the fact that individuals who filed

17  complaints with NHTSA stated that Toyota and Lexis replaced the air filters and

18  attempted other repairs, but failed to remove the odor.  FAC ¶ 56.

19      Toyota's cases are inapposite.  Indeed, in *Cooley v. Big Horn Harvestore*

20  *Systems, Inc.*, the court found defendant's argument that it was not given the

21  opportunity to repair or replace not persuasive because the agreement at issue was

22  unclear as to the method or means for seeking repair or replacement.  813 P. 2d

23  736, 745 (Colo. 1991).  Similarly in *David v. American Suzuki Motor Corporation*,

24  the court did not dismiss warranty claims for failure to present the product for

25  repair, instead, the court focused on whether plaintiff's remedy under the breach of

26  warranty claim was limited to repair or replacement.  629 F. Supp. 2d 1309, 1319

27  (S.D. Fla. 2009).  *See also Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.,* 992 F.

28

Supp. 2d 962, 978 (C.D. Cal. 2014) (examining whether repair or replacement would be futile); *Toyota I*, 754 F. Supp. 2d at 1179 (same); *Coe v. Philips Oral Healthcare, Inc.*, No. 13-cv-518, 2014 WL 722501 (W.D. Wash. Feb. 24, 2014) (recognizing the futility exception).

### B.    Toyota Breached its Implied Warranties

Under California, Florida, Kansas, Virginia, Washington, and Colorado law, the implied warranty of merchantability requires that products possess "the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003); *Maronda Homes, Inc. of Florida v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1268 (Fla. 2013) (implied warranties of fitness and merchantability require a product to be "reasonably fit for the ordinary or general purpose intended"); *Hodges v. Johnson*, 199 P.3d 1251, 1257 (Kan. 2009) (quoting K.S.A. 84-2-314(2)(c) (defining merchantable goods as goods that are "fit for the ordinary purposes for which such goods are used"); *Morgen Indus., Inc. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996) (implied warranty requires goods to be fit for the use to which they would ordinarily be put); *Thomas v. Ruddell Lease-Sales, Inc.*, 716 P.2d 911, 915 (Wash. 1986) (holding that to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used"); *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 948, 958 (D. Colo. 1997) ("To be 'merchantable,' goods must be fit for their ordinary purpose").

With respect to automobiles, fitness for ordinary use requires that the vehicle do more than just "provide[] transportation from point A to point B." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th, 19, 27 (Cal. Ct. App. Sept. 12, 2007). A vehicle that smells is not fit for its intended purpose. *Id.*; Muhic Decl., Ex. 1 at 20 (rejecting argument that Toyota Camry was fit for ordinary purpose, and sustaining implied warranty claim, where HVAC system emitted noxious and foul

11

odors); *Hodges*, 199 P.3d at, 1261 (finding a defective air conditioner that caused, *inter alia*, a strong odor, could breach the implied warranty of merchantability because it disrupted the intended purpose of comfort in travel).

In addition, to comply with the implied warranty of fitness, an automobile must also be safe. *Ferrari v. Nat. Partners, Inc.*, No. 15-cv-04787, 2016 WL 4440242, at *11 (N.D. Cal. Aug. 23, 2016) ("fitness for the ordinary purpose is shown if the product is in safe condition and substantially free of defects"). Here, as alleged, the foul and noxious odors caused by the Defective HVAC System expose passengers to mold and other contaminants that pose a serious health risk, and the trapped water can also disrupt the operation of vehicles' airbag systems. FAC ¶¶ 43-46. At most, Toyota's interpretation of the Center for Disease Control's publication about mold exposure creates a disputed issue of fact – it comes nowhere close to conclusively disproving Plaintiffs' allegations. *See* Mot. at 20.

Toyota's argument that Plaintiffs' implied warranty claim under California, Florida, Washington and Virginia law should be dismissed for lack of privity also fails. Mot. at 14-15. While Toyota is correct that the court in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) dismissed implied warranty claims against an automobile manufacturer for lack of privity, as this Court has recognized, there is "a well-established exception to that rule, which entitles intended third-party beneficiaries to assert their own breach of warranty claims." *Sater,* 2015 WL 736273, at *8. *See also Bryde v. Gen. Motors, LLC*, No. 16-cv-02421, 2016 WL 6804584, at *15-16 (N.D. Cal. Nov. 17, 2016); *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012). Washington also recognizes the third party beneficiary exception to the privity rule. *Berschauer Phillips Const. Co. v. Concrete Sci. Servs. of Seattle, L.L.C.*, 135 Wash. App. 1025 (Wash. Ct. App. 2006) (Washington has carved out an exception to this vertical privity requirement "where the plaintiff was the intended third party

12

beneficiary of the implied warranty that the manufacturer gave to its intermediate dealer).  Similarly, lack privity is not a defense to implied warranty claims against under Virginia and Florida.  *See In re Volkswagen Timing Chain Litig.,* Case No. 16-cv-2765 (D.N.J. May 8, 2016), ECF No. 48, at 33, attached as Exhibit 2 to the Muhic Decl. (vertical privity not required under Florida law); *Williams v. Gradall Co.*, 990 F. Supp. 442, 445 (E.D. Va. 1998) ("Lack of privity of contract, however, is no longer a defense in Virginia to a claim of breach of warranty.") (citation omitted); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014) (holding that purchaser of alleged defective vehicle sufficiently alleged breach of implied warranty despite lack of privity under Florida law).  Here, the intended beneficiaries of the warranties are the ultimate purchasers and drivers of Class Vehicles, not the vehicle dealerships.  Accordingly, Plaintiffs have pleaded viable implied warranty claims.

## C.  Plaintiffs State MMWA and Song-Beverly Claims

"Claims under the Magnuson–Moss Warranty Act ("MMWA") stand or fall with express and implied warranty claims under state law."  *Daniel*, 806 F.3d at 1227 (internal quotations omitted).  Thus, because Plaintiffs adequately plead warranty claims, they also have properly stated claims under the MMWA.  The same is true for Plaintiff Dey's Song Beverly-Act Claim brought on behalf of the California sub-class.  *See Keegan*, 838 F. Supp. 2d at 948 (holding plaintiff adequately pled a claim under the Song-Beverly Act because he adequately pled a claim for breach of the implied warranty of merchantability).

Additionally, the MMWA does not require that Plaintiffs follow Toyota's purported informal dispute resolution procedures ("IDR"), as Toyota contends. Mot. at 15-16.  Even where an automobile manufacturer sets up a mandatory IDR procedure, the MMWA does not require that Plaintiffs comply with the IDR process where such compliance would be futile.  *See Toyota I*, 754 F. Supp. 2d at

13

1188-89. Here, as described above, Plaintiffs allege specific facts showing that Defendant has acknowledged the existence of the Defective HVAC System and related safety and health hazards, but will not fix the problem. FAC ¶¶ 4, 5, 56, 63. Indeed, Defendant has specifically advised that "there is no permanent mechanical repair" and that "there is no way to eliminate these odors." FAC ¶¶ 4-5. Accordingly, any attempt by Plaintiffs to follow the IDR procedure would have been futile; therefore, Plaintiffs' MMWA claims should be upheld.

## III. PLAINTIFFS SUFFICIENTLY PLEAD COMMON-LAW FRAUD

To state a claim for common-law fraud, Plaintiffs must allege "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Avedisian v. Mercedes-Benz USA, LLC*, No. 12-cv-936, 2013 WL 2285237, at *8 (C.D. Cal. May 22, 2013) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)). *See also Gandy v. Trans World Comput. Tech. Grp.,* 787 So. 2d 116, 118 (Fla. Dist. Ct. App. 2001); *Commander Props. Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 539 (D. Kan. 1995); *Glaser v. Enzo Biochem, Inc*., 126 F. App'x 593, 599 (4th Cir. 2005); *Kirkham v. Smith*, 23 P.3d 10, 13 (Wash. Ct. App. 2001); *Colo. Motor Vehicle Dealer Bd. v. Butterfield*, 9 P.3d 1148, 1152 (Colo. Ct. App. 2000).

Here, Toyota challenges the first element, asserting that Plaintiffs' fraud-based claims should be dismissed for failure to allege "a material misrepresentation or omission that Toyota had a duty to disclose." Mot. at 16. As shown below, Plaintiffs satisfy all of the required pleading elements.

### A. Plaintiffs' Fraud Claims Satisfy Rule 9(b)

Plaintiffs have sufficiently alleged that Toyota omitted and/or concealed the existence of the Defective HVAC System to increase profits by selling additional Class Vehicles. Specifically, Plaintiffs allege that since 1997 Defendant possessed

14

exclusive and superior knowledge of the safety hazard associated with the Defective HVAC System that emits foul and noxious odors and/or air filled with mold and other contaminants.   FAC ¶¶ 8, 49-50.   Despite this knowledge, Defendant intentionally withheld this information and failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles.  FAC ¶¶ 51-53. Rather than disclosing or fixing the defect, Defendant concealed the safety hazard through partial representations and omissions including that:

- Defendant was "confident [] that your Toyota will provide you with many years of enjoyable driving."
- Defendant was "dedicated to ensuring that you enjoy exceptional quality, dependability and peace of mind throughout your ownership experience."

FAC ¶¶ 124-25.   Yet, unbeknown to Plaintiffs, the Class Vehicles contained a "concealed defect that causes the Defective HVAC System to emit noxious and foul odors and/or emit mold and other contaminants." FAC ¶10.

Toyota's counter-factual argument that Plaintiffs failed to allege an omission rests on the misguided assertion that the noxious and foul odors originated from sources other than the Defective HVAC System. *See* Mot. at 18.  Again, Plaintiffs allege in no uncertain terms that the Defective HVAC System emitted noxious and foul odors and/or emit mold and other contaminants into the Class Vehicles beyond what a reasonable consumer would expect.  FAC ¶¶ 10, 17, 19, 21, 23, 25, 27, 29, 45, 69, 96.   At most, the owners' manuals for certain Plaintiffs' vehicles that Toyota attaches as exhibits suggest that the potential for routine HVAC odor could be reduced. Toyota did not disclose that it has known for many years that the Class Vehicles incorporate a defectively designed and/or manufactured HVAC System that creates foul odors and unsafe conditions – beyond what a reasonable consumer would expect – as alleged in the FAC.   Multiple courts have found similar

15

allegations regarding concealed automobile safety defects sufficient to satisfy Rule 9(b). *See, e.g.*, *Victorino,* 2016 WL 6441518, at *5-9*; *Sater,* 2015 WL 736273, at *11-13*; *Toyota I*, 754 F. Supp. 2d at 1190-91; *Marsikian v. Mercedes Benz USA, LLC*, No. 08-cv-04876, 2009 WL 8379784, at *8-9 (C.D. Cal. May 4, 2009) (defective air intake system); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (defective speedometers).

Plaintiffs' allegations are far different from those alleged in *Eisen v. Porsche Cars North America, Inc.*, No. 11-cv-9405, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012). In *Porsche*, the allegations were found to be deficient because the allegations lacked the particularity required under Rule 9(b). *Id.* at *3. For example, in *Porsche,* the plaintiff alleged that an engine shaft fails without explaining how it fails and alleged that the defect caused "engine failure" but did not expound on what parts of the vehicle were impacted. *Id.* In contrast, Plaintiffs here plainly allege that the failure to *properly drain moisture* from the HVAC causes foul odors. FAC ¶¶ 43-48. Unlike the plaintiffs in *Porsche*, Plaintiffs sufficiently link the odors to a particular defect in HVAC system.

### B. Toyota Had a Duty to Disclose

Toyota had a duty to disclose because it had exclusive and superior knowledge of the defect, but made only partial disclosures and concealed the safety risks.

There is a duty to disclose where a defendant is in possession of exclusive knowledge of a defect. "[E]xclusivity is analyzed in part by determining whether the defendant has superior knowledge." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (finding manufacturer had duty to disclose based on exclusive knowledge of a defect under, *inter alia,* California, Massachusetts, New York, and Pennsylvania common law and consumer protection statutes); *Toyota I*, 754 F. Supp. 2d at 1174 (duty to disclose under California

16

statutory and common law where defendant has superior knowledge); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) (sustaining fraudulent concealment claim under Washington law where plaintiffs pled that "[defendant] was in a superior position to know the facts about the hidden defects in the computers [] and common sense dictates that the defects alleged by Plaintiffs are not of the sort readily ascertainable to the average customer"); *Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1195 (D. Kan. 2005) (a duty to disclose under Kansas law may be imposed where defendant had "superior knowledge combined with a relationship between the parties in the sense that there is, for example, a disparity of bargaining power or expertise"); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (sustaining fraudulent concealment claim under Virginia law in auto defect case).

Toyota had exclusive and superior knowledge of the Defective HVAC System by virtue of consumer complaints, field data, pre-production testing, pre-production design failure mode analysis, production design failure mode analysis of Class Vehicles and other FCA vehicles incorporating shift-by-wire technology. FAC ¶¶ 54-67. Courts unquestionably find a duty to disclose based on these types of allegations. *See, e.g.*, *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-cv-07849, 2013 WL 5574626, at *3 (D.N.J. Oct. 9, 2013) (plaintiffs sufficiently alleged automobile manufacturer had exclusive and superior knowledge through consumer complaints, pre-release testing data, and TSBs issued to dealers); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (plaintiffs sufficiently alleged automobile manufacturer had exclusive knowledge through "pre-release testing data, early consumer complaints to BMW and dealers, testing done in response to complaints, replacement part sales data, aggregate data from BMW dealers, and other internal sources").

17

Toyota argues that Florida and Colorado law do not recognize that "exclusive" knowledge establishes a duty to disclose.  Contrary to Toyota's claim, Florida appellate courts have long recognized that exclusive and superior knowledge may give rise to a duty to disclose under Florida law.  As the court recognized in *Hooper v. Barnett Bank of W. Florida*, 474 So.2d 1253, 1257 (Fla. App. 1985), Florida law recognizes three circumstances which give rise to a duty to disclose, including where a party "has knowledge of material facts to which the other party does not have access."  *See also Drilling Consultants, Inc. v. Hartford Life & Annuity Ins. Co*., No. 12-cv-2690, 2014 WL 12575842, at *1 (M.D. Fla. Apr. 11, 2014) (denying summary judgment and finding genuine issues of fact with respect to "whether [defendant] had superior and exclusive knowledge giving rise to its duty to disclose").  Colorado, meanwhile, has articulated a duty to disclose which is broad and which implicates equitable concerns.  *See Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) ("A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that 'in equity or good conscience' should be disclosed.") (citation omitted).

Further, a duty to disclose may be imposed after partial disclosures. *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 249 (2011) (partial disclosure triggered duty to disclose); *In re Takata Airbag Prod. Liab. Litig*., No. 15-md-2599, 2017 WL 775811, at *4 (S.D. Fla. Feb. 27, 2017) (duty to disclose under Florida law where defendant's prior representations were incomplete and misleading); *In re Donnell*, 479 B.R. 592, 596 (D. Colo. 2012) (duty to disclose where "necessary to prevent [a] partial or ambiguous statement from being misleading"); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) (duty to disclose "if necessary to prevent a partial or ambiguous statement of facts from being misleading") (citation omitted); *Gonzales v. Assocs. Fin. Serv. Co. of Kansas*,

18

967 P.2d 312, 332 (1998) (duty to disclose where "necessary to prevent [a] partial or ambiguous statement of the facts from being misleading").

Toyota made partial disclosures that gave rise to a duty to disclose.  By its own admission, Toyota disclosed only the "possibility of HVAC odor" in its owner's manuals, stating that "various odors from inside and outside the vehicle may enter into and accumulate in the air conditioning system.  This may then cause odor to be emitted from the vents."  Mot. at 6.  This disclosure was far from complete, as it did not acknowledge that the Defective HVAC Systems fail to adequately drain condensed water and thus create foul odors and unsafe conditions.  Notably, the disclosure did not reference that the odors are cause by "microbes" growing on the evaporator surface, even though Toyota recognized the same in its Course Manual and TSBs.  *See, e.g.*, FAC ¶ 5, 58.  Nor, does the disclosure inform Plaintiffs and the Class that Toyota had determined that "there is no permanent mechanical repair" and "no way to eliminate these odors."  *Id.* at ¶¶ 5, 63.  Indeed, if anything, Toyota's inclusion of excerpts from certain Owners Manuals support Plaintiffs' allegations that Toyota was not forthright about the full extent of the noxious and foul odors caused by the Defective HVAC System – suggesting instead that drivers and passengers may only be exposed to routine odors that could be expected and eliminated.

In addition, Toyota was under a duty to disclose because the Defective HVAC System poses a safety hazard.  *See, e.g.*, *In re MyFord Touch*, 46 F. Supp. 3d at 960 (finding allegedly defective vehicle media system posed safety issue giving rise to duty to disclose); *Falk*, 496 F. Supp. 2d at 1096.  As alleged, the Defective HVAC Systems create a safety hazard, exposing Plaintiffs and the Class to mold and/or other contaminants, which can result in allergies, asthma, respiratory issues and immunological reactions.  FAC ¶ 6.  The defect also creates additional safety concerns in certain Class Vehicles, where the accumulated water can leak

19

onto the airbag module, disabling the airbag or causing an inadvertent deployment. FAC ¶ 7. These allegations, which must be taken as true at this stage, plainly state that the Defective HVAC System has created unsafe conditions in Class Vehicles.

Toyota's attachment of a printout from the CDC (ECF No. 39-3) is unpersuasive. Initially, the CDC printout undermines Toyota's argument that mold growth is not a safety hazard. Specifically, the CDC printout notes that mold exposure can cause a number of health-related issues:

> In 2004 the Institute of Medicine (IOM) found there was sufficient evidence to link indoor exposure to mold with upper respiratory tract symptoms, cough and wheeze in otherwise healthy people; with asthma symptoms in people with asthma … Other recent studies have suggested a potential link of early mold exposure to development of asthma in some children …

ECF 39-3 at 4. While Toyota cites the CDC printout for the proposition that mold can be found in multiple environments, this is not dispositive as to whether routine exposure to mold in Class Vehicles' enclosed passenger compartments can create a safety hazard. On balance, the CDC printout raises questions of fact, which are not suitable for resolution at the motion to dismiss stage.

## IV.   PLAINTIFFS STATE FRAUD CLAIMS UNDER STATE CONSUMER PROTECTION STATUTES

Toyota's arguments for dismissal of Plaintiffs' state consumer protection statute claims also fail.

*First*, contrary to Toyota's argument, the California and state consumer protection statutes at issue here do not require affirmative misrepresentation and reliance. The UCL imposes liability on manufacturers that fail to disclose safety hazards, make representations that are likely to deceive a reasonable consumer, and who otherwise fail to disclose material information that they are under a duty to disclose. *Becerra v. Gen. Motors LLC*, No. 15-cv-2365, 2017 WL 951028, at *9-11

20

1   (S.D. Cal. Mar. 10, 2017). Similarly, the CLRA "imposes liability on a party that
2   omits a material fact to a consumer, defined as a fact that 'a reasonable consumer
3   would deem . . . important' and 'would certainly attach importance to the disclosure
4   of.'" *Id.* (quoting *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249 (2011)).
5   Reliance is not an element of claims under the UCL and CLRA. *Yumul v. Smart*
6   *Balance, Inc*., 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (listing cases). Instead,
7   Plaintiff need only allege that "consumers are likely to be deceived." *Id.* (quoting
8   *Buckland v. Threshold Enterprises, Ltd*., 155 Cal. App. 4th 798, 801 (2007)); *see*
9   *also Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008).

10       The same is true with respect the other state consumer protection statutes.
11   *See, e.g*., *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F. Supp. 2d 1314
12   (M.D. Fla. 2007) (holding that under Florida law, "[a] deceptive act is one that is
13   'likely to mislead' consumers; the pleader need not plead any reliance on the part of
14   the consumer.") (citation omitted); *Cole v. Hewlett Packard Co*., 84 P.3d 1047
15   (Kan. Ct. App. 2004) ("a plaintiff is not required to prove reliance under the KCPA
16   to establish that the defendant engaged in deceptive acts."); *Indoor*
17   *Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 22
18   (Wash. 2007) (rejecting argument that reliance is required under the WCPA).

19       *Second,* Toyota's misleading suggestion that state consumer protection
20   statutes only protect against safety hazards is unfounded. While safety hazards
21   discovered at any time give rise to a duty to disclose, non-safety related but
22   otherwise material defects give rise to a duty to disclose when they occur during the
23   warranty period. *See Decker v. Mazda Motor of Am., Inc*., No. 11-cv-0873, 2011
24   WL 5101705 at *4 (C.D. Cal. Oct. 24, 2011) (finding that a manufacturer has a
25   duty to disclose any defects that fall within the warranty period). *See also* Muhic
26   Decl., Ex. 1 at 14 (holding that "the 'safety-related' requirement is inapplicable
27   where a defect arises during the warranty period."). Under the CLRA or the UCL,
28

**PLAINTIFFS' MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

materiality exists "if the omitted information would cause a reasonable consumer to behave differently if he or she were aware of it." *O'Shea v. Epson Am., Inc*., No. 09-cv-8063, 2011 WL 3299936, *6 (C.D. Cal. Jul. 29, 2011) (citing *Oestreicher v. Alienware Corp*., 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), *aff'd*, 322 Fed. App'x 489 (9th Cir. 2009)).   To the extent the defect manifested during the warranty period, Plaintiffs have sufficiently alleged that the Defective HVAC System is a material defect, and significantly, that Plaintiffs would not have purchased or leased the Class Vehicles but for Toyota's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defective HVAC System, or would have paid less for the Class Vehicles.   FAC ¶ 129.

Toyota's reliance on *Williams v. Yamaha Motor Company Ltd.*, 851 F.3d 1015, 1019 (9th Cir. 2017) is misplaced.   In *Williams*, the court specifically found that the defect at issue "will not manifest until the three-year warranty period has expired."   *Id.*.   As such, the plaintiff was required to make an additional showing that the defect concerned a safety hazard requiring remedies outside the standard warranty period.   In *Williams*, the result of the defective dry exhaust was simply to "accelerate the *normal and expected process* of corrosion," and there were no allegations that "the corrosion would not or should not occur absent the defect."   *Id.* at 1028 (emphasis in original).   Here, the foul and noxious odors and/or an associated safety hazard caused by the Defective HVAC System is not a "normal or expected" effect.   *See also* Muhic Decl., Ex. 1 at 15-16 (holding that a defective HVAC that causes "an environment favorable to the growth of mold and other contaminants" constitutes plausible allegations of a safety risk).   In any event, as discussed above, Plaintiffs have alleged that the Defective HVAC System has created safety hazards.   Accordingly, even if Toyota's arguments are correct, Plaintiffs' claims survive.

22

## V.   THE ECONOMIC LOSS RULE DOES NOT BAR PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS

While the economic loss rule generally bars negligence claims that seek to recover damages to a defective good caused by the defect, California, Virginia, Washington, Florida, Kansas and California all recognize exceptions to the economic loss rule that apply here.

As this Court recently recognized, under California law, "[o]ne nuance to the general [economic loss] rule holds that a plaintiff may recover in tort for damage to property 'other than the product itself.'" *Sater v. Chrysler Group, LLC*, 2015 WL 736273 (quoting *Jiminez v. Super. Ct.*, 29 Cal. 4th 473, 456 (2002)). In *Sater,* this Court found that a defective steering assembly caused other damages to the vehicles (such as tire wear), and thus plaintiffs met the exception to the economic loss rule by showing damage to property other than the defective steering assembly. *Id.* at *13. As in *Sater,* the defective part (i.e. the Defective HVAC System) has caused damage to other parts of the Class Vehicles (e.g., it is contaminating the passenger compartment), and for similar reasons the economic loss rule does not apply to Plaintiffs' negligence claims under California law.

Additionally, under Washington, Kansas, Florida, Colorado, and Virginia law, Plaintiffs' negligence claims are not barred by the economic loss rule because Toyota violated duties independent of any contractual obligations. As the Washington Supreme Court recognized, the "term 'economic loss rule' has proved to be a misnomer," and does not bar tort claims for economic losses arising *where the defendant has violated an independent duty*. *Jackowski v. Borchelt*, 278 P.3d 1100, 1105 (Wash. 2012) (quoting *Eastwood v. Horse Harbor Found., Inc.*, 241 P. 3d 1256 (Wash. 2010)) (distinguishing *Alejandre v. Bull,* 195 Wash. 2d 674, 681 (Wash. 2007)). The Kansas Supreme Court has similarly held that, under the "independent duty rule," the economic loss rule does not bar tort claims where the

23

defendant violates a duty independent of its contractual obligations.  *David v. Hett*, 270 P.3d 1102, 1108 (Kan. 2011) (agreeing with Washington and Colorado Supreme Courts, and overruling prior precedent).  The same is true under Florida, Colorado and Virginia law.  *See In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d at 962-66 (holding economic loss rule did not apply where automobile manufacture violated independent duty under Florida and Colorado law); *Gonella v. Lumbermens Mut. Cas*. Co., 64 Va. Cir. 229 (Va. 2004) (economic loss rule generally precludes tort claims where there is privity and contractual remedy, but does not bar claims where independent duty exists).   Accordingly, because Plaintiffs allege that Toyota has violated its independent duties – i.e., a statutory duty, a duty not to fraudulently induce another to enter a contract, and a duty to disclose –the economic loss rule does not apply.

## VI.   PLAINTIFFS HAVE SUFFICIENTLY STATED EQUITABLE CLAIMS IN THE ALTERNATIVE

FED. R. CIV. P. 8(a)(3) specifically allows a party to plead in the alternative. Indeed, courts within the Ninth Circuit, and those applying the state laws at issue here, routinely permit plaintiffs to alternatively plead both legal and equitable claims, such as unjust enrichment.  *See Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015); *Falk*, 496 F. Supp. 2d 1088 (permitting UCL, CLRA and legal claims to proceed); *Martorella v. Deutsche Bank Nat'l Trust Co*., 931 F. Supp. 2d 1218, 1227-28 (S.D. Fla. 2013) (allowing unjust enrichment claim to be pled in the alternative); *Robert W. Thomas & Anne McDonald Thomas Revocable Trust v. Inland Pac. Colo., LLC*, No. 11-cv-03333, 2012 WL 2190852, at *5 (D. Colo. June 14, 2012) (same); *Harrell v. Colonial Holdings, Inc*., 923 F. Supp. 2d 813, 826-27 (E.D. Va. 2013) (same); *In re Brooke Corp*., No. 08-cv-22786, 2012 WL 1759322, at *18 (Bankr. D. Kan. May 15, 2012) (same).

Dismissal of Plaintiffs' alternative claims would be inappropriate on a motion to dismiss.[3]

## VII.  PLAINTIFFS KENNEDY AND ALLEY'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Toyota asserts that that the warranty claims of Plaintiffs Kennedy and Alley are time barred under the Virginia and Colorado statutes of limitations.  However, Plaintiffs' warranty claims are not time-barred as they properly allege grounds for fraudulent concealment, thus tolling the statute of limitations.  *See Sater,* 2015 WL 736273, at *9 (holding that plaintiff adequately pled fraudulent concealment in order to toll the statute of limitations of warranty claims); *Philips v. Ford Motor Co.*, No. 14-cv-02989, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) (same).  Virginia and Colorado also provide for tolling based pursuant to fraudulent concealment.  *See Evans v. Trinity Indus., Inc.*, 137 F. Supp. 3d 877, 884 (E.D. Va. 2015); *Patterson v. BP Am. Prod. Co.*, 360 P.3d 211, 221 (Colo. Ct. App. 2015).

To plead fraudulent concealment, a plaintiff must plead "(a) the substantive elements of fraud, and (b) an excuse for late delivery of the facts." *Sater*, 2015 WL 736273, at *9 (quoting *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal.App.4th 1519 (2011)); *see also* Muhic Decl., Ex 2 at 29-30 (finding fraudulent concealment sufficiently alleged in automotive defect case).  As described above, Plaintiffs had alleged the substantive elements of fraud.  Plaintiffs have also plainly allege that, they "did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing the defect

---

[3] Toyota also argues that unjust enrichment is not a cognizable claim under California law.  Plaintiffs acknowledge that this Court has found that California does not recognize unjust enrichment as an independent cause of action.  *See Sater*, 2015 WL 736273, at *14.  However, "California courts are split on whether unjust enrichment can be an independent cause of action." *Victorino*, 2016 WL 6441518, at *11 (citation omitted).

1 and/or that the Class Vehicles contained a Defective HVAC system." FAC ¶ 69.

2 In fact, Plaintiffs allege that Toyota intentionally "concealed the existence of the

3 Defective HVAC System to increase profits by selling additional Class Vehicles."

4 FAC ¶¶ 8-9, 50-53. Such allegations are sufficient to toll the statute of limitations.

5 *See Sater*, 2015 WL 736273, at *9 (finding the statute of limitations tolled where

6 plaintiff alleged that the vehicle manufacturer intentionally kept plaintiffs ignorant

7 of their claims).

8 **VIII. THE COURT SHOULD NOT DISMISS CLAIMS BROUGHT ON**

9 **BEHALF OF CLASS MEMBERS WHO PURCHASED OTHER**

10 **VEHICLES.**

11 As this Court recently recognized in *Sonner v. Schwabe North America, Inc.*,

12 No. 15-cv-1358-VAP, 2017 WL 474106, at *3 (C.D. Cal. Feb. 2, 2017) (Phillips,

13 J.), "a Plaintiff may have standing to assert claims for unnamed class members

14 based on products he or she did not purchase so long as the products and alleged

15 misrepresentations are substantially similar." (quoting *Brown v. Hain Celestial*

16 *Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)). Significantly, between

17 1997 and 2013, Toyota released a series of TSBs applying *to all Class Vehicles*

18 identifying similar odors being emitted from Class Vehicles' HVAC systems. FAC

19 ¶¶ 2, 57-63. Toyota has thus acknowledged that all Class Vehicles are similar and

20 exhibit similar HVAC odors. To the extent Toyota wishes to raise factual issues as

21 to any purported material differences among the Class Vehicles, those issues

22 pertain to class certification and the adequacy and/or typicality prongs of Fed. R.

23 Civ. P. 23(a); such disputes are not appropriately resolved at the motion to dismiss

24 stage.

25 Additionally, following the Supreme Court's decision in *Ortiz v. Fibreboard*

26 *Corporation*, 527 U.S. 815, 831 (1999), where the Court found that class

27 certification issues are "logically antecedent" to Article III concerns, courts have

28

26

repeatedly recognized that class certification should be decided before considering whether the class representative has standing to assert claims on behalf of an unnamed class member. *See Thomas v. Brett Sports & Entm't, Inc*., No. 16-cv-00480, 2016 WL 4472995, at \*2 (C.D. Cal. Aug. 23, 2016) ("before the Court addresses the Article III standing issues that Defendants raise in their Motion, a motion for class certification is the proper vehicle to resolve the putative class's statutory standing"); *Byler v. Deluxe Corp*., No. 16-cv-493, 2016 WL 8669404, at \*6 (S.D. Cal. Aug. 18, 2016) (listing cases deferring class standing questions to class certification stage). "Rather than striking class allegations from the pleadings, '[t]he better and more advisable practice for a District Court to follow is to afford litigants an opportunity to present evidence as to whether a class action [i]s maintainable.'" *Thomas*, 2016 WL 4472995, at \*2 (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). Accordingly, the proper course is for the Court to defer questions as to the scope of the class until the class certification stage of the litigation.

## CONCLUSION

Toyota's Motion should be denied for all the reasons set forth above.

Respectfully submitted,

DATED: May 8, 2017

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

By:     */s/ Peter A. Muhic*
Joseph H. Meltzer
  *jmeltzer@ktmc.com*
Peter A. Muhic
  *pmuhic@ktmc.com*
Melissa L. Troutner
  *mtroutner@ktmc.com*
Tyler S. Graden

27

1

tgraden@ktmc.com

2

280 King of Prussia Road

3

Radnor, PA  19087

Tel.:    (610) 667-7706

4

Fax:    (610) 667-7056

5

6

**KIESEL LAW LLP**

Paul R. Kiesel

7

Helen Zukin

Jeffrey A. Koncius

8

Nicole Ramirez

9

10

*Attorneys for Plaintiffs and*
*the Proposed Classes*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28