

**FILED**
CLERK, U.S. DISTRICT COURT

JUL 7, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Paul Stockinger et al.,

                Plaintiffs,

       v.

Toyota Motor Sales USA Inc,

                Defendant.

LACV 17-00035-VAP (KLSx)

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (DOC. NO. 39)

On April 17, 2017, Toyota Motor Sales, U.S.A., Inc. ("Defendant") filed its Motion to Dismiss First Amended Complaint ("Motion").  (Doc. No. 39.)  On May 8, 2017, Paul Stockinger, Elizabeth Stockinger, Gailyn Kennedy, Basudeb Dey, Brenda Flinn, Eliezer Casper, and Yvette Alley ("Plaintiffs") filed their opposition.  (Doc. No. 43.)  Defendant filed its reply on May 22, 2017.  (Doc. No. 45.)  After considering all papers filed in support of and in opposition to the Motion as well as the arguments advanced at the June 5, 2017 hearing, the Court GRANTS the Motion in part and DENIES the Motion in part.

## I. BACKGROUND

In this action, a group of Plaintiffs, all from different states, purchased Defendant's cars, crossovers, and sports utility vehicles.  After their purchases, Plaintiffs were dismayed to learn the heating, ventilation, and air conditioning ("HVAC") systems in Defendant's vehicles emitted "noxious and foul odors" and allegedly blew airborne mold into their passenger

compartments.  Plaintiffs are now suing on their own behalf and the behalf of similarly situated putative class members.

On March 24, 2017, Plaintiffs filed their First Amended Complaint against Defendant, alleging (1) violations of the California Consumers Legal Remedies Act; (2) violations of the California Unfair Competition Law; (3) fraud; (4) negligent misrepresentation; (5) breach of express warranty; (6) breach of implied warranty; (7) violations of the Magnuson-Moss Warranty Act; (8) violations of the Song-Beverly Consumer Warranty Act; (9) unjust enrichment; (10) violations of the Florida Unfair & Deceptive Trade Practices Act; (11) violations of the Kansas Consumer Protection Act; (12) violations of the Virginia Consumer Protection Act; (13) violations of the Washington Consumer Protection Act; and (14) violations of the Colorado Consumer Protection Act.  (Doc. No. 34.)  All Plaintiffs' claims revolve around their allegations that Defendant sold cars, minivans, sport utility vehicles, and crossovers with defective HVAC systems that emit "noxious and foul odors into the vehicles when the . . . HVAC system[s are] in use."  (Id. ¶¶ 1–13.)

Plaintiffs allege Defendant's HVAC system emits "noxious and foul odors" because mold and other contaminants build up on a part of the HVAC system called the evaporator and are then blown into Plaintiffs' vehicles' cabins.  (Id. ¶¶ 38–39.)  Specifically, Plaintiffs state that while the HVAC system is cooling air, it draws air through the evaporator, and moisture from the cooled air builds up on the evaporator.  (Id.)  The HVAC system, however, does not adequately remove the built up water from the evaporator and its surrounding enclosure.  (Id. ¶ 39.)  This creates a moist

environment where mold and contaminants can grow and be blown into the vehicle's passenger compartment. (Id.)  When the mold and contaminants are blown into the passenger compartment, they create the "noxious and foul odors" of which Plaintiffs complain. (Id. ¶ 41.)

To support their allegations, Plaintiffs provided a picture of one of Defendant's evaporators with mold growing on it and cite one of Defendant's course manuals that states "odors are caused by, inter alia, '[m]icrobes [i.e., mold] growing on the evaporator surface' including 'small living bacteria . . . carried into the evaporator case [that] grow in the warm, moist environment.'" (Id. ¶¶ 5, 42.)[1]  Plaintiffs also cite a May 9, 1997 technical service bulletin Defendant issued to its network of dealerships, which states as follows:

A musty odor may be emitted from the air conditioning system of some vehicles which are usually operated in areas with high temperature and humidity. It is most noticeable when the air conditioner is first turned "ON" after the vehicle has been parked for several hours. The odor could result from one or more of the following conditions:

---

[1] Defendant filed a request for judicial notice on April 17, 2017, asking the Court to take notice of excerpts from Defendant's owners' manuals and warranties relating to Plaintiffs' vehicles. (Doc. No. 40.)  Defendant also requested the Court take notice of "Basic Facts: Molds in the Environment," a publication from the Center for Disease Control. (Id.) Although it is questionable whether the Court can take judicial notice of these documents, Plaintiffs have not objected, and so the Court GRANTS the request.

United States District Court
Central District of California

United States District Court
Central District of California

1. Blockage of the evaporator housing drain pipe, resulting in the build up of condensate.

2. Microbial growth in the evaporator, arising from dampness in the evaporator housing where the cooling air flow is dehumidified.

(Id. ¶¶ 57–58.)

Plaintiffs also cite Defendant's August 6, 2009, technical service bulletin linking the alleged "noxious and foul odors" to Defendant's HVAC evaporator.  (Id. ¶ 59.)  The bulletin states some of Defendant's cars "may exhibit an intermittent HVAC system odor," and Defendant designed a new "evaporator sub-assembly . . . to decrease the potential for HVAC odor." (Id.)  Defendant also issued a number of subsequent technical service bulletins linking odors to Defendant's HVAC system and evaporator.  (Id. ¶¶ 60–63.)  Many of these bulletins state, "there is no way to eliminate these odors." (Id. ¶¶ 61, 63.)

Plaintiffs allege Defendant issued a safety recall "for certain 2011–2013 Toyota models," which stated "[c]ondensed water can accumulate at the bottom of the HVAC unit housing in the subject vehicles if the HVAC drain hose becomes clogged."  (Id. at 65.)  Moreover, Plaintiffs cite consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") indicating the "noxious and foul odors" Plaintiffs describe are

caused by mold growth in Defendant's HVAC system and evaporator.  (Id. ¶ 56.)

Plaintiffs state the mold in Defendant's HVAC system and the resulting odors have decreased the value of their vehicles.  (Id. ¶ 47.)  Also, Plaintiffs allege the mold in the HVAC systems exposes Plaintiffs to health risks.  (Id. ¶¶ 6, 44.)  Specifically, Plaintiffs cite World Health Organization guidelines that state,"[e]xposure to microbial contaminants is clinically associated with respiratory symptoms, allergies, asthma and immunological reactions."

Plaintiffs also allege the water accumulating in Defendant's HVAC system "can leak onto the airbag module, illuminating the airbag warning light, disabling the airbag or causing inadvertent deployment."  (Id. ¶¶ 7, 47.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2)).); Bell Atl. Corp. v Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the

complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  Schwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F. 3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

## III.    DISCUSSION

### A.    Alleged Water and Mold Growth in Plaintiffs' Vehicles

Defendant argues all Plaintiffs' claims fail because "Plaintiffs fail to plead facts that their vehicles retained any water or had any mold growth caused by the alleged defect." (Doc. No. 39-1 at 21.)   According to Defendant, Plaintiffs' allegation that their cars' HVAC systems contain water and mold growth are based only upon "information and belief" and thus are insufficient to plead any claim.  Id.

"In asserting a plausible claim, nothing in Twombly or Iqbal precludes or alters the right of plaintiffs to plead essential facts based on 'information

and belief' if otherwise appropriate." Judge Beverly Reid O'Connell & Judge Karen L. Stevenson Rutter Group Practice Guide: Federal Civil Procedure Before Trial California & 9th Circuit Edition 8:128.22 (2017).  "The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."  Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017); Dallas & Lashmi, Inc. v. 7-Eleven, Inc., No. CV1502044SJO ASx, 2015 WL 12734783, at *2 (C.D. Cal. June 19, 2015) ("for allegations based upon 'information and belief' to be facially plausible, either the facts on which the allegations are based must be 'peculiarly within the possession and control of the defendant,' or the belief must be 'based on factual information that makes the inference of culpability plausible.'").  "[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief."  Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993); see United States v. Ctr. for Diagnostic Imaging, Inc., 787 F. Supp. 2d 1213, 1221 (W.D. Wash. 2011).  "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject."  Kester v. CitiMortgage, Inc., 177 F. Supp. 3d 1150, 1163 (D. Ariz. 2016) (quoting 5 Charles Alan Wright et al., Federal Practice & Procedure § 1224 (3d ed., Apr. 2015 update)).

Here, all named Plaintiffs allege their vehicles contain Defendant's HVAC system, "which exposes drivers and passengers to noxious and foul

United States District Court
Central District of California

odors and emits air which, on information and belief, is filled with mold and other contaminants." (Doc. No. 34 ¶¶ 17, 19, 21, 23, 25, 27.) Although this is a statement based on "information and belief," Plaintiffs also state "factual information that makes the inference . . . plausible." Soo Park, 851 F.3d at 928. First, Plaintiffs describe the smell coming from their vehicles that contain Defendant's HVAC system. For example, Plaintiffs Paul and Elizabeth Stockinger state, "noxious and foul odors [are] emitted from [Defendant's] Defective HVAC System, including a 'musty water' smell when the vehicle starts." (Id. ¶ 17.) Plaintiff Kennedy states that Defendant's HVAC system in her car emits "noxious and foul odors" and a "musty, burnt caramel smell every time she is in the vehicle." (Id. ¶ 19.) Plaintiff Casper states Defendant's HVAC system in her car emits "noxious and foul odors," including "moldy smells." (Id. ¶ 25.)

Second, Plaintiffs allege numerous facts showing Defendant's HVAC system emits "noxious and foul odors" because mold and other contaminants build up on the HVAC system's evaporator and are then blown into Plaintiff's vehicles' cabins. (Id. ¶¶ 38–39.) Indeed, although evidentiary support is unnecessary at the pleading stage, Plaintiffs cite Defendant's own technical service bulletins, Defendant's course manual, and customer complaints to the NHTSA stating, among other things, that Defendant's HVAC emit odors because of "[m]icrobes [i.e., mold] growing on the evaporator surface." (E.g. id. ¶ 5. (alteration in original).)

Thus, Plaintiffs have stated facts showing (1) Defendant's HVAC systems emit odors because of water accumulation and mold growing in the

United States District Court
Central District of California

HVAC system and (2) Defendant's HVAC systems in Plaintiffs' vehicles emit odors that smell like mold.  Accordingly, the Court finds Plaintiffs have plead factual information supporting the plausible inference that their vehicles' HVAC systems have mold growth and odors caused by the alleged defect.

## B.  Facts Connecting the Alleged Defect to Odors in Plaintiffs' Vehicles

Defendant argues all Plaintiffs' claims fail because "Plaintiffs fail to plead facts connecting the alleged defect to any odors in their vehicles." (Doc. No. 39-1 at 22–24.)   According to Defendant, "the mere presence of odor is insufficient to show a defect," and there are "obvious alternative explanation[s]" of Plaintiffs' HVAC system's odor.  (Id. at 23–24.)  For example, possible alternative explanations include "blockages introduced into the drain hoses, interior and exterior odors being brought into the vehicle and accumulating in the HVAC system, usage patterns, and environmental conditions."  (Id. at 23.)  Thus, Defendant argues, Plaintiffs have failed to allege a plausible claim.  (Id. at 22–24.)

At the motion to dismiss stage, however, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Here, Plaintiffs state each of them has "been exposed to noxious and foul odors emitted from the Defective HVAC System."  (E.g., Doc. No.

United States District Court
Central District of California

34 ¶¶ 17, 19.)  Also, as discussed above, Plaintiffs allege facts showing how mold forms in Defendant's HVAC systems and how the HVAC systems emit odors.  Further, Plaintiffs state their vehicles contain Defendant's HVAC systems, and they smell "musty" and "moldy" odors coming from these HVAC systems.  Accordingly, Plaintiffs have alleged more than enough facts to "plausibly suggest an entitlement to relief"—i.e., plausibly suggest Defendant's allegedly defective HVAC systems caused the mold and odors Plaintiffs allege exist in their vehicles.  To the extent Defendant argues there may be causes other than those alleged by Plaintiffs, this is an argument that goes beyond the facts stated in the complaint and cannot be considered on a motion to dismiss.

Defendant also argues DeCoteau v. FCA US LLC, No. 215CV00020MCEEFB, 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015), suggests Plaintiffs' allegations are insufficient to state a claim.  (Doc. No. 39-1 at 23.)  In DeCoteau, consumers sued a car manufacturer after noticing the manufacturer's cars would "sometimes surge forward or hesitate before taking off from a stop" and "automatically move backward" after stopping. 2015 WL 6951296 at *1.  The consumers then made a "conclusory allegation that [a] Transmission Defect exist[ed] and [was] responsible for" their cars' erratic movements.  Id. at *3.  The court ruled these allegations were not enough to "make the existence of either a design or manufacturing defect plausible."  Id.  The court, however, noted plaintiffs alleging a product defect need not "'plead the mechanical details' of a defect in order to state a claim," but the required level of specificity "directly correlate[s] to the complexity of the machinery in question."  Id.  Considering the

manufacturer's transmission was newly developed and complex, the court held the consumers were required to "allege the specific facts that plausibly support their belief in the existence of a defect" and "plausibly connect the existence of the alleged defect to the injuries."  Id.

Defendant also argues Yagman v. General Motors Co., No. CV-14-4696-MWF, 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) suggests Plaintiffs' allegations are insufficient to state a claim.  (Doc. No. 39-1 at 23.)  In Yagman, a consumer sued a car manufacturer for selling him a car engine with a manufacturing defect.  2014 WL 4177295 at *2.  The consumer's complaint stated, "the vehicle's engine stopped running and it experienced a complete electrical shutdown," and "[a]fter unsuccessful testing by a mechanic and a GM dealership, the engine broke down again." Id.  From these two facts, the consumer alleged his engine was defective.  Id. at *3.  The court held this was insufficient to state a defect claim because the consumer had "only alleged an injury, not a defect." Id. The court stated plaintiffs alleging a defect claim should include, "at the very least, a description of the alleged defect." Id.  Thus, the consumer's allegations "that the engine failed render[ed] it merely possible that a manufacturing defect was the cause" but did not rise to the level of plausibility.  Id.

Here, however, the facts are readily distinguishable from those in both DeCoteau and Yagman.  Unlike DeCoteau, in which consumers alleged a defect existed in a newly developed and complex transmission, here Plaintiffs allege a defect exists in a relatively simple HVAC system, which neither party alleges is particularly new technology.  Thus, as the required

United States District Court
Central District of California

1  level of pleading specificity "directly correlate[s] to the complexity of the

2  machinery in question," here much less specificity is required to state a

3  claim than in DeCoteau.   Further, in both DeCoteau and Yagman, the

4  consumers did not state claims because they failed to allege "a description

5  of the alleged defect" and only described the symptoms of the alleged

6  defects.  In DeCoteau, the consumers stated only that their cars "surge[d]

7  forward or hesitat[ed] before taking off from a stop." Similarly, in Yagman,

8  the consumer alleged only that his "vehicle's engine stopped running and it

9  experienced a complete electrical shutdown."  Here, in stark contrast,

10 Plaintiffs have alleged both (1) the symptoms of their alleged defect—i.e.

11 noxious odor and mold filled air—and (2) the alleged defect itself—i.e., the

12 HVAC system's retention of water and mold build up.  In fact, even though

13 the DeCoteau court held plaintiffs need not "'plead the mechanical details' of

14 a defect in order to state a claim," here, Plaintiffs have gone to great lengths

15 to plead the "mechanical details" of the defect in Defendant's HVAC

16 systems.  In their complaint, Plaintiffs explain how Defendant's HVAC

17 system works to cool air and how this causes water to build up on the HVAC

18 system's evaporator.  Further, Plaintiffs explain how this creates an

19 environment in which mold develops and is blown into their vehicles'

20 passenger compartments.  Plaintiffs provide a number of diagrams,

21 complete with citations to Defendant's published material, and a picture of

22 an evaporator on which mold is growing.  Accordingly, unlike DeCoteau and

23 Yagman, Plaintiffs have adequately stated facts showing a defect exists.

24

25

26

13

In sum, the Court finds that Plaintiffs have (1) adequately alleged a defect and (2) adequately alleged Plaintiffs' vehicles' HVAC systems are plagued by the defect.

## C.   Breach of Express Warranty Claims

Defendant argues Plaintiffs' breach of express warranty claims should be dismissed because no Plaintiff alleges he or she sought repairs of the alleged defect during the warranty period for his or her vehicle.  (Doc. No. 39-1 at 24–25.)  Also, no Plaintiff alleges Defendant failed to repair a vehicle in response to such a request.  (Id.)  Further, the "written warranties applicable to Plaintiffs' vehicles cover only defects in 'materials and/or workmanship,' which, by definition, exclude design defects."  (Id. at 25.)  On the other hand, Plaintiffs argue they did not need to seek repairs from Defendant during the warranty period because Defendant is unable to cure the alleged HVAC defect.  (Doc. No. 43 at 19–20.)  Further, Plaintiffs argue that the "workmanship" language in Defendant's warranties cover at least manufacturing defects, if not also design defects.  (Id. at 18–19.)

For the purposes of this Motion, the parties agree that Florida law applies to Casper's claims, Kansas law applies to Flinn's claims, Virginia law applies to Kennedy's claims, Washington law applies to Paul Stockinger's and Elizabeth Stockinger's claims, Colorado law applies to Alley's claims, and California law applies to Dey's claims.  (Doc. No. 39-1 at 25.)  Accordingly, the Court will address each in turn.

### 1.   Dey's Claims Under California Law

In California, to state an express warranty claim, "a plaintiff must show that the seller: (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff."  Rodarte v. Philip Morris, Inc., No. CV03-0353 FMC (CTx), 2003 WL 23341208, at *5 (C.D. Cal. June 23, 2003); see Kearney v. Hyundai Motor Am., No. SACV09-1298-JST (MLGx), 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010).  "Determining whether [a plaintiff] may pursue an express warranty claim requires a construction of the warranty itself."  Kent v. Hewlett-Packard Co., No. 09-5341 JF PVT, 2010 WL 2681767, at *7 (N.D. Cal. July 6, 2010).  When the terms of an express warranty require a customer to "seek assistance from [the warrantor's] dealers" in order to "receive service under the warranty," plaintiffs must allege they "sought repairs" in order to allege a breach.  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010.)  Further, "Manufacturers are 'not liable for breach of express warranty merely because a product manifests recurring failures during the warranty period.  Rather, the question is whether [a plaintiff] sought repairs, refunds or replacements and, if so, whether [the manufacturer] responded appropriately under the warranty.'"  Apodaca v. Whirlpool Corp., No. SACV 13-00725 JVS, 2013 WL 6477821, at *9 (C.D. Cal. Nov. 8, 2013); Clark v. LG Electronics U.S.A., Inc., No. 13–CV–485–JM JMAx, 2013 WL 2476145, at *4–5 (S.D. Cal. Jun.7, 2013); Kent v. Hewlett–Packard Co., 2010 WL 2681767, at *6 (N.D. Cal. July 6, 2010).

United States District Court
Central District of California

Plaintiffs allege Dey purchased a 2014 Toyota Prius, which was covered by a Toyota Comprehensive Warranty. (Doc. No. 34 ¶ 20; Doc. No. 39-5 at 28.)  The warranty covers "repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota." (Doc. No. 39-5 at 33.)  The warranty also states "[t]he performance of necessary repairs and adjustments is the exclusive remedy under these warranties or any implied warranties."  (Id. at 30.)  Plaintiffs allege Dey "experienced the existence of the defect in the Defective HVAC System within the warranty period."  (Doc. No. 34 ¶ 148.)  Plaintiffs, however, do not allege Dey ever "sought repairs, refunds or replacements" for his allegedly defective HVAC system.  (Doc. No. 34 at 20–21.)  Thus, as Dey has not yet sought to invoke the remedies of his Toyota Comprehensive Warranty, the Court finds Defendant cannot yet be liable for failing to provide these remedies.

Plaintiffs argue that even though Dey did not seek "repairs, refunds or replacements," Dey's claim does not fail because Defendant "has made abundantly clear that any effort on Plaintiffs' part to seek a permanent fix to the defect would have been futile."  (Doc. No. 43 at 20.)   According to Plaintiffs, "[w]here a warrantor is unable to cure a defect, the limitation requiring repair is nullified."  (Doc. No. 43 at 19.)  Plaintiffs cite to section 2719 of the California Commercial Code, which states "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code."  Cal. Com. Code § 2719.  Plaintiffs also cite Gueyffier v. Ann Summers, Ltd., 43 Cal. 4th 1179

(2008), which states, "California law allows for equitable excusal of contractual conditions causing forfeiture in certain circumstances, including circumstances making performance futile." Id. at 1186.

Several courts, however, have held Plaintiffs' specific futility argument fails. Cheng v. BMW of N. Am., LLC, No. CV1209262 GAF (SHx), 2013 WL 12133886, at *4 (C.D. Cal. Apr. 12, 2013) (rejecting a consumer's argument "that providing [a manufacturer] with a repair opportunity would have been 'futile'" for a breach of express warranty claim); In re Toyota Motor Corp., 790 F. Supp. 2d 1152, 1174 (C.D. Cal. 2011) ("futility arising from the latent nature of the alleged defect(s) does not excuse compliance with the requirement that repair of a vehicle be sought within the warranty period."); see In re Myford Touch Consumer Litig., No. C-13-3072 EMC, 2015 WL 5118308, at *5 (N.D. Cal. Aug. 31, 2015) (analyzing Iowa case law); In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014) ("To the extent Plaintiffs make the alternative argument that they are excused from bringing in their cars for repairs because to do so would have been futile, the Court is not persuaded."). Accordingly, Plaintiffs' claims for breach of the Toyota Comprehensive Warranty fail under California Law, and Dey's breach of express warranty claim is DISMISSED with leave to amend.[2]

---

[2] As the Court finds Plaintiffs' claims fail because they have not yet given Defendants notice, the Court does not reach the issue of whether the warranties' language covers design defects.

### 2.   Alley's Claims under Colorado Law

In Colorado, "[t]o state a claim for breach of express warranty, [a] plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) the breach proximately caused the losses claimed as damages, and (4) defendant received timely notice of the breach."  Scott v. Honeywell Int'l Inc., No. 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015).  "[A] plaintiff asserting a breach of warranty claim against a seller with a right to limit warranty remedies must show that the product was defective, that the defendant had an opportunity to cure, that he or she failed to do so, and that damages ensued."  Ranta Const., Inc. v. Anderson, 190 P.3d 835, 845 (Colo. App. 2008).  "[W]hen the seller has a right to cure, it would be a violation of the duty of good faith and fair dealing to foreclose that right prematurely and then assert a claim for breach of warranty."  Id.; see Cooley v. Big Horn Harvestore Sys., Inc., 813 P.2d 736, 744 (Colo. 1991) ("To establish their claim of failure of essential purpose of the remedy of suit for breach of a warranty to repair or replace any defective product or parts thereof, the plaintiffs were required to establish that the product was defective in material or workmanship, that the defendants had an opportunity to repair or replace the defects, that they were unable to do so, that their inability to effectively repair or replace substantially affected the value of the product and that the impairment of the value damaged the plaintiffs.").

Accordingly, a buyer cannot allege a breach of warranty claim unless (1) the buyer first notifies the seller of the breach and (2) the seller either refuses or fails to repair or replace the product to which the warranty

18

applies.  Scott, 2015 WL 1517527 at *5; Colo. Rev. Stat. § 4-2-607(3) (2017) ("The buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy").  In Scott, a consumer purchased two humidifiers from a manufacturer, both of which were protected by a warranty.  Id. at *2.  The warranty promised the manufacturer would "repair or replace" the humidifiers if there were any "defects in the workmanship or materials" or "if the [humidifier] 'is determined to be defective or malfunctions."  Id. at *1–2.  One of the humidifiers malfunctioned, but the consumer never notified the manufacturer and did not allege any facts showing the manufacturer knew the consumer's humidifier had malfunctioned.  Id. at *5.  The court held the consumer failed to state a breach of warranty claim because there were "no facts suggesting that [manufacturer] knew that the . . . humidifier was defective, but refused or was unable to repair or replace it."  Id.  Accordingly, the manufacturer did not breach its promise under the warranty to repair or replace the humidifier.  Id.

Here, Alley purchased a 2009 Toyota Corolla, which was covered by a Toyota Comprehensive Warranty. (Doc. No. 34 ¶ 26; Doc. No. 39-5 at 54.) Like the consumer in Scott, whose humidifier malfunctioned, Plaintiffs allege Alley "experienced the existence of the defect in the Defective HVAC System within the warranty period."  (Doc. No. 34 ¶ 148.)  Also like the consumer in Scott, who never notified the manufacturer and did not allege any facts showing the manufacturer knew his specific humidifier had malfunctioned, Plaintiffs do not allege that Alley ever "sought repairs, refunds or replacements" for her allegedly defective HVAC system.  (Doc.

United States District Court
Central District of California

No. 34 at 26–27.) Also, although Plaintiffs allege facts showing that Defendant knew its HVAC systems in general were defective, Plaintiffs have not alleged Alley notified Defendant of her specific HVAC system's defect. Accordingly, as the consumer in <u>Scott</u> failed to state a breach of his humidifier's express warranty, the Court finds Plaintiffs have failed to state a claim for breach of Alley's express warranty under Colorado law.   Hence, Alley's breach of express warranty claim is DISMISSED with leave to amend.

### 3.   Casper's Claims Under Florida Law

"In order to succeed on their breach of express warranty claim under Florida's UCC, Plaintiffs must show: (1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given within a reasonable time after the defect was discovered; and (3) Defendant was unable to repair the defect."  <u>Burns v. Winnebago Indus., Inc.</u>, No. 8:11-CV-354-T-24-TBM, 2012 WL 171088, at *3 (M.D. Fla. Jan. 20, 2012), aff'd, 492 F. App'x 44 (11th Cir. 2012); <u>Johnson v. Thor Motor Coach, Inc.</u>, No. 5:15-CV-85-OC-30 PRL, 2016 WL 1182792, at *5 (M.D. Fla. Mar. 28, 2016). "[A]n essential element for a  breach of warranty claim in a repair-or-replace limited warranty is proof that the defendant failed to repair [a] reported defect." <u>Henson v. Allison Transmission</u>, No. 07-80382-CIV, 2008 WL 239153, at *4 (S.D. Fla. Jan. 28, 2008).  "The 'critical question' in breach-of-warranty actions is whether the buyer has properly informed the seller that the buyer considers him to be in breach." <u>Exim Brickell, LLC v. Bariven, S.A.</u>, No. 09-CV-20915, 2011 WL 13131263, at *33 (S.D. Fla. Aug. 16, 2011).  "In other words, the notice required should not be a notice of the

relevant 'facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach.'" Id. Thus, to sue under an express warranty, a plaintiff must first notify the warrantor of a defect and allow the warrantor to make repairs.  Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc., No. 8:13-CV-1408-T-TBM, 2014 WL 12650702, at *3 (M.D. Fla. Oct. 29, 2014).

Here, Casper purchased a 2011 Toyota Sienna that was covered by a Toyota Comprehensive Warranty. (Doc. No. 34 ¶ 24; Doc. No. 39-5 at 1.) Plaintiffs allege Casper "experienced the existence of the defect in the Defective HVAC System within the warranty period."  (Doc. No. 34 ¶ 148.) Plaintiffs, however, do not allege Casper ever "sought repairs, refunds or replacements" for her allegedly defective HVAC system.  (Doc. No. 34 at 24–25.)  Thus, as Casper has not yet notified Defendant that she "considers [Defendant] to be in breach," she cannot state a breach of express warranty claim, and Casper's breach of express warranty claim is DISMISSED with leave to amend.

### 4.    Kennedy's Claims Under Virginia Law

Under section 8.2-607 of the Code of Virginia, to state a cause of action based on a "seller's breach of warranty," a consumer is required "to notify the seller that an injury has occurred."  Va. Code Ann. § 8.2-607 n5. Consumers are required, "as a condition to enforcing [a] warranty, to give 'reasonable notice' after [a] breach [is] discovered. Such notice serves the important functions of promoting the voluntary resolution of disputes and minimizing prejudice to the seller from the passage of time."  Hebron v. Am.

21

Isuzu Motors, Inc., 60 F.3d 1095, 1098–99 (4th Cir. 1995).  "The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach."  Aqualon Co. v. Mac Equip., Inc., 149 F.3d 262, 266 (4th Cir. 1998) ("aforementioned knowledge demonstrates that [the seller] knew the facts, but not that [the seller] knew that [the buyer] would consider these facts to constitute a breach of warranty") (abrogated on other grounds by Westlake Legal Grp. v. Yelp, Inc., 599 F. App'x 481 (4th Cir.)); see Yates v. Pitman Mfg., Inc., 257 Va. 601, 605 (1999) ("only buyers; i.e., those who buy or contract to buy goods from a seller, Code § 8.2–103(a), must give notice of breach of warranty to the seller as a prerequisite to recovery"). "[T]he notice requirement provides an opportunity for the seller to cure the defect." Aqualon Co., 149 F.3d at 269.

Here, Kennedy purchased a 2007 Lexus 350 ES, which was covered by a Lexus Basic Warranty. (Doc. No. 34 ¶ 18; Doc. No. 39-5 at 45.) Plaintiffs allege Kennedy "experienced the existence of the defect in the Defective HVAC System within the warranty period."  (Doc. No. 34 ¶ 148.) Plaintiffs, however, do not allege Kennedy ever "sought repairs, refunds or replacements" for her allegedly defective HVAC system.  (Doc. No. 34 at 18–19.)  Plaintiffs also do not allege Kennedy informed Defendant or any of its dealers that her HVAC system was defective and that it should be repaired under the warranty.  Thus, as Kennedy has not yet notified Defendant that she considers Defendant in breach of the warranty, she cannot state a breach of express warranty claim, and Kennedy's breach of express warranty claim is DISMISSED with leave to amend.

United States District Court
Central District of California

**5.      Flinn's Claims Under Kansas Law**

*i)      Sufficient Notice*

Under section 84-2-607 of Kansas Statutes, to state a cause of action based on a "seller's breach of warranty," a buyer is required "to notify the seller that an injury has occurred."  Kan. Stat. Ann. § 84-2-607 (2017). "[N]otice must be given within a reasonable time after the buyer has discovered, or should have discovered, any breach."   Fleet Maint., Inc. v. Burke Energy Midwest Corp., 11 Kan. App. 2d 523, 525 (1986).  "Failure to provide a timely notice of defect bars the buyer from any remedy, including the right to revoke and the right to maintain an action for damages based on a breach of implied or expressed warranty."  Id.  If a buyer does not give notice of a "defective condition until after suit [is] filed," the buyer's "untimely notification of the breach bar[s] it from [asserting] a breach of warranty and revocation of acceptance."  Id.;  Hewitt v. Kirk's Remodeling & Custom Homes, Inc., 49 Kan. App. 2d 506, 523 (2013) (holding "a cause of action based upon a builder's express warranty to repair or replace construction defects" only arises after the buyer gives notice and "the builder breache[s] the warranty by refusing or failing to repair or replace the defects.").

However, in the consumer context, a consumer's filing of a lawsuit against a seller can itself be sufficient notice under section 84-2-607. Graham by Graham v. Wyeth Labs., a Div. of Am. Home Prod. Corp., 666 F. Supp. 1483, 1500 (D. Kan. 1987) ("the court notes that by filing this lawsuit the defendant was given sufficient notice, under K.S.A. 84–2–607, of the alleged breach of warranty.").  "Kansas courts relax the notice requirement

23

when the case involves a consumer" and "assess the reasonableness of the required notice under the 'totality of the circumstances,' focusing on the purposes of the notice requirement." Nieberding v. Barrette Outdoor Living, Inc., 302 F.R.D. 600, 612 (D. Kan. 2014).  This is because "a relaxed notice requirement is particularly appropriate when the consumer-buyer's delay neither prevented remediation of the breach nor prejudiced the seller in defending against the suit." Golden v. Den-Mat Corp., 47 Kan. App. 2d 450, 468 (2012).

For example, In Nieberding, a consumer purchased a guardrail bracket, and it broke when he fell on it.  302 F.R.D. 600, 604.  The consumer brought a class action against the bracket manufacturer, alleging the bracket was defective and the manufacturer breached the implied warranty of merchantability. Id. at 604, 612.  The manufacturer argued the consumer could not plead he gave reasonable notice under section 84-2-607. Id. at 612.  The court, however, concluded the "notice given by plaintiff's Complaint satisfies K.S.A. § 84–2–607." Id. at 613.  In assessing the reasonableness of the required notice under the "totality of the circumstances," the court stated the manufacturer "[had] not contended [it] took action since [the consumer filed suit] to correct the defect; rather, [it] continue[ed] to deny that the defect exists." Id. at 613.  Also, the court noted, "[t]here [was] no evidence that any notice failure has prejudiced defendants' ability to defend against this lawsuit, nor [was] there evidence of bad faith." Id.

United States District Court
Central District of California

1   Here, the facts are substantially similar to Nieberding.  In Nieberding,

2   the consumer's notice was sufficient notice because (1) the manufacturer

3   took no action after suit was filed to correct the defect; (2) the consumer's

4   failure to provide earlier notice did not prejudice the manufacturer's ability to

5   defend against suit; and (3) there was no evidence of bad faith.  Thus, the

6   complaint itself was reasonable notice under the totality of the

7   circumstances.  Here, (1) Defendant took no action to remedy Plaintiffs'

8   defective HVAC systems after the suit was filed and has stated "there is no

9   way to eliminate [the] odors" emitted from the HVAC systems (Doc. No. 34

10  at ¶¶ 61, 63); (2) Plaintiffs' delayed notice could not have prejudiced

11  Defendant's ability to defend the suit because Defendant's internal technical

12  bulletins and NHTSA complaints indicate Defendant was aware of the HVAC

13  defect since at least May 1997 (id. ¶¶ 57–58); and (3) there is no evidence

14  of bad faith on behalf of Plaintiffs.  Accordingly, just as the consumer's

15  lawsuit was sufficient notice in Nieberding, the Court finds that Plaintiffs'

16  lawsuit is sufficient notice here.

17

18          ii)    *Coverage for Design Defects Under Defendant's*

19                 *Warranty*

20  The parties have not cited, and the Court has not found, any Kansas

21  law stating whether design defects are covered under warranties that

22  promise "repairs and adjustments needed to correct defects in materials or

23  workmanship."  Accordingly, the Court must turn to the principles of contract

24  interpretation to determine if design defects are covered.  In Kansas, when

25  a contract's terms "are not crystal clear" and "are open to different, yet

26  reasonable interpretations," courts "should construe the terms of [the

contract] against the drafter." Dillard Dep't Stores, Inc. v. State, Dep't of Human Res., 28 Kan. App. 2d 229, 236 (2000); Francis v. Shawnee Mission Rural High Sch. Dist. No. 6, Johnson Cty., 161 Kan. 634, 639 (1946) ("There is an elementary rule of law that where one party to a contract is privileged to set down in writing the terms to which another party is to give assent, and a controversy arises as to their meaning, the contract should be construed strictly against the writer and liberally toward the other party.").  "The purpose for this rule 'is to protect the party who did not choose the language from an unintended or unfair result.'"  Dillard, 28 Kan. App. 2d at 236.

Here, it is undisputed that Defendant drafted the warranty agreement for Flinn's 2015 Toyota Rav 4.  Also, it is not apparent from the language in the warranty whether "defects in materials or workmanship" would include design defects in addition to manufacturing defects.  Merriam-Webster, however, defines "workmanship" as "the art or skill of a workman" or "the quality imparted to a thing in the process of making."  Merriam-Webster, Definition of Workmanship, https://www.merriam-webster.com/dictionary/workmanship.  Also, it can reasonably be argued that a defect in "the quality imparted to a thing in the process of making," would include a design defect, as design is just as much a part of "the process of making" as the actual materials used.  Accordingly, as a "defect in . . . workmanship" can reasonably be interpreted to include design defects, the warranty "should be construed strictly against the writer," and the Court must find that design defects are covered under the Warranty.

1      Hence, Plaintiffs have stated a breach of express warranty claim under

2 Kansas law for both design and manufacturing defects.  Thus, Defendant's

3 Motion is DENIED as it relates to Flinn's claims under Kansas law.

4

5     **6.**     **Paul and Elizabeth Stockinger's Claims Under Washington**

6              **Law**

7        *i)*     *Sufficient Notice*

8      Under section 84-2-607 of the Revised Code of Washington, to state

9 a claim for a "seller's breach of warranty," a buyer is required "to notify the

10 seller that an injury has occurred." Wash. Rev. Code Ann. § 62A.2-607.

11 Also, "Washington law . . . requires a plaintiff asserting a claim for breach of

12 warranty to plead that notice has been given within a 'reasonable time' after

13 discovering the alleged breach." Donohue v. Apple, Inc., 871 F. Supp. 2d

14 913, 930 (N.D. Cal. 2012) "What may be considered a reasonable time is

15 usually a mixed question of law and fact to be determined by the trier of

16 fact." Jeffries v. Clark's Rest. Enterprises, Inc., 20 Wash. App. 428, 431

17 (1978); Kasey v. Suburban Gas Heat of Kennewick, Inc., 60 Wash. 2d 468,

18 474 (1962) ("What constitutes 'notice . . . within a reasonable time,' as

19 provided in Rem.Rev.Stat. § 5836–49, supra [RCW 63.04.500], is usually a

20 mixed question of law and fact, dependent upon a variety of facts and

21 circumstances of the particular case, and generally resolving itself into a

22 question of fact to be determined by the jury, upon proper instructions by the

23 court.").   No case considering Washington law has held pre-suit notice is a

24 prerequisite to a breach of warranty claim or that a plaintiff's complaint

25 cannot serve as sufficient notice for a breach of warranty claim.  See

26

United States District Court
Central District of California

1  Donohue, 871 F. Supp. 2d at 930; Cats v. Monaco RV, LLC, No. C15-1585-

2  JCC, 2016 WL 5253204, at *4 (W.D. Wash. Sept. 22, 2016).

3

4       Here, Plaintiffs do not allege the Stockingers gave pre-suit notice of a

5  breach of warranty.  (Doc. No. 34 at 9–10.)  Defendant, however, was

6  undoubtedly put on notice that the Stockingers' HVAC system was defective

7  once Plaintiffs filed this suit.  Further, Defendant has taken no action to

8  remedy Plaintiffs' defective HVAC systems after the suit was filed.  Thus,

9  whether the Stockingers gave timely notice as required by section 84-2-607

10 of the Revised Code of Washington is a question of fact and cannot be

11 determined on a motion to dismiss.  Accordingly, the Court finds Plaintiffs

12 have stated a breach of express warranty claim under Washington law.

13

14            ii)     *Coverage for Design Defects Under Defendant's*

15                    *Warranty*

16       Under Washington law, design defects are not covered under

17 warranties covering only "materials and/or workmanship."  Teufel v. Wienir,

18 68 Wash. 2d 31, 35 (1966).  Thus, as the Stockingers' warranty on their

19 2015 Toyota Sienna only "covers repairs and adjustments needed to correct

20 defects in materials or workmanship," Plaintiffs' claims based on the HVAC's

21 defective design fail.  (Doc. No. 34 ¶ 16; Doc. No. 39-5 at 23.)  Plaintiffs'

22 allegations of manufacturing defects, however, suffice to state a claim.

23

24       Accordingly, the Stockingers' express warranty claims are

25 DISMISSED without leave to amend to the extent they allege a breach

26 occurred due to Defendant's defective design.  Defendant's Motion is

DENIED, however, as to the Stockingers' express warranty claims based on manufacturing defects.

### D. Plaintiffs' Implied Warranty Claims

#### 1. Plaintiffs sufficiently allege their vehicles are not fit for the ordinary purposes for which such goods are used

Defendant argues Plaintiffs fail to state a claim for breach of the implied warranty of merchantability because they have not alleged their cars are "unmerchantable."  (Doc. No. 39-1 at 26.)  In other words, Plaintiffs have not stated facts showing their vehicles are "unfit for their ordinary purpose of providing transportation."  (Id.)

Washington law states the "warranty of merchantability assures that the goods 'are fit for the ordinary purposes for which such goods are used.'" Tex Enterprises, Inc. v. Brockway Standard, Inc., 149 Wash. 2d 204, 208 (2003). California law states the "'[i]mplied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used."  Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 24 (2007) (noting that "a vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose). Kansas law states, "for goods to be 'merchantable,' they must be 'at least such as . . . are fit for the ordinary purposes for which such goods are used.'"  Hodges v. Johnson, 288 Kan. 56, 61–62 (2009) (holding that "a buyer may purchase a particular vehicle for a number of [purposes other

than transportation]—among which may be safety, fuel economy, utility, or comfort in traveling to and from various destinations"—and the implied warranty of merchantability extended "at a minimum to [a] vehicle's air conditioning unit.")  Florida law states, "in order to be merchantable the goods must be fit for ordinary uses for which such goods are sold."  McLeod v. W. S. Merrell Co., Div. of Richardson-Merrell, 174 So. 2d 736, 738 (Fla. 1965); see Egbebike v. Wal-Mart Stores E., LP, No. 3:13-CV-865-J-34MCR, 2014 WL 3053184, at *6 (M.D. Fla. July 7, 2014).  Virginia law defines "'merchantable goods' as being of a quality that would 'pass without objection in the trade under the contract description' or which 'are fit for the ordinary purposes for which such goods are used.'"  Hubbard v. Dresser, Inc., 271 Va. 117, 124 (2006).

Notably, each state's standard for gauging whether a product runs afoul of the implied warranty of merchantability requires a factual finding as to whether the product is "fit for the ordinary purposes for which such goods are used."  Here, Plaintiffs allege the HVAC system in each of Plaintiffs' vehicles emits "noxious and foul odors" and blows mold particles into the passenger compartment.  (Doc. No. 34 ¶¶ 5, 41–42.)  None of the cases cited by Defendant indicate it is permissible for the Court to rule—on a motion to dismiss—that a "noxious and foul odor," which Plaintiffs allege is present in each of their vehicles, cannot show a car is unfit for its "ordinary purpose." See Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1299 (1995), as modified on denial of reh'g (Sept. 21, 1995) (granting a motion for class decertification on the grounds that only "a small percentage of" the plaintiffs cars rolled over as a result of a defective

design); Testo v. Russ Dunmire Oldsmobile, Inc., 16 Wash. App. 39, 44 (1976) (affirming a trial court's factual finding that a car was not fit for its ordinary purpose because it had been substantially modified and overheated quickly); Lowe v. Mercedes Benz of N. Am., 103 F.3d 118 (4th Cir. 1996) (affirming the denial of a Rule 60(b) motion, before which the district court judge had made factual findings at a bench trial regarding whether a car was "fit for . . . ordinary purposes."); Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc., 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing a claim that a car was unfit for its "ordinary purpose" when the IIHS report upon which plaintiffs based their claims did not support their allegations that a defect existed); Int'l Petroleum Servs., Inc. v. S & N Well Serv., Inc., 230 Kan. 452, 460 (1982) (affirming a trial court judgment, where factual findings were made at a bench trial that oil well servicing equipment was not fit for its ordinary purpose.); Troup v. Toyota Motor Corp., 545 F. App'x 668, 669 (9th Cir. 2013) (holding a defect which "merely required [plaintiffs] to refuel more often" but did not "drastically reduce [a car's] mileage range" was insufficient to state a claim).

Accordingly, in the absence of any case law holding that as a matter of law "noxious and foul odors" cannot support a claim for breach of the implied warranty of merchantability, the Court cannot make such a factual finding at the pleading stage. Thus, the Court finds Plaintiffs have sufficiently alleged their vehicles are not "fit for the ordinary purposes for which such goods are used."

### 2.     Contractual Privity

Defendant also argues Plaintiffs' claims under California, Florida, Washington, and Virginia law fail because Plaintiffs have not alleged they are in contractual privity with Defendant.  (Doc. No. 39-1 at 26–27.)  Plaintiffs, however, argue they need not allege contractual privity with Defendant because Plaintiffs are third party beneficiaries of the implied warranty of merchantability between Defendant and its dealerships.  (Doc. No. 43 at 22–23.)

#### i)     Privity Under California Law

In California, a "third-party beneficiary may enforce a contract made expressly for his or her benefit."   In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010).  "A contract made 'expressly' for a third party's benefit need not specifically name the party as the beneficiary; to be deemed a third-party beneficiary, one need only to have experienced more than an incidental benefit from the contract."  Id.  When buyers allege "they purchased vehicles from a network of dealers who are agents of Defendants" and that the buyers "were the intended consumers," they have sufficiently alleged they are third party beneficiaries.  Id. at 1185; see Arnold v. Dow Chem. Co., 91 Cal. App. 4th 698, 720 (2001); In re Sony Vaio Computer Notebook Trackpad Litig., No. 09CV2109 BEN RBB, 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010).  Here, Plaintiffs allege they "and members of the Classes purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class

Vehicles when bought from a third party." (Doc. No. 34 ¶ 159.) Hence, Plaintiffs allege they are third party beneficiaries and need not be in privity with Defendant to assert a claim for breach of the implied warranty of merchantability.

Accordingly, the Court finds Plaintiffs' claims do not fail due to a lack of privity, and Defendant's Motion is DENIED as to Plaintiffs' implied warranty claims under California law.

### ii)    *Privity Under Washington Law*

Under Washington law, there is similarly "a third-party beneficiary exception [to] the general rule that a vertical nonprivity plaintiff cannot recover from a remote manufacturer for breach of implied warranty." Tex Enterprises, Inc. v. Brockway Standard, Inc., 149 Wash. 2d 204, 210 (2003). Thus, third party beneficiaries of implied and express warranties are "entitled to raise these warranty claims." Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc., 119 Wash. 2d 334, 344 (1992). Where there is only limited contact between the buyer and the manufacturer, however, the buyer cannot be a third party beneficiary of a warranty made by the manufacturer to an intermediary dealer. Babb v. Regal Marine Indus., Inc., 186 Wash. App. 1003 (2015) (holding a buyer could not maintain an implied warranty claim against a manufacturer when the manufacturer "merely built a version of one of its ostensibly ordinary models at its headquarters in Florida, and then sold and shipped that boat to one of its dealers in Arizona"); Urban Dev., Inc. v. Evergreen Bldg. Prod., LLC, 114 Wash. App. 639, 648 (2002). Here, Plaintiffs have not alleged any direct

contact with Defendant, and thus under Washington law, Plaintiffs cannot be a third party beneficiary of any warranty made by Defendant to an intermediary dealer.  Accordingly, Plaintiffs' implied warranty claims fail under Washington law.

Hence, the Court DISMISSES Plaintiffs' implied warranty claims under Washington law with  leave to amend.

### iii)    Privity Under Virginia Law

Section 8.2-318 of the Code of Virginia states, "[l]ack of privity between [a] plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods."  Va. Code Ann. § 8.2-318 (West).  The Virginia Supreme Court has held, however, that "privity [is] required to recover economic loss under Va.Code § 8.2–715(2) due to the breach of the implied warranty of merchantability."  Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc., 152 F.3d 313, 319 (4th Cir. 1998) (discussing question certified to Virginia Supreme Court).  Accordingly, Plaintiffs may not assert a claim for implied warranty based on economic damages, and the Court DISMISSES Plaintiffs' claims under Virginia law without leave to amend to the extent they claim economic damages. Defendant's Motion, however, is DENIED to the extent Plaintiffs maintain

implied warranty claims under Virginia law based on non-economic damages.

### iv)   Privity Under Florida Law

"Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."  Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005).  This rule, however, does not prevent plaintiffs without privity from suing for breach of implied warranty under a third party liability theory.  Sanchez-Knutson v. Ford Motor Co., 52 F. Supp. 3d 1223, 1233 (S.D. Fla. 2014).  As discussed above, Plaintiffs, have alleged they were the intended beneficiaries of Defendant's implied warranties to its dealers.  Thus, Plaintiffs have adequately stated a claim under Florida law for breach of the implied warranty of merchantability, and Defendant's Motion is DENIED as to Plaintiffs implied warranty claims under Florida law.

## E.   Magnuson Moss Informal Dispute Procedure

Defendant argues Plaintiffs' Magnuson Moss Warranty Act claims fail because Plaintiffs have not alleged they "initially resort[ed]" to Defendant's informal dispute settlement procedure.  (Doc. No 39-1 at 27–28.)  Plaintiffs argue they are not required to resort to the informal dispute settlement procedure because doing so would be futile, as Defendant has stated "there is no permanent mechanical repair" for the defects Plaintiffs allege.  (Doc. No. 43 at 23–24.)

United States District Court
Central District of California

Under the Magnuson Moss Warranty Act, sellers may "establish an informal dispute settlement procedure which meets the requirements of the Commission's rules."  15 U.S.C. § 2310.  If a seller establishes such a procedure, "then (i) [a] consumer may not commence a civil action (other than a class action) . . . ; and (ii) a class of consumers may not proceed in a class action . . . except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the named plaintiffs . . . initially resort to such procedure."  Id.

Courts in the Ninth Circuit have held that where Plaintiffs make factual allegations showing resort to an informal dispute resolution process under the Magnuson Moss Warranty Act would be futile, futility is a question of fact and cannot be decided on a motion to dismiss.  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010); Milicevic v. Mercedes-Benz USA, LLC, 256 F. Supp. 2d 1168, 1179 (D. Nev. 2003), aff'd sub nom. Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912 (9th Cir. 2005); see Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 593 (C.D. Cal. 2008).  At least one court in the Ninth Circuit, however, has held allegations that a seller "demonstrated inability to cure the defects in its [allegedly defective] systems" despite "owner and lessee requests" are insufficient to show futility.  In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 989 (N.D. Cal. 2014).  Courts outside the Ninth Circuit have held "failure to participate in [an] informal dispute settlement procedure is an affirmative defense— subject to waiver, tolling, and estoppel, that [a defendant] may raise, not that

United States District Court
Central District of California

Plaintiff must negate in her Complaint."  <u>Sanchez-Knutson v. Ford Motor Co.</u>, 52 F. Supp. 3d 1223, 1235 (S.D. Fla. 2014).

Here, Plaintiffs allege Defendant knew about the HVAC defect since at least 1997.  (Doc. No. 34 ¶¶ 57–58.)  Plaintiffs allege Defendant issued numerous technical bulletins stating, "there is no way to eliminate [the] odors" caused by the defect. (<u>Id.</u> ¶¶ 61, 63.)  Plaintiffs also reference Defendant's course manual from 2004, stating that the odors Plaintiffs complain of "are a common complaint among users," for which "there is no permanent mechanical repair."  (<u>Id.</u> ¶ 5.)  Moreover, according to Plaintiffs' allegations, "Defendant has known of and concealed the defect in the Defective HVAC System."  (<u>Id.</u> ¶ 151.)  Plaintiffs also reference NHTSA consumer complaints stating Defendant refused to remedy the alleged HVAC defect since at least September 2000.  (<u>Id.</u> ¶ 56.)  Hence, the Court finds Plaintiffs' allegations here are more extensive than those in <u>In re MyFord</u>, in which consumers had only alleged that the manufacturer had "demonstrated [an] inability to cure the defects" despite "owner and lessee requests."  Thus, the Court holds Plaintiffs' allegations give rise to an inference that pursuing Defendant's informal dispute resolution process would be futile.

Accordingly, the Court finds Plaintiffs' claims do not fail even though Plaintiffs have not pursued Defendant's informal settlement procedure. Hence, the Court DENIES Defendant's Motion as to Plaintiffs' Magnuson Moss Warranty Act claims.

**F.  Fraud Claims**

Defendant argues Plaintiffs have not sufficiently stated a fraud claim because they fail to allege a material misrepresentation by Defendant. (Doc. No. 39-1 at 28.)  Plaintiffs, however, argue they have sufficiently alleged Defendant "concealed the [defective HVAC system's] safety hazard through partial representations and omissions."  (Doc. No. 43 at 25.)  Here, both parties agree that "a material misrepresentation or omission" is required under all the applicable states' law to plead a fraud claim.  (Doc. No. 43 at 24.)

The pleading requirements for fraud are controlled by Federal Rule of Civil Procedure 9(b).  Fed. R. Civ. P.. 9(b).  Rule 9(b) requires that plaintiffs "'identify the who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'"  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011). "[C]laims based on an alleged fraudulent omission or concealment[, however] 'can succeed without the same level of specificity required by a normal fraud claim.'"  Eisen v. Porsche Cars N. Am., Inc., No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012).

Also, because Plaintiffs' claims are based on omissions, their validity "depends on allegations that would establish some duty of disclosure on the part of defendant."  Goodman v. Kennedy, 18 Cal. 3d 335, 346 (1976).  To allege a duty to disclose, a plaintiff must show a defendant "(1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of

38

material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact."   In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1172–73 (C.D. Cal. 2010) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997)).  Plaintiffs argue their allegations show Defendant had a duty to disclose because of Defendant's possession of exclusive and superior knowledge of the defect.  (Doc. No. 43 at 26–30.)

### 1.   Exclusive and Superior Knowledge Under California Law

In California, a seller has a duty to disclose if it has (1) exclusive knowledge of (2) material facts not known to the plaintiff.   A defect is in the exclusive and superior knowledge of a seller if the seller "knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover."  Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 256 (2011), as modified (Dec. 28, 2011).  In other words, "a plaintiff can establish that a duty exists if she alleges facts showing that the defendant knew of the alleged defect and did nothing to fix it or alert customers to its existence." Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010). "In order for non-disclosed information to be material, a plaintiff must show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'"   Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), aff'd, 322 F. App'x 489 (9th Cir. 2009).

Here, Plaintiffs state sufficient facts showing Defendant knew of the HVAC defect.  Specifically, Plaintiffs (1) reference NHTSA consumer

United States District Court
Central District of California

complaints stating consumers contacted Defendant regarding the HVAC defect and requested repairs (Doc. No. 34 ¶ 56); (2) cite Defendant's internal technical bulletins since 1997 addressing the HVAC Defect (id. ¶¶ 61, 63); and (3) reference Defendant's course manual material stating that the odors Plaintiffs complain of "are a common complaint among users" (id. ¶ 5).

Further, Plaintiffs allege sufficient facts to show Defendant "did nothing to fix [the defect] or alert customers to its existence."  Plaintiffs state (1) "Defendant failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter)"; (2) Defendant "failed to provide any notice of the defect and associated safety hazard to Plaintiffs and members of the Classes"; and (3) Defendant "failed to recall the vehicles to remedy the defect."  (Id. ¶ 53.)  Plaintiffs also allege Defendant distributed its technical service bulletins addressing the defect to only its "exclusive network of dealerships."  (Id. ¶¶ 58–60, 63.)  Further, the NHTSA complaints cited by Plaintiffs suggest that when consumers asked Defendant about the odors emitted by the HVAC system, Defendant would, at times, deny there ever was a defect and refuse to repair the defect.  (Id. ¶ 56.)

Defendant argues, contrary to Plaintiffs allegations, that it alerted customers to the possibility of HVAC odors by including this information in their vehicles' owners' manuals, which are available online and included with every vehicle's purchase.  (Doc. No. 39-1 at 30.)  Thus, since Defendant alerted consumers of the defect, it was not in Defendant's "exclusive

knowledge." (<u>Id.</u>)  The relevant part of the owners' manuals states: "During use, various odors from inside and outside the vehicle may enter into and accumulate in the air conditioning system. This may then cause odor to be emitted from the vents." (<u>E.g.</u>, Doc. No. 39-5 at 2, 4, 6.)

The Court finds Defendant's argument unconvincing.  Indeed, "various odors from inside and outside the vehicle [that] enter into and accumulate in the air conditioning system" are not what Plaintiffs are complaining of.  Instead, Plaintiffs allege there are "noxious and foul odors" that originate from mold growing inside the air conditioning system itself—not that originate outside the system, flow into the air conditioning system, and accumulate therein.  Further, the information in Defendant's owner manuals states nothing about the mold Plaintiffs complain is blown into the passenger compartment of their vehicles.  Accordingly, the Court finds Defendant's owners' manuals did not alert consumers to the defects of which Plaintiffs complain—namely "noxious and foul odors" and airborne mold blown into their vehicles' passenger compartments.

Additionally, Plaintiffs' allegations satisfy the requirements of Rule 9(b) by identifying the "'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'" <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.</u>, Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).  In short, Plaintiffs have alleged that Defendant did not disclose the "noxious and foul odors" and airborne mold, even though Defendant knew about the same since 1997 and had a duty to disclose this information.  Further, Plaintiffs

United States District Court
Central District of California

41

allege they would have paid less for their vehicles had they known of the alleged "noxious and foul odors" and airborne mold.  (Doc. No. 34 ¶ 115.)

In sum, the facts alleged in Plaintiffs' complaint show Defendant had a duty to disclose the alleged HVAC defect to consumers and Defendant failed to do so.  Hence, Plaintiffs have alleged a material misrepresentation by Defendant, and Defendant's Motion is DENIED as to Plaintiffs' California common law fraud claims.

### 2.   Exclusive Knowledge Under Kansas Law

In Kansas, "a contracting party who has superior knowledge, or knowledge that is not within the reasonable reach of the other party, has a legal duty to disclose information material to the bargain."  Plastic Packaging Corp. v. Sun Chem. Corp., 136 F. Supp. 2d 1201, 1205 (D. Kan. 2001). "The determination of any contractual or fiduciary duty to disclose is based on the facts and circumstances of each case."  Dodson Int'l Parts, Inc. v. Hiatt, No. 02-4042-SAC, 2003 WL 22327176, at *11 (D. Kan. Sept. 25, 2003).  Under Kansas law, however, the "superior knowledge" duty does not apply in the absence of a direct business transaction between a buyer and a seller.  In re MI Windows & Doors, Inc. Prod. Liab. Litig., No. 2:12-CV-02860-DCN, 2013 WL 1442332, at *4 (D.S.C. Apr. 9, 2013) (interpreting Kansas law); Great Plains Christian Radio, Inc. v. Cent. Tower, Inc., 399 F. Supp. 2d 1185, 1195 (D. Kan. 2005) ("Kansas courts have recognized that a duty to disclose may arise in two situations: (1) there is a disparity of bargaining power or of expertise between two contracting parties; or (2) the parties are in a fiduciary relationship to one another").

United States District Court
Central District of California

Here, as discussed above, Plaintiffs allege Defendant had special knowledge of the HVAC defect and failed to disclose it to Plaintiffs. Plaintiffs also allege they "and members of the Classes purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party." (Doc. No. 34 at ¶ 159.) Accordingly, Plaintiffs' claims are sufficient to the extent they allege they purchased vehicles from Defendant's agents.

Hence, Defendant's Motion is DENIED as to Plaintiffs' fraud claims under Kansas law.

### 3.    Exclusive Knowledge under Washington Law

In Washington, "[o]rdinarily the duty to disclose a material fact exists only where there is a fiduciary relationship, and not where the parties are dealing at arm's length." Gaines v. Jordan, 64 Wash. 2d 661, 664 (1964). A duty to disclose, however, arises "where the facts are peculiarly within the knowledge of one person and could not be readily obtained by the other; or where, by the lack of business experience of one of the parties, the other takes advantage of the situation by remaining silent." Colonial Imports, Inc. v. Carlton Nw., Inc., 121 Wash. 2d 726, 732 (1993) (quoting Oates v. Taylor, 31 Wash. 2d 898 (1948)); LaPorte v. Definitive Homestyling, Inc., 113 Wash. App. 1024 (2002). "When such a manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a

duty to disclose that information."  <u>Zwicker v. Gen. Motors Corp.</u>, No. C07-0291-JCC, 2007 WL 5309204, at *3 (W.D. Wash. July 26, 2007).

Here, as discussed above, Plaintiffs allege Defendant had special knowledge of the HVAC defect and failed to disclose it to Plaintiffs.  Also, given the nature of Plaintiffs' alleged defect—<u>i.e.</u> a buildup of moisture in on the HVAC system's evaporator which then emitted "noxious and foul odors" and blew airborne mold into the vehicles' passenger compartments—the Court finds the defect would not be "readily ascertainable to customers." Further, Plaintiffs' allegations that Defendant attempted to conceal the existence of "noxious and foul odors" and mold exposure also show the defect was not "readily ascertainable."  Accordingly, the Court finds Plaintiffs have alleged Defendant had a duty to disclose under Washington law.

Hence, Defendant's Motion is DENIED as to Plaintiffs' fraud claims under Washington law.

### 4.    Exclusive Knowledge Under Florida Law

In Florida, "[f]raud based upon a failure to disclose material information exists only when a duty to make such disclosure exists." <u>Friedman v. Am. Guardian Warranty Servs., Inc.</u>, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003).  "This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties."  <u>Id.</u>  "[T]he duty to disclose 'special knowledge' of material facts arises only [1]  in the context of a business transaction to which both the plaintiff and the

defendant are a party or [2] where both parties had some kind of preexisting relationship."  In re Palm Beach Fin. Partners, L.P., 517 B.R. 310, 330 (Bankr. S.D. Fla. 2013); see Drilling Consultants, Inc. v. Hartford Life & Annuity INS. Co., No. 8:12-CV-2690-T-26MAP, 2014 WL 12575842, at *1 (M.D. Fla. Apr. 11, 2014) (holding a seller's "superior and exclusive knowledge giv[es] rise to its duty to disclose).  The "special knowledge" duty does not apply, however, in the absence of a direct business transaction between a buyer and a seller (or a preexisting relationship). Marriott Int'l, Inc. v. Am. Bridge Bah., Ltd., 193 So. 3d 902, 908 (Fla. Dist. Ct. App. 2015); BCJJ, LLC v. LeFevre, No. 8:09-CV-551-T-17EAJ, 2011 WL 989230, at *7 (M.D. Fla. Mar. 21, 2011).

Here, as discussed above, Plaintiffs allege Defendant had special knowledge of the HVAC defect and failed to disclose it to Plaintiffs.  Plaintiffs also allege they "and members of the Classes purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party."  (Doc. No. 34 at ¶ 159.)  Accordingly, to the extent Plaintiffs allege they purchased vehicles from Defendant's agents, this shows they entered into a "business transaction to which both the [Plaintiffs] and [Defendant]" were parties, and Defendant had a duty to disclose the HVAC defect.

Hence, Defendant's Motion is DENIED as to Plaintiffs' fraud claims under Florida law.

### 5.    Exclusive Knowledge Under Colorado Law

Under Colorado law, "[a] defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that in equity or good conscience should be disclosed." Alpine Bank v. Hubbell, 555 F.3d 1097, 1109 (10th Cir. 2009). In the absence of a fiduciary relationship or previous misleading or ambiguous statement, case law holds that a seller has a duty to disclose:

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and . . .

> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of [1] the relationship between them, [2] the customs of the trade or [3] other objective circumstances, would reasonably expect a disclosure of those facts.

Id.

"[W]hen parties are dealing as vendor and vendee[,] they deal at arms length," and no relationship arises that would require disclosure of "facts basic to the transaction." Mallon Oil Co. v. Bowen/Edwards Assocs., Inc., 965 P.2d 105, 112 (Colo. 1998). Whether a buyer would "reasonably expect a disclosure of" facts basic to the transaction based on "customs of the trade or other objective circumstances," however, is a question of fact.

United States District Court
Central District of California

Wood v. Houghton Mifflin Harcourt Pub. Co., 589 F. Supp. 2d 1230, 1255
(D. Colo. 2008).

Here, Plaintiffs allege "they reasonably relied on the reasonable
expectation that the Class Vehicles would be free from defects and would
not emit foul and noxious odors and/or pose an unavoidable safety hazard."
(E.g. Doc. No. 34 ¶ 267.)  Further, Plaintiffs allege these facts were "basic to
the transaction" by stating (1) "[h]ad Defendant disclosed that the Defective
HVAC System was defective and would emit foul and noxious odors and/or
pose an unavoidable safety hazard" they would not have purchased
Defendant's vehicles (id.) and (2) "[n]o reasonable consumer expects to
purchase or lease a vehicle that contains a concealed defect that causes
the Defective HVAC System to emit noxious and foul odors and/or emit mold
and other contaminants into the Class Vehicles when the system is in use"
(id. ¶ 10).  Accordingly, the Court finds Plaintiffs have alleged facts showing
Defendant failed to disclose "facts basic to the transaction" and "because of
the customs of the trade or other objective circumstances, [Plaintiffs] would
reasonably expect a disclosure of those facts."  Hence, the Court finds
Plaintiffs have alleged Defendant had a duty to disclose under Colorado law.

Hence, Defendant's Motion is DENIED as to Plaintiffs' fraud claims
under Colorado law.

### G.  Plaintiffs' Claims Under Consumer Protection Laws

The California Consumers Legal Remedies Act ("CLRA") "proscribes
particular "unfair methods of competition and unfair or deceptive acts or

practices" in transactions for the sale or lease of goods or services to consumers." Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 (2011), as modified (Dec. 28, 2011). "These deceptive practices proscribed in the CLRA include the concealment or suppression of material facts." Id.; see McAdams v. Monier, Inc., 182 Cal. App. 4th 174, 185 (2010). Case law, however, distinguishes between (1) nondisclosure of defects that manifest before the end of a seller's warranty, and (2) nondisclosure of defects that do not manifest until after the warranty expires. McAdams, 182 Cal. App. at 174.

Failure to disclose defects that manifest before the end of a seller's warranty is a violation of the CLRA if "the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff." Id. Here, as discussed above, Plaintiffs adequately allege Defendant failed to disclose material facts that were in Defendant's "exclusive knowledge" and "not known or reasonably accessible to the plaintiff." Accordingly, Plaintiffs have sufficiently stated CLRA claims to the extent they are asserted within each Plaintiff's warranty period.

On the other hand, to state a claim for failure to disclose a defect that manifests after a seller's warranty ends, the defect must relate to the product's safety. Id. In such a circumstance, "a party must allege '(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and that the manufacturer knew of the defect at the time a sale was made.'" Williams v. Yamaha Motor Co., 851 F.3d 1015, 1025 (9th

United States District Court
Central District of California

Cir. 2017); see Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008), aff'd, 322 F. App'x 489 (9th Cir. 2009). "Where a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition."  Id. at 1028.  "Nevertheless, a party's allegations of an unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries."  Id. Here, Plaintiffs have alleged the defective HVAC systems pose two safety hazards: (1) airborne mold exposure to drivers and passengers riding in Plaintiffs' vehicles (Doc. No. 34 ¶¶ 43–44) and (2) the possibility that trapped water may leak onto the airbag module which can disable or inadvertently deploy the airbag (Doc. No. 34 ¶ 7).

Defendant, however, argues neither of Plaintiffs' allegations suffice to show an "unreasonable safety hazard" because they are merely speculative.  (Doc. No. 39-1 at 32.)  According to Defendant, no Plaintiff has alleged he or she has been exposed to mold by the HVAC system or suffered any health issues.  Id.  Further, since Plaintiffs base their airbag allegations on Defendant's recalls of vehicles other than those purchased by Plaintiffs, Plaintiffs' allegations based on airbag issues are also speculative. Id.  To support its argument, Defendant cites Williams, in which the Ninth Circuit rejected buyers' claims that an unreasonable safety hazard existed in a boat motor when accelerated corrosion led to "(1) the potential for onboard fires, and (2) the risk of accident and associated injuries due to loss of steering power."  851 F.3d at 1028.  The court reasoned that (1) the buyers' complaint lacked "any allegations indicating that any customer,

much less any plaintiff, experienced such a fire" and (2) the sellers in
Williams warned buyers about the possibility of losing power steering.

      Despite Defendant's contentions, Plaintiffs' claims are distinguishable
from those in Williams.  Here, unlike Williams, Plaintiffs allege they were all
exposed to mold blown into the passenger compartments of their vehicles
by the defective HVAC system, which Plaintiffs allege is a health risk, and
Defendant never warned plaintiffs about the possibility of such mold.  (Doc.
No. 34 ¶¶ 3, 43–44.)  Also, unlike Williams, Plaintiffs cite a 2014 safety
recall where Defendant recalled vehicles in which trapped water from the
HVAC system may "may leak onto the airbag module, which can short
circuit the circuit board inside the module, illuminating the airbag warning
light and disabling the airbag or causing inadvertent deployment."  (Id. ¶ 46.)
Accordingly, unlike Williams, the Court declines to find Plaintiffs' alleged
safety risks are merely speculative.  Hence, Plaintiffs sufficiently allege an
unreasonable safety hazard and adequately assert a CLRA claim for failure
to disclose a defect that manifests after Defendant's warranty ends.

### H.  Economic Loss Rule

      Defendant argues Plaintiffs' negligent misrepresentation claims fail
because Plaintiffs allege they suffered only economic damages, and under
the economic loss rule, solely economic damages are not recoverable in tort
claims.  (Doc. No. 39-1 at 37.)

### 1.    Economic Loss Rule Under California Law

In California, "[e]conomic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004). "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Id. "[T]he economic loss rule, [however,] allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property other than the product itself." Jimenez v. Superior Court, 29 Cal. 4th 473, 483 (2002).  For example, "the economic loss rule does not necessarily bar recovery in tort for damage that a defective product (e.g., a window) causes to other portions of a larger product (e.g., a house) into which the former has been incorporated. "  Id.

Here, Plaintiffs allege there is a defect in the HVAC system. According to the reasoning in Jimenez, however, Defendant's HVAC system is but one part that "has been incorporated" into a larger product— Defendants' vehicles.  Accordingly, the Court agrees that the economic loss rule bars Plaintiffs from recovering for damages to the HVAC system itself under their negligent misrepresentation claims.  Nonetheless, Plaintiffs can still recover to the extent Plaintiffs can show the odors and mold from the HVAC system damaged the rest of their vehicles.

1   Hence, the Court DISMISSES Plaintiffs' California negligent

2   misrepresentation claims without leave to amend to the extent they seek to

3   recover economic losses for damage to the HVAC system itself.

4   Defendant's Motion, however, is DENIED to the extent Plaintiffs' California

5   negligent misrepresentation claims seek economic losses for damage the

6   HVAC system caused to Plaintiffs' vehicles.

7

8   **2.   Economic Loss Rule under Washington, Kansas, Florida,**

9   **Colorado, and Virginia Law**

10   Plaintiffs argue the economic loss rule does not bar their negligent

11   misrepresentation claims under Washington, Kansas, Florida, Colorado, and

12   Virginia law because each state's law holds that the economic loss rule

13   "does not bar tort claims for economic losses arising where the defendant

14   has violated an independent duty"—i.e. one apart from those set forth in the

15   contract itself.  (Doc. No. 43 at 33–34.)  Defendant does not contest that

16   each state allows tort recovery for solely economic losses when "the

17   defendant has violated an independent duty."  (Doc. No. 45 at 15.)

18   According to Defendant, however, the only relationships between Plaintiffs

19   and Defendant are "governed by their warranties," and thus Plaintiffs cannot

20   show Defendant violated an independent duty.  (Id.)

21

22   As discussed above, the Court has found Plaintiffs validly stated fraud

23   claims under each state's law because Defendant had a duty to disclose

24   any alleged HVAC defects to Plaintiffs.  The duty not to commit fraud is

25   independent of any duty created by the warranties between Plaintiffs and

26   Defendant.  E.g.,  Jackowski v. Borchelt, 174 Wash. 2d 720, 738 (2012)

United States District Court
Central District of California

United States District Court
Central District of California

("The duty to not commit fraud is independent of the contract, the independent duty doctrine permits a party to pursue a fraud claim regardless of whether a contract exists. The same is true for a claim of negligent misrepresentation, but only to the extent the duty to not commit negligent misrepresentation is independent of the contract."); United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1227 (10th Cir. 2000); ("[A plaintiff's] fraud claim, although premised on representations made in the course of contractual negotiations, likewise arose independently of the contract" and thus was not barred by the economic loss rule).  Thus, Plaintiffs allege Defendant violated an independent duty, apart from those set forth in its warranties to Plaintiffs.  Accordingly, Plaintiffs may recover for economic losses under their negligent misrepresentation claims—under Washington, Kansas, Florida, Colorado, and Virginia law—to the extent these misrepresentations are not contained within their warranties.  Plaintiffs may not recover economic losses under their negligent misrepresentation claims, however, to the extent Plaintiffs allege these misrepresentations are contained in their express warranties or embodied within the implied warranty of merchantability.

Accordingly, Defendant's Motion is DENIED as it relates to Plaintiffs' negligent misrepresentation claims under Washington, Kansas, Florida, Colorado, and Virginia law.

### I.    Plaintiffs' Equitable Claims

"It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law."

53

United States District Court
Central District of California

Mort v. United States, 86 F.3d 890, 892 (9th Cir. 1996) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992).  Indeed, "equitable relief is not appropriate where an adequate remedy exists at law." Schroeder v. United States, 569 F.3d 956, 963 (9th Cir. 2009); In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("Plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims.").  "Plaintiffs are, of course, entitled to plead alternative claims" under Federal Rule of Civil Procedure 8(a).  In re Ford Tailgate Litig., No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014).  Nonetheless, "where [an equitable claim] relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action."  Id.  Thus, "[s]hould plaintiffs ultimately be unable to recover under either a contract or tort theory, it does not mean a legal remedy was unavailable (thereby justifying an equitable remedy[)], but only that their claim lacks merit."  Id.

Unfair Competition Law claims, unjust enrichment claims, and injunctive relief claims under the California Consumer Legal Remedies Act are equitable claims.  Philips v. Ford Motor Co., No. 14-CV-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) ("the UCL provides only equitable remedies"); Shum v. Intel Corp., 630 F. Supp. 2d 1063, 1078 (N.D. Cal. 2009), aff'd, 633 F.3d 1067 (Fed. Cir. 2010) ("There is little doubt that unjust enrichment is an equitable claim"); Durkee v. Ford Motor Co., No. C 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) (holding claims for injunctive relief under the California Consumer Legal Remedies

United States District Court
Central District of California

Act are equitable claims).  Claims for damages under the California Consumer Legal Remedies Act, however, are not considered equitable claims.  <u>Philips</u>, 2015 WL 4111448 at *16.

Defendant argues Plaintiffs' equitable California Unfair Competition Law claims, Consumer Legal Remedies Act claims, and unjust enrichment claims must fail because they rely on "the same factual predicates" as Plaintiffs' "breach of warranty, fraud, and statutory consumer protection claims."  Plaintiffs, on the other hand, do not contest their equitable and legal claims are based on the same factual predicates, but Plaintiffs argue they are allowed to plead equitable and legal claims alternatively under Federal Rule of Civil Procedure 8(a).

Plaintiffs' contention lacks merit.  As articulated in <u>In re Ford Tailgate Litig.</u>, legal and equitable claims based on the same factual predicates are not "true alternative theor[ies] of relief but rather [are] duplicative."  Further, Plaintiffs have not alleged how their legal claims would not provide them with an "adequate remedy at law."  Thus, Plaintiffs may not plead their equitable claims in the alternative to their breach of warranty, fraud, and statutory consumer protection claims.  Accordingly, the Court DISMISSES Plaintiffs' equitable California Unfair Competition Law claims and unjust enrichment claims without leave to amend.  Defendant's Motion is DENIED as to Plaintiffs' Consumer Legal Remedies Act claims to the extent Plaintiffs seek damages as opposed to injunctive relief.

### J.   Plaintiffs Kennedy's and Alley's Claims

Defendant argues Kennedy's and Alley's claims are barred by Virginia's and Colorado's respective statutes of limitations.  (Doc. No. 39-1 at 39–40.)  Specifically, because (1) Kennedy alleged she experienced the HVAC system defect before the end of her express warranty period; (2) her express warranty period ended no later than November 2010; (3) this suit was filed on March 24, 2017; and (4) Virginia's statute of limitations is four years, Defendant argues Kennedy's claims are time barred.  Similarly, because (1) Alley alleged she experienced the HVAC system defect before the end of her express warranty period; (2) her express warranty period ended no later than June 2011; (3) this suit was filed on March 24, 2017; and (4) Colorado's statute of limitations is three years, Alley's claims are time barred.

Defendant's argument is premised on a flawed interpretation of Plaintiffs' complaint.  Plaintiffs' complaint avers: "Plaintiffs and members of the Classes experienced the existence of the defect in the Defective HVAC System within the warranty periods but had no knowledge of the existence of the defect and associated safety hazard, which were known and concealed by Defendant."  (Doc. No. 34 ¶ 148.)   Thus, although Defendant argues Kennedy and Alley "necessarily discovered the alleged defect no later than" the end of their express warranties because they "experienced the alleged defect during the express warranty period," Defendant misunderstands Plaintiffs' allegations.  Here, Plaintiffs allege only that Kennedy and Alley "experienced the existence of the defect" within the warranty period.  That is to say, Kennedy and Alley smelled the alleged

"noxious and foul odors" and inhaled the airborne mold produced by the defective HVAC system before their warranties ended.  According to Plaintiffs' allegations, however, Kennedy and Alley did not discover the HVAC system was in fact defective until later because, as discussed above, Defendant allegedly took steps to conceal the defect.  (Id. ¶¶ 68–72.)  As a result, Kennedy and Alley did not discover the facts giving rise to their claims—i.e. that the HVAC system in fact had a defect—until later.  Indeed, Plaintiffs allege facts showing the statute of limitations should be tolled, including that: (1) "Plaintiffs and members of the Classes were deceived regarding the Defective HVAC System and could not reasonably discover the defect" (id. ¶ 68); (2) Plaintiffs "did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or that the Class Vehicles contained a Defective HVAC" (id. ¶ 69); and (3) despite being under a duty to disclose the existence of the defect to Plaintiffs, "Defendant knowingly, actively and affirmatively concealed the facts alleged herein including the Defective HVAC System and safety hazard."

Hence, the Court finds it is not clear from the face of the complaint that Kennedy's and Alley's claims are barred by their respective states' statutes of limitations.  Accordingly, the Motion is DENIED as to those claims.

**K.   Standing to State Claims Based on Vehicles Plaintiffs Did Not Purchase**

Defendant argues the Court should dismiss claims based upon vehicles that Plaintiffs did not purchase because Plaintiffs do not have standing to state claims based on these vehicles.  (Doc. No. 39-1 at 40–42.)  Defendant admits there is a split of authority in the Ninth Circuit regarding when a plaintiff has standing to sue for products the plaintiff did not purchase.  (Id.)

Under the first line of cases, "when a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."  Granfield v. NVIDIA Corp., No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012); Carrea v. Dreyer's Grand Ice Cream, Inc., No. C 10-01044 JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011).

Under the second line of cases, "a Plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." Brown v. Hain Celestial Grp., Inc., 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."); see also Astiana v. Dreyer's Grand Ice Cream, Inc.,

No. C-11-2910, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (noting that, in cases that decide whether individual plaintiffs have standing to represent purchasers of other products, "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased"); Dysthe v. Basic Research LLC, No. 09-8013, 2011 WL 5868307 (C.D. Cal. June 13, 2011) (holding that a plaintiff did not have standing over claims related to a product she did not purchase because "[h]aving a few common ingredients is simply not enough to show the Products are the same or even 'nearly identical'"). The Court finds the latter line of cases more persuasive.

According to Defendant, even under the latter line of cases, Plaintiffs fail to allege they have standing to pursue claims for HVAC systems in vehicles they did not purchase.  This is because "Plaintiffs fail to allege a single fact about the other 33 model vehicles they never purchased—much less that those vehicles have the same, or even similar, HVAC systems to the specific models Plaintiffs purchased."  (Doc. No. 39-1 at 41–42.)

Defendant's argument is unpersuasive.  Here, Plaintiffs' complaint alleges, "[o]n or around May 9, 1997, [Defendant] issued a [technical service bulletin] titled 'Air Conditioning Evaporator Odor' for all [Defendant's] Models to its exclusive network of dealerships."  (Doc. No. 34 ¶ 58.)  This technical service bulletin stated the odors of which Plaintiffs complain may result from a "[b]lockage of the evaporator housing drain pipe, resulting in the build up of condensate" or "[m]icrobial growth in the evaporator, arising from dampness in the evaporator housing."  (Id.)  Plaintiffs also allege Defendant

released technical service bulletins on April 9, 2015, and September 12, 2013, addressing the odor issues in Plaintiffs' purchased vehicles, as well as all the other vehicles Plaintiffs seek to include in their definition of "class vehicles."  (Id. ¶¶ 62–63.)  Additionally, Plaintiffs' complaint describes the inner workings of Defendant's HVAC systems that gave rise to the defect and states this description applies to all vehicles Plaintiffs seek to include in the suit.  (Id. ¶¶ 36–48.)  Hence, given (1) the issuance of the same Technical Service Bulletins for all the vehicles with allegedly defective HVAC systems Plaintiffs seek to include in this case and (2) that on a motion to dismiss, the Court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party, the Court finds Plaintiffs have alleged sufficient facts to show the HVAC systems "are substantially similar."  Further, as Plaintiffs assert the same misrepresentation claims and allegations for all the vehicle models they seek to include in this case, the Court also finds the alleged misrepresentations "are substantially similar."[3]

In sum, the Court finds Plaintiffs have alleged sufficient facts to show they have standing to sue for the vehicles they seek to include in the suit.

_____

[3] Additionally, Defendants' argument that Plaintiffs do not have standing to sue for vehicles they did not purchase would not justify dismissing Plaintiffs' claims.  Before class certification, the Court only addresses the sufficiency of Plaintiffs' claims, not those of putative class members, who do not become a part of the litigation until after class certification.  Accordingly, as Plaintiffs only assert claims for vehicles they did not purchase on behalf of putative class members, and Plaintiff has yet to file a motion for class certification, this is not a basis for dismissing Plaintiffs' claims.

**L.   Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).  The law in the Ninth Circuit is clear that "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality." <u>Eldridge v. Block</u>, 832 F.2d 1132, 1135 (9th Cir. 1987).  When dismissing a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Id.</u> at 1130 (quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)).  Accordingly, leave to amend should be denied only when allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party acted in bad faith. <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 512 F.3d 522, 532 (9th Cir. 2008).

As discussed in detail above, the Court dismisses Plaintiffs' breach of express warranty claims under California law, Colorado law, Florida law, and Virginia law.  These claims are dismissed on the basis that Plaintiffs never "sought repairs, refunds or replacements."  There is no indication, however, that Plaintiffs would not be able to seek repairs in the near future and then reassert these claims if Defendant refuses to remedy the HVAC defect.  Accordingly, the Court does not find amendment would be futile, cause

United States District Court
Central District of California

United States District Court
Central District of California

undue delay, or prejudice Defendant, and thus the Court grants leave to amend these claims.

The Court dismisses Plaintiffs' breach of express warranty claims under Washington law, but only to the extent they allege a breach occurred due to Defendant's defective design.  This portion of Plaintiffs' claim is dismissed because Washington law holds design defects are not covered under warranties covering only "materials and/or workmanship."  As it is undisputed this is the only type of warranty between Defendant and Plaintiffs, the Court finds amendment would be futile.  Accordingly, this portion of Plaintiffs' claims under Washington law is dismissed without leave to amend.

The Court dismisses Plaintiffs' implied warranty claims under Washington law because Washington law holds Plaintiffs cannot be a third party beneficiary of any warranty made by Defendant to any intermediary dealer.  Further, Plaintiffs have stated there was no direct contact between Defendant and Plaintiffs in Washington.  Accordingly, the Court finds amendment of this claim would be futile and dismisses this claim without leave to amend.

The Court dismisses Plaintiffs' implied warranty claims under Virginia law, but only to the extent they are based on economic damages.  This portion of Plaintiffs' claims is dismissed because Virginia requires a buyer to have privity to recover economic losses under an implied warranty claim.  Plaintiffs admit there was no privity between Plaintiffs and Defendant in

United States District Court
Central District of California

Virginia, and thus the Court finds amendment of this claim would be futile and dismisses this claim without leave to amend.

The Court dismisses Plaintiffs' negligent misrepresentation claims under California law, but only to the extent Plaintiffs seek to recover economic losses for damage to the HVAC system itself.  This portion of Plaintiffs' claims is dismissed because California law prevents tort recovery for purely economic loss resulting from a defective product that only damages itself.  Accordingly, as the Court only dismisses Plaintiffs' negligent misrepresentation claim to the extent Plaintiffs seek to recover economic losses for damage to the HVAC system itself, any amendment would not change this result and thus would be futile.  Hence, this portion of Plaintiffs' negligent misrepresentation claims under California law is dismissed without leave to amend.

The Court dismisses Plaintiffs' equitable California Unfair Competition Law claims and equitable unjust enrichment claims because equitable relief is not appropriate where an adequate remedy exists at law.  As Plaintiffs have already sufficiently pleaded legal claims based on the same factual predicates as these equitable claims, Plaintiffs have shown "an adequate remedy exists at law."  Accordingly, any attempt to restate these equitable claims based on the same facts would be futile, and these claims are dismissed without leave to amend.

# IV.    CONCLUSION

For the reasons stated above, Defendant's Motion is granted with leave to amend as to Plaintiffs' breach of express warranty claims under California law, Colorado law, Florida law, and Virginia law.  Defendant's Motion is also granted with leave to amend as to Plaintiffs' implied warranty claims under Washington law.

Defendant's Motion is granted without leave to amend as to the following claims:

1)  Plaintiffs' breach of express warranty claims under Washington law, but only to the extent they allege a breach occurred due to Defendant's defective design;

2)  Plaintiffs' implied warranty claims under Virginia law, but only to the extent they are based on economic damages;

3)  Plaintiffs' fraud claims under Kansas law and Florida law, but only to the extent Plaintiffs allege they purchased vehicles from third parties;

4)  Plaintiffs' negligent misrepresentation claims under California law, but only to the extend Plaintiffs seek to recover economic losses for damage to the HVAC system itself;

5)  Plaintiffs' equitable California Unfair Competition Law claims;

6) Plaintiffs' equitable Consumer Legal Remedies Act claims; and

7) Plaintiffs' equitable unjust enrichment claims.

**IT IS SO ORDERED.**

Dated:      7/7/17

Virginia A. Phillips
Chief United States District Judge