1   Paul R. Kiesel, State Bar No. 119854
      *kiesel@kiesel.law*
2   Jeffrey A. Koncius, State Bar No. 189803
      *koncius@kiesel.law*
3   Nicole Ramirez, State Bar No. 279017
      *ramirez@kiesel.law*
4   **KIESEL LAW LLP**
    8648 Wilshire Boulevard
5   Beverly Hills, CA 90211-2910
    Tel:   310-854-4444
6   Fax:   310-854-0812

7   Attorneys for Plaintiffs and the Proposed Classes

8   *(Additional Attorneys Listed on Signature Page)*

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11  | PAUL STOCKINGER, ELIZABETH | **Case No.: 17-cv-00035-VAP-KS** |
    | STOCKINGER, GAILYN | |
12  | KENNEDY, BASUDEB DEY, | **PLAINTIFFS' MEMORANDUM** |
    | ELIEZER CASPER, YVETTE | **OF POINTS AND AUTHORITIES** |
13  | ALLEY, and NORMAL BEIL on | **IN OPPOSITION TO** |
    | behalf of themselves and all others | **DEFENDANT'S MOTION FOR** |
14  | similarly situated, | **SUMMARY JUDGMENT** |
    |              Plaintiffs, | |
15  | | Date:  January 14, 2019 |
    |              v. | Time:  2:00 p.m. |
16  | | Judge:  Hon. Virginia A. Phillips |
    | TOYOTA   MOTOR   SALES,   U.S.A., | Ctrm.:  8A, 8th Floor |
17  | INC., a California corporation, | |
18  |              Defendant. | |

19

20

21

22

23

24

25

26

27

28

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................ 1

II.  SUMMARY OF THE ARGUMENT ................................................... 2

III.  STATEMENT OF FACTS ................................................................. 6

    A.  TMS Has Known of its HVAC Odor Problem Since 1997 ................. 6

    B.  TMS Has Considered Various Countermeasures to Hide HVAC Odor and Remove Trapped Moisture ...................................... 6

    C.  None of the Countermeasures Addressed the Root Cause ................. 8

IV.  LEGAL STANDARD ...................................................................... 10

V.  ARGUMENT .................................................................................... 11

    A.  There are Triable Issue of Material Fact As to Whether the HVAC Systems in the Subject Vehicles Are Defective. ................... 11

    B.  The Court Should Deny TMS's Premature Request for Summary Judgment Regarding Damages Calculation ...................... 13

    C.  Plaintiffs Kennedy, Alley and Casper's Claims are Not Barred by the Statute of Limitations ............................................. 14

        1.  Virginia Law ............................................................................. 15

        2.  Oklahoma Law .......................................................................... 16

        3.  Florida Law ............................................................................... 16

    D.  There are Triable Issue of Material Fact As to Whether the HVAC Systems in the Subject Vehicles Are Defective. ................... 17

    E.  There are Triable Issues of Material Fact on Plaintiff Dey and Plaintiff Beil's Song-Beverly Warranty Claims ......................... 20

        1.  The Fact that a Consumer Continues to Use a Product Does Not, As a Matter of Law, Mean the Product is Merchantable.. 20

        2.  Whether Plaintiffs' Vehicles are "Merchantable" is a Disputed Question of Fact to be Decided by the Jury. .......................... 21

    F.  There are Triable Issues on Plaintiffs' MMWA Claims .................... 24

        1.  TMS' Motion Fails Regarding the State Law Warranty Claims and Thus Fails as to Plaintiffs' MMWA Claims .......... 24

        2.  Plaintiffs' MMWA Claims Do Not Fail for Lack of

Pre-Suit Notice ........................................................................... 24

G.   There are Triable Issues of Material Fact on Plaintiffs'
CLRA Claims .................................................................... 24

1.   The CLRA Applies to Purchases Outside of California .......... 25

2.   CLRA Claims are Tolled Pursuant to the Discovery Rule ....... 26

3.   Triable Issues of Fact Regarding Materiality and
Safety Defeat Summary Judgment ........................................... 27

4.   Triable Issues Exist Regarding Actual Reliance ..................... 29

H.   There are Triable Issues of Material Fact on Plaintiffs' State
Law Consumer Protection Claims ................................... 31

1.   Washington ............................................................................... 31

2.   Florida ...................................................................................... 32

3.   Virginia .................................................................................... 33

I.   Fraudulent Non-Disclosure ............................................... 33

1.   Plaintiffs Raise a Triable Issue of Material Fact Concerning
Exposure to and Reliance on a Material Omission ................ 33

2.   Plaintiffs Raise a Triable Issue of Material Fact
ConcerningDefendant's Intent to Defraud ............................... 34

J.   Negligent Misrepresentation .............................................. 35

1.   An Omission Can Serve as a Basis of a Negligent
Misrepresentation Claim ........................................................... 35

2.   Plaintiffs Casper and Alley Have Raised Triable Issues of
Material Fact of Reliance on TMS's Omission ........................ 35

CONCLUSION ........................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahearn v. Mayo Clinic*,
180 So. 3d 165 (Fla. 1st DCA 2015)................................................................32

*Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*,
12-05307, 2013 WL 11324312 (C.D. Cal. Apr. 16, 2013) ...............................14

*All Underwriters Subscribing to Policy of Ins. No.
B0621MMILSYB15055 v. Rika Boats Ltd.*,
16-20498, 2017 WL 1439944 (S.D. Fla. Jan. 20, 2017)...................................18

*In re ALMA Litig.*,
320 F.Supp. 3d 578 (S.D.N.Y. 2018).................................................................24

*Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*,
990 F. Supp. 2d 1254 (M.D. Fla. 2013) .............................................................17

*Am. Suzuki Motor Corp. v. Sup. Ct.*,
37 Cal. App. 4th 1291 (1995).............................................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...........................................................................................10

*Apodaca v. Whirlpool Corp.*,
2013 WL 6477821 (C.D. Cal. 2013).............................................................27, 28

*AT&T Mobility, LLC v. Digital Antenna, Inc.*,
2010 WL 11506068 (S.D. Fla. Feb. 9, 2010).....................................................32

*Bayliner Marine Corp. v. Crow*,
257 Va. 121 (1999)..............................................................................................19

*Barber v. Sam's Club E., Inc.*,
2017 WL 4479221 (W.D. Va. Oct. 6, 2017)..................................................18, 19

*Barlow v. Ground*,
943 F.2d 1132 (9th Cir. 1991)............................................................................10

*Beil v. Toyota Motor Sales, U.S.A., Inc.*,
Case No. 17-7079 (C.D. Cal.), Dkt. 1 ..................................................................1

i

*Bd. of Trustees of Santa Fe Cmty. Coll. v. Caudill Rowlett Scott, Inc.*,
    461 So. 2d 239 (Fla. Dist. Ct. App. 1984)...........................................17

*Bd. of Directors of Bay Point Condominium Ass'n, Inc. v. RML Corp.*,
    57 Va. Cir. 295 (2002)..........................................................................19

*Boykins Narrow Fabrics Corp. v. Weldon Roofing and Sheet Metal, Inc.*,
    221 Va. 81(Va. 1980) ............................................................................15

*Brand v. Hyundai Motor Am.*,
    226 Cal. App. 4th 1538 (Cal. Ct. App. 2014) ..........................20, 21, 22

*Bryde v. Gen. Motors, LLC*,
    2016 WL 6804584 (N.D. Cal. Nov. 17, 2016)......................................21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...............................................................................11

*Chamberlan v. Ford Motor Co.*,
    369 F. Supp. 2d 1138 (N.D. Cal. 2005)...........................................26, 27

*Cholakyan v. Mercedes-Benz USA, LLC*,
    796 F. Supp. 2d 1220 (C.D. Cal. June 30, 2011) ..................................20

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008).................................................................24

*In re Clorox*,
    894 F. Supp. 2d 1224 (N.D. Cal. 2012)..................................................25

*Comcast Corp. v. Behrend*,
    596 U.S. 27, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) .........................13

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015).............................................................29, 31

*Decker v. Mazda Motor of America, Inc.*,
    2011 WL 510705 (C.D. Cal. 2011) ........................................................27

*Ehrlich v. BMW of North America, LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. Aug. 11, 2010)...............................20, 30

*Elias v. Hewlett-Packard Co.*,
    950 F.Supp.2d 1123 (N.D. Cal. 2013) ........................................................ 28

*Falk v. GMC*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................................ 9

*Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*,
    2010 WL 1223126 (M.D. Fla. Mar. 25, 2010) ............................................ 19

*Galitski v. Samsung Telecommunications America, LLC*,
    No. 3:12-CV-4782, 2015 WL 5319802 (N.D. Texas, Sept. 11, 2015) ............. 21

*In re Gen. Motors Corp.*,
    2005 WL 1924331 (W.D. Okla. Aug. 8, 2005) ............................................ 19

*Gianino v. Alacer Corp.*,
    2010 WL 11468710 (C.D. Cal. Aug. 4, 2010) ............................................ 25

*Hawk Wing v. Lorton*,
    261 P.3d 1122 (Okla. 2011) ...................................................................... 16

*Heartland Ceramic Applications, Inc. v. Pro-Tek-USA*,
    15-cv-242, 2016 WL 5762769 (N.D. Okla. Sept. 30, 2016) .......................... 11

*Hill v. Opus Corp*,
    46 B.R. 361 (C.D. Cal. 2011) ..................................................................... 11

*Horton v. Hamilton*,
    345 P.3d 357 (Okla. 2015) ................................................................. 15, 16

*Hyundai Motor Co., Ltd. v. Duncan*,
    766 S.E. 2d 893 (Va. 2015) ....................................................................... 19

*In Lindsay v. James*,
    188 Va. 646 (1949) ................................................................................... 15

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
    162 Wn.2d 59 (2007) ................................................................................ 31

*In re iPhone 4S Consumer Litig.*,
    2013 WL 3829653 (N.D. Cal. July 23, 2013) ............................................. 25

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

*Isip v. Mercedes-Benz USA, LLC*,
  155 Cal. App. 4th 19 (2007)................................................................20, 21

*Jones v. U.S.*,
  60 F. 3d 584 (9th Cir. 1995) ..................................................................11

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ................................................................13

*Keegan v. Am. Honda Motor Co., Inc.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012).....................................................20

*Kerr v. Hunter Division*,
  32 Va. Cir. 497 (1981)...........................................................................19

*Lavender v. Craig Gen. Hosp.*,
  308 P.3d 1071 (Ok. Civ. App. 2013).......................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 (NRB),
  2015 WL 13122396 (S.D.N.Y. Oct. 19, 2015) .......................................35

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 NRB,
  2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ..........................................35

*Lumens v. GoEco LED LLC*,
  2018 WL 1942768 (C.D. Jan, 3 2018) ...................................................14

*Maronda Homes, Inc. of Florida v. Lakeview Reserve*
  *Homeowners Ass'n, Inc.*,
  127 So. 3d 1258 (Fla. 2013) .............................................................17, 18

*Margolis v. Ryan*,
  140 F.3d 850 (9th Cir. 1998)..................................................................11

*In re Mattel*,
  588 F. Supp. 2d 1111 (C.D. Cal. 2008)...................................................25

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)..................................................................26

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*Melson v. Wachovia Bank, NA*,
   245 P.3d 77 (Ok. Civ. App. Oct. 22, 2010) ......................................................... 16

*Miller v. Gen. Motors Co.*,
   2013 WL 11247612 (W.D. Okla. May 16, 2013) ............................................. 19

*Morgen Indus., Inc. v. Vaughan*,
   471 S.E.2d 489 (Va. 1996) ...................................................................... 17

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal) ................................................................ 20

*Nardone v. Reynolds*,
   333 So. 2d 25 (Fla. 1976) ....................................................................... 17

*Nigh v. Koons Buick Pontiac GMC, Inc.*,
   143 F. Supp. 2d 535 (E.D. Va. 2001) ............................................... 32, 33

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
   210 F.3d 1099 (9th Cir. 2000) .............................................................. 14

*Ovando v. Cnty. of Los Angeles*,
   159 Cal.App.4th 42, 71 Cal.Rptr.3d 415 (2008) .............................. 27

*Pa. Life Ins. Co. v. Bumbrey*,
   665 F. Supp. 1190 (E.D. Va. 1987) ...................................................... 15

*PennEnvironment v. PPG Industries, Inc.*,
   127 F. Supp. 3d 336 (Aug. 31, 2015) ................................................. 11

*Perry v. Lawson Ford Tractor Co.*,
   613 P.2d 458 (Ok. 1980) ....................................................................... 17

*In re Porsche Cars N. Am., Inc.*,
   880 F.Supp.2d 801 (S.D. Ohio 2012) .................................................. 32

*In Re Porsche Cars N. Am. Inc. Plastic Coolant Tubes*
   *Prods. Liab. Litig.*,
   880 F. Supp. 2d 880 (S.D. Ohio 2012) ............................................... 24

*Rasmussen v. Apple*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) ................................................. 28

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
  Case No. 15-8629 (C.D. Cal. Sept. 29, 2017) ........................................3, 9, 13, 28

*Sisemore v. Dolgencorp, LLC*,
  212 F. Supp. 3d 1106 (N.D. Okla. 2016) ........................................................20

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  580 F. Supp. 2d 896 (N.D. Cal. 2008)...............................................................25

*Stearns v. Select Comfort Retail Corp.*,
  2009 WL 1635931 (N.D. Cal. 2009)..................................................................21

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014)...............................................................21

*Tait v. BSI Home Appliance Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2011) ......................................................................28

*In re Toyota Motor Corp.*,
  790 F. Supp. 2d 1152 (C.D. Cal. 2011).............................................................29

*Water, Inc. v. Everpure, Inc.*,
  2012 WL 1294368 ............................................................................................14

*Weinberg v. Whatcom City*,
  241 F.3d 746 (9th Cir. 2001) ............................................................................14

*Winchester Homes, Inc. v. Hoover Universal, Inc.*,
  39 Va. Cir. 107 (Cir. Ct. 1996).........................................................................15

*Zwicker v. Gen. Motors Corp.*,
  No. 07-cv-291, 2007 WL 5309204 (W.D. Wash. July 26, 2007) .....................32

**Statutes**

Cal. Civ. Code § 1791.1(a) .................................................................................20

Va. Code § 8.01-249(1) .......................................................................................15

**Rules**

Fed. R. Civ. P. 56(c) ...........................................................................................10

Fed. R. Civ. P. 56(d)(1) ......................................................................................11

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Paul & Elizabeth Stockinger, Basudeb Dey, Gailyn Kennedy, Eliezer Casper, Yvette Alley ("Stockinger Plaintiffs") and Norman Beil (Beil, with the Stockinger Plaintiffs, "Plaintiffs") submit the following Memorandum of Points and Authorities in opposition to defendant Toyota Motor Sales Inc.'s ("Defendant" or "TMS") Motion for Summary Judgment ("Motion" or "Mot.").

## I. **INTRODUCTION**

The Stockinger Plaintiffs filed their Amended Complaint on March 27, 2017. Dkt. 34. TMS moved to dismiss the Amended Complaint, which the Court mostly denied on July 7, 2017. Dkt. 50. Plaintiff Beil filed a separate Complaint on September 25, 2017. *Beil v. Toyota Motor Sales, U.S.A., Inc.*, Case No. 17-7079 (C.D. Cal.), Dkt. 1. On July 9, 2018 the Court granted the Parties' stipulation to consolidate the *Beil* action with the *Stockinger* action. Dkt. 104.

As directed by the Court, discovery has been phased, with Phase I focusing on the Plaintiffs' vehicles and their generational models at issue. Ex. MM (10/23/17 Transcript at 4:15-5:12). [1] Further, the Court granted Defendant's request that there be an early "exchange of expert witness reports on the defect" before the end of fact discovery so that Defendant knows "what exactly the defect is or the claim could be" and is not "attacking the wrong issue." *See id.* at 11:11-13,11:5; *see also id.* at 15:23-24 ("[Defendant's] view is that it really is a threshold issue in this case of whether there is a defect and, if so, what it is."). The phasing of discovery and initial exchange of expert reports was included as a discovery

---

[1] Unless otherwise noted, all exhibits are attached to the Graden Declaration in support of Plaintiffs' Opposition to TMS's Motion for Summary Judgment and Motion to Exclude Expert Opinions, Reports, and Testimony of Plaintiffs' Expert Murat Okçuoğlu, filed contemporaneously hereto. References to "SUF" refer to Plaintiffs' Statement of Genuine Disputes in Opposition to Defendant's Motion for Summary Judgment, filed contemporaneously hereto. References to "Okçuoğlu Decl." refer to the Declaration of Murat Okçuoğlu in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment and Motion to Exclude Plaintiffs' Expert, filed contemporaneously hereto.

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

management tool to determine at an early stage whether Plaintiffs could establish a triable issue as to whether their vehicles suffer from a defect.

Although initial expert reports were exchanged on the nature of the defect, there currently is no fact discovery deadline. *See* Dkt. 94, 104. Accordingly, any issues Defendant raises in the Motion that require final merits or damages experts' opinions or further discovery, and go beyond whether Plaintiffs' can show a triable issue as to a defect, are premature. *See also* 56(d) Affidavit.

## II.   <u>SUMMARY OF ARGUMENT</u>

TMS has long been knowingly marketing and selling Toyota and Lexus vehicles that contain defective Heating, Ventilation and Air Conditioning systems ("HVAC Systems") which cause noxious and foul odors to be emitted into the passenger compartments of its vehicles. Rather than confronting the problem head on, which as described below will require a redesign of the HVAC system, TMS and its affiliates (collectively, "Toyota") have implemented certain limited countermeasures; however, these countermeasures have addressed only the symptoms–not the root cause–and thus have provided only small, incremental improvements. Meanwhile, TMS continues to hide the truth from its customers so as to not lose any perceived competitive advantage. Thus, TMS intentionally does not reveal that its vehicles suffer from a common HVAC defect nor does it advise customers that if they want to try to mitigate the odors coming from the HVAC Systems they will incur increased costs of ownership.

TMS claimed it needed an early disclosure of expert reports to know what the alleged defect was, and Plaintiffs provided exactly that. Plaintiffs' expert, Murat Okçuoğlu, purchased and examined HVAC Systems for the 2009 Corolla, 2014 Prius, 2011 Sienna, 2015 Sienna, 2007 Lexus ES 350 and 2014 Lexus ES 350 ("Subject Vehicles"). Mr. Okçuoğlu authored initial and rebuttal reports explaining

the defective design of the HVAC Systems.[2] Okçuoğlu Decl., Ex., 1 (Aug. 21, 2018 "Initial Report"); Ex. 2 (Sept. 11, 2018 "Rebuttal Report"). As this Court has recognized in an analogous HVAC odor case involving the Toyota Camry, Mr. Okçuoğlu is "an engineer with over 39 years of experience in automotive engineering, vehicle design, vehicle manufacturing and vehicle testing, including in connection with HVAC systems" and is well-qualified to opine on the defects in the HVAC Systems.  Ex. NN (Order, *Salas v. Toyota Motor Sales, U.S.A., Inc.,* Case No. 15-8629, at *8 (C.D. Cal. Sept. 29, 2017) (denying TMS' motion for summary judgment and accepting Mr. Okçuoğlu's expert opinion)).

Specifically, Mr. Okçuoğlu concluded in this case that the HVAC Systems (and particularly the evaporator core and housing) installed in the Subject Vehicles contain several defective design features which inhibit proper draining and airflow, promote the accumulation of water, moisture and organic particles within the evaporator and housing, and create an environment leading to microbial growth and HVAC odor.  *See* Okçuoğlu Decl., Ex. 1 (Initial Report, at 42-43).  Of significance, the authoritative, peer-reviewed sources relied upon by Defendant's own expert, Robert Kuhn, confirm, *inter alia*: (1) evaporator cores can cause "putrified" odors due to the "great environment" created by condensate which promotes microbial growth, SUF 41 (Ex. X, at 5; Dkt No. 140-12, at Page 68); (2) the health and comfort of car occupants depend on several factors, including air quality, SUF 42 (Ex. Y, at 3); Dkt No. 140-12, at Page 68);  (3) musty odors most commonly complained of in vehicles "are produced by bacteria and fungi that grow and multiply in condensed water from the air conditioner evaporator," SUF 43 (Ex. Y, at 4); and (4) "rancid odors" from the evaporator "are caused by breeding of bacteria." SUF 44 (Ex. Z, at 3; Dkt No. 140-12, at Page 68).

---

[2] The first phase of discovery ("Phase I") was limited to just Plaintiffs' vehicle generations, namely:  2009-2013 Corolla, 2010-2015 Prius, 2011-present Sienna, 2007-2012 Lexus ES 350.  *See* Ex. MM (10/23/2017 Transcript, at 4:15-5:12). With *Beil*, Phase I discovery also includes the 2013-2017 Lexus ES 350.

1      Even though discovery has been limited to date and is far from over, Mr.

2  Okçuoğlu's findings echo those of Toyota.  Indeed, as detailed below, Toyota's

3  documents reveal that, in contrast to what it represents to the public, internally it

4  realizes that there is a design defect with the HVAC Systems.  Further, the

5  documents reveal that defendant knows its countermeasures provide, at best, some

6  incremental improvement to the HVAC odor problem, but that to actually solve the

7  HVAC odor problem Toyota must redesign its HVAC Systems.

8      These hidden truths are well-captured in the following internal TMS

9  document discussing the HVAC odor problem, wherein

10

11

12

13

14

15

16

17

18

19

20

21  Ex. S (Leighton 75) (emphasis added). TMS requested

22

23

24  _Id._ (emphasis added).

25  Defendant's

26  but in a further effort to keep the truth

27  from the customer.

28

4

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL



*Id.* (emphasis added). Thus, rather than notifying customers

*Id.*

Ex. LL.   As the witness explained,

Ex. KK (Leighton Dep. at 103:1-19).

Ex. R (Leighton 74) (emphasis added).  Significantly, this is consistent with the opinion of Plaintiff's expert.

Despite this compelling evidence, TMS has moved for summary judgment prior to the end of fact discovery.[3]  At a minimum, Toyota's own documents and testimony show disputed issues of material fact concerning the defective HVAC Systems and Plaintiffs' claims that must be decided by a jury.  The opinions of Plaintiff's expert are consistent with what Defendant itself has realized and further compel the denial of summary judgment.

---

[3] Plaintiffs stipulate to the voluntary dismissal of the following claims: Count IX, Violation of Song-Beverly Consumer Warranty Act, on behalf of Plaintiff Dey to the extent it asserts an express warranty claim; Count V, Breach of Express Warranty on behalf of Plaintiffs Paul and Elizabeth Stockinger; and Count XIV, Violation of the Colorado Consumer Protection Act, on behalf of Plaintiff Alley.

## III.   STATEMENT OF FACTS

### A.   TMS Has Known of its HVAC Odor Problem Since 1997

On May 9, 1997, Toyota released Technical Service Bulletin ("TSB") AC002-97 titled: "Air Conditioning Evaporator Odor."[4] SUF 1 (Ex. A). As TSB AC002-97 explained: "A musty odor may be emitted from the air conditioning system of some vehicles which are usually operated in areas with high temperature and humidity" which could result from two conditions: (1) "[b]lockage of the evaporator housing drain pipe, resulting in the buildup of condensate" and/or (2) "[m]icrobial growth in the evaporator, arising from dampness in the evaporator housing where the cooling air flow is dehumidified." SUF 2 (Ex. A). AC002-97 applied to "All Models" and gave a procedure for cleaning and disinfecting the vehicles' evaporators and housing to address HVAC odor complaints. SUF 3 (Ex. A).

### B.   TMS Has Considered Various Countermeasures to Hide  HVAC Odor and Remove Trapped Moisture

In the early 2000's, ███████████████████████████████████████ ████████████████████████████████████████ *See* SUF 4 (Ex. B (Hitt 56)). TMS also ████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████ SUF 5 (Ex. C).  Between January 2006 and February 2010, █████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ SUF 6, fn. 1 (Exs. D, E, F). ██████████████████████████████████ SUF 8-9 (Ex. H (Hitt Dep. 55:10-60:5)), Ex. I (Hitt-60)). Accordingly, in early 2010, TMS tested two additional countermeasures discussed below.

#### (a) Komori Odor Logic

---

[4] Additional discovery on AC002-97 is necessary, which will be part of Phase II discovery.  *See* 56(d) Affidavit.

1    Toyota has coined its own term - "Komori Odor" - ███████████████

2    ████████████████████████████████████████████████████████

3    ███████████████████████████████ SUF 11 (Ex. J, Young Dep. at 18:18-

4    21:15).  This led to TMS creating "Komori Odor Logic," which does not eliminate

5    the odor or its cause but attempts to make the odor less perceptible by ███████

6    ████████████████████████████████████████████████████████

7    SUF 12 (Ex. J, Young Dep. at 57:16-59:4).

8    Not surprisingly, TMS found that ████████████████████████████

9    █████████████████████ SUF 13 (Ex. H, Hitt Dep. at 199:18-22).

10   ███████████████████████████ Toyota installed Komori Odor Logic in

11   the Sienna beginning in 2014, and in mid-production of the 2011 and 2012 model

12   years for the Lexus ES 350 and Prius, respectively.  SUF 14 (Ex. K, Resp. No. 1).

13   **(b) Charcoal Filters**

14   Absent redesign of the HVAC Systems, ████████████████████████

15   ████████████████████████████████ SUF 16 (Ex. J (Young Dep.

16   at 95:21-97:2)).

17   ████████████ SUF 15 (Ex. H (Hitt Dep. 50:23-53:17). In fact, ████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████

20   █████████████████ SUF 17(Ex. J (Young Dep. 149:4-155:18; 163:19-164:21;

21   166:2-12; 206:20-207:21)); Ex. J.1. However, ███████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████ SUF 18 (Ex. J (Young Dep.

24   95:21-97:2)). None of Plaintiffs' vehicles came with a charcoal filter installed as a

25   standard feature.[5] SUF 20 (Ex. K, First Supp. Resp. No. 6).

26   _____

27   [5] ██████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████

7

**(c) Park Fresh Logic**

███████████████   Toyota evaluated "Park Fresh Logic" as another countermeasure for HVAC odors.   With Park Fresh Logic, ███████

████████████████████████████████████████████████ SUF 22 (Ex. H (Hitt Dep. 190:6-192:25)). By the summer of 2013, ███████

████████████████████████████████████████████ SUF 26 (Ex. J (Young Dep. 81:20-82:4)).   However, TMS decided not to implement Park Fresh as a field fix for existing customers ████████████████████████████████████████████

████████████████████████████████ SUF 25 (Ex. J (Young Dep. 76:9-82:4; 121:22-122:6)). Of the Subject Vehicles, only the 2015-2017 Lexus ES 350 came with Park Fresh Logic. SUF 27 (Ex. K (First Supp. Resp. No. 3)).

Park Fresh Logic does not eliminate HVAC odor and so Toyota has considered other countermeasures, ████████████████████████████

███████████████████████████████████████████████ [6] SUF 29-30 (Ex. H (Hitt Dep. 240:14-241:22); Ex. Q (TOY-STOCKINGER-00117476)).

**C.    None of the Countermeasures Addressed the Root Cause**

As Toyota has recognized internally, ██████████████████████████

████████████████████████████████████████████████████ SUF 31 (Ex. S (Leighton 75); Ex. R (Leighton 74)).   Toyota's internal acknowledgement is consistent with the finding of Plaintiffs' expert, Murat Okçuoğlu.  Okçuoğlu Decl., Ex. 1 (Initial Report, at 1). Mr. Okçuoğlu's expert

---

SUF 21 (TOY-TEMA-STOCKINGER-00017161, at 00017175). Plaintiff Biel purchased his Lexus ES one month earlier, on July 18, 2014.  Ex. M.

[6] TMS produced limited information ██████████████████████████
████████████████████████████████████████████████

opinion has also been accepted in analogous litigation in this Court over defective HVAC Systems in the Toyota Camry. Ex. NN (Order, *Salas,* Case No. 15-8629, at 8). As detailed in the Initial Report, Mr. Okçuoğlu obtained an HVAC system[7] for each of the six Subject Vehicles. Okçuoğlu Decl., Ex. 1 (Initial Report at 17). The HVAC systems are substantially similar but fall into two categories: vertical and horizontal. *Id.* at 7, 10, 23-24, 42.

Mr. Okçuoğlu found that both the vertical and horizontal modules share common design features that promote moisture and consequent odors. For example, the evaporator housing diverts airflow unevenly and restricts airflow toward the distal end of the evaporator. Okçuoğlu Decl., Ex. 1 (Initial Report at 27-36). The HVAC housing design also creates a "dead zone," which restricts the bottom portion of the evaporator from airflow. *Id.* at 30-33. The bottom drain sections of the evaporator housings also have multiple nooks and crevices that trap and harbor organic material. *Id.* at 36-39. As Mr. Okçuoğlu explains, the flaw in the design is that:

> Such small crevices with sharp edges and multiple labyrinth like obstructions create ideal traps for contaminates to accumulate and organic matter to thrive in the absence of proper water flow to wash away the contaminants and in the absence of strong air flow to dry condensation and discourage growth by proper ventilation.

*Id.* at 38. As a result, the design prevents air from blowing directly on the bottom edge of the evaporator, thus permitting the air in this area to remain stale and produce an environment for the growth of organic matter. *Id.* at 43.

Mr. Okçuoğlu also points to Toyota's failure to provide charcoal filters and HVAC logic in all vehicles to help mitigate the problem, *id.* at 40-43, along with inappropriate foam design as providing porosity and crevices suitable for harboring

---

[7] Denso supplies HVAC modules to Toyota. SUF 32 (Ex. J (Young Dep. 33:1-20)). ███████████████████████████ *Id.*

organic material.  *Id.* at 39, 43.  These design elements are common to the Subject Vehicles and all contribute to the odor complaints and problems.  *Id.* at 43; *see also* SUF 41-44.  As Mr. Okçuoğlu opines, while Toyota may have considered various countermeasures to address certain symptoms, or aspects, of these flawed design elements:

> None of these attempted fixes by Toyota addressed the root causes:  defective airflow and the design promoting and allowing accumulation of moisture and organic particles.

*Id.* at 40-41.  As Toyota knows:  "                                                           SUF 31 (Ex. R).

In the end, TMS sold vehicles to Plaintiffs with defective HVAC Systems which TMS knew would promote microbial growth and foul and noxious odors to be emitted into the passenger compartments.  As a result, Plaintiffs did not receive what they paid for.  They paid for what was represented to be a standard product but what in fact was a sub-standard vehicle that can only be improved, but not fixed, by expending additional sums for required and previously undisclosed, expensive maintenance (such as charcoal filters and cleaning) to counteract odor developed within the defective HVAC Systems.  Plaintiffs thus bring this suit to recover for themselves and the hundreds of thousands of similarly situated consumers who have likewise been harmed.

## IV.   **LEGAL STANDARD**

A motion for summary judgment will only be granted when there is no genuine issue as to any material fact, entitling the moving party to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party must show that, "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the burden to demonstrate that it is entitled to summary judgment, including identifying the elements of the claim or defense and

all the evidence it believes proves the absence of a material fact. *See Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must construe the evidence in the light most favorable to the non-party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may deny the motion. Fed. R. Civ. P. 56(d)(1).

## V.   ARGUMENT

### A.   There are Triable Issue of Material Fact As to Whether the HVAC Systems in the Subject Vehicles Are Defective.

On a motion for summary judgment, a court does not "weigh conflicting evidence" to predict what the "ultimate conclusion will be following a trial on the merits." *Hill v. Opus Corp,* 46 B.R. 361, at 401-02 (C.D. Cal. 2011). To be sure, the evidence of a triable issue of fact often comes from the very documents produced in the case by the party moving for summary judgment. *See*, *e.g.*, *Jones v. U.S.*, 60 F. 3d 584, 589-90 (9th Cir. 1995)(reversing summary judgment where the government's paperwork supported plaintiff's contention that he was kept in prison after his release date); *Heartland Ceramic Applications, Inc. v. Pro-Tek-USA,* 15-cv-242, 2016 WL 5762769, at *3 (N.D. Okla. Sept. 30, 2016) (finding "genuine questions of fact" as to whether defendant was a manufacturer due to defendant's own documents discussing the alleged defect); *Transonic System, Inc.*, 143 Fed. Appx. 320, 329 (Fed. Cir. July 25, 2005) (defendant's "own documents" undermine its arguments); *PennEnvironment v. PPG Industries, Inc.*, 127 F. Supp. 3d 336, 379-385 (Aug. 31, 2015) (finding defendant's records as to boundaries of property to be sufficient to support plaintiffs' conclusions instead of its own).

Here, it is undisputed that all Plaintiffs experienced HVAC odor. Def's UF 2 ("Within four months of owning the 2007 Lexus ES 350, Kennedy experienced HVAC odor"); UF 10 ("Alley first experienced HVAC odor in her 2009 Toyota

11

Corolla no later than 2010); UF 19 ("The Caspers experienced HVAC odor within six months of purchasing the 2011 Sienna"); UF 28 ("The Stockingers detect odor from the HVAC systems in their 2015 Toyota Sienna for several minutes"); UF 35 (recognizing "the intense nature of the HVAC odor experienced by Beil"); UF 42 ("The HVAC odor experienced by Mr. Dey when he uses the air conditioning system in his 2014 Toyota Prius lasts approximately five to seven minutes").

As TMS recognized internally, having a vehicle without HVAC odor "is a basic requirement of the system" which "a customer should expect as a standard condition." SUF 139 (Ex. RR (Carter 13)). Defendant's documents show that TMS knows its HVAC Systems need to be redesigned to fix this problem. *See* Section II. TMS has tried to conceal the problem, *see id.*, and may have engineered small, incremental improvements, but none of these engineering changes was sufficient. SUF 31 (Ex. S (Leighton 75); Ex. R (Leighton 74)). Instead, as Defendant's

SUF 31 (Ex. R (Leighton 74)).

Further, Plaintiffs produced Mr. Okçuoğlu's expert report, providing additional evidence of the design defect. Specifically, Mr. Okçuoğlu identifies eight specific design features that inhibit proper drainage and airflow and thus promote HVAC odor. Okçuoğlu Decl., Ex. 1 (Initial Report). These defective airflow and drainage patterns inhibit the HVAC Systems' ability to properly remove condensation and prevent bacterial, mold and microbes from breeding within dark, warm, humid HVAC Systems.[8] *Id.* It is disingenuous for TMS to argue that Mr. Okçuoğlu's opinion must be stricken as unreliable when TMS has

---

[8] TMS' reliance on Plaintiffs' testimony that "s/he has no evidence that the alleged defect caused mold growth in or odors to be emitted from the HVAC systems" is misleading. Mot. at 2. Plaintiffs were deposed ***before*** Mr. Okçuoğlu issued his Initial Report. Moreover, as detailed above, evidence linking the defect HVAC odor is primarily within TMS' possession, not the defrauded customers.

**PLS' MEM. OF P. & A. IN OPP'N TO DEF'S MSJ**

internally recognized these design problems contributed to Toyota's HVAC odor problem, *see* SUF 31 ((Ex. S (Leighton 75); Ex. R (Leighton 74)), and Defendant's own expert replies upon sources that support Mr. Okçuoğlu's opinion. *See* SUF 41 (Ex. X); SUF 42-43 (Ex. Y); SUF 44 (Ex. Z); Dkt No. 140-12, at Page 68.  In addition, this Court has accepted the opinions of Mr. Okçuoğlu in denying the similar motion for summary judgment of Toyota in *Salas*.  *See* Ex. NN.

### B.     The Court Should Deny TMS's Premature Request for Summary Judgment Regarding Damages Calculation

Defendant's attempt to obtain summary judgment based on the absence of a damages report is premature.  As noted above, the Court ordered a mid-discovery exchange of expert reports ***on the defect*** to manage discovery and thus strike a balance between discovery involving all vehicles in the putative class and the vehicles Plaintiffs' purchased.  *See* Section I.  Plaintiffs have provided an expert report on the defect, as was their obligation under the Court's Scheduling Orders.

The calculation of the precise amount of damages raises issues common to the class and which will be subject to expert analysis on a class wide basis during Phase II of this litigation.  There is nothing in the Court's Scheduling Order that requires Plaintiffs to prove the amount of their damages prior to the end of fact discovery.  To the contrary, the expert report that TMS contends is required now is typically produced after the class certification stage, which is the last deadline under the Scheduling Order.  As is standard practice, in connection with class certification, Plaintiffs will produce an expert report providing a ***methodology for calculating damages*** on a class wide basis; only after class certification motions are filed would Plaintiffs produce merits expert reports, which would include quantifying the amount of class wide damages.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) citing *Comcast Corp. v. Behrend*, 596 U.S. 27, 133 S.Ct. 1426, 1435, 185 L.Ed.2d 515 (2013) (at class certification,  it is only necessary to demonstrate that "damages are capable of measurement on a classwide basis.").  *See also* 1 McLaughlin on Class Actions § 5:23 (15th ed.)

(expert testimony is necessary at class certification to establish a reliable, common methodology for calculating class wide damages; it is not necessary to provide the amount of damages until after certification).

Unlike here, the cases that TMS relies upon all address circumstances where discovery was closed, expert disclosure deadlines had already passed and/or no 56(d) affidavit had been filed.[9]  It is axiomatic that summary judgment cannot be granted before a party has had an opportunity to discover and present facts relevant to its position.[10]

Here, Plaintiffs paid for vehicles to come in a standard condition (no odor), but in reality purchased sub-standard vehicles that had HVAC odor. TMS chose to conceal the defect, and the increased cost of ownership incident to that defect, so that its vehicles would remain competitively priced. Plaintiffs and the class received less than what they paid for. Plaintiffs will provide a damages calculation quantifying their losses at a later, appropriate stage of this litigation, pursuant to future Scheduling Orders.

### C.   Plaintiffs Kennedy, Alley and Casper's Claims are Not Barred by the Statute of Limitations

TMS' argument on the statutes of limitations fails. As this Court recognized in denying TMS' motion to dismiss on statute of limitations grounds, what is

---

[9] *See Weinberg v. Whatcom City*, 241 F.3d 746 (9th Cir. 2001)(discovery complete and no 56(d) affidavit); *Water, Inc. v. Everpure, Inc.*, 2012 WL 1294368 (discovery complete, expert not properly disclosed and no proof of damages); *McGlinchy v. Shell Chem.* Co., 845 F. 2d 808 (discovery closed, proffered experts excluded and no proffer of alternatives); *Lumens v. GoEco LED LLC*, 2018 WL 1942768 (C.D. Jan, 3 2018) (discovery closed).

[10] *See, e.g., Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1105-06 (9th Cir. 2000) ("The nonmoving party, of course, must have had sufficient time and opportunity for discovery before a moving party will be permitted to carry its initial burden of production by showing that the nonmoving party has insufficient evidence"); *Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, 12-05307, 2013 WL 11324312, at *5 (C.D. Cal. Apr. 16, 2013) (collecting cases).

relevant is not when Plaintiffs smelled the odors, but rather when, given the steps that TMS took to conceal the defect, Plaintiffs discovered "that the HVAC system in fact had a defect." Dkt. 50 at 57.  Although discovery is ongoing, as described above, the evidence supports Plaintiffs' allegations that TMS concealed the HVAC defect. *See* Section II. Indeed, TMS still publicly denies any defect, and while TMS internally recognized the problem and the need for engineering solutions to address it,

Ex. H (Hitt Dep. 195:10-196:25). While additional discovery is needed, TMS cannot defeat tolling on this record.

### 1.    Virginia Law

Under Virginia law, the four year statute of limitations for an implied warranty claim is subject to tolling based upon fraudulent concealment under principles of equitable estoppel. *Winchester Homes, Inc. v. Hoover Universal, Inc*., 39 Va. Cir. 107, 109-10 (Cir. Ct. 1996). As explained by the Virginia Supreme Court, equitable estoppel applies to bar a statute of limitation defense where a party that "claim[s] to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information." *Boykins Narrow Fabrics Corp. v. Weldon Roofing and Sheet Metal, Inc.*, 221 Va. 81, 87 (*quoting In Lindsay v. James*, 188 Va. 646, 659 (1949)). Here, there is no question that Plaintiffs "had no convenient and available means of acquiring . . . information" about the source of the odor – which TMS continues to deny to this day.

Similarly, Virginia applies a discovery rule to the accrual of fraud based claims. Va. Code § 8.01-249(1).  "Often the very fraud which is alleged serves as its own cover, lulling the plaintiff into a mistaken sense of propriety." *Pa. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1202 (E.D. Va. 1987) (citation omitted). Therefore, it is "only when the fraudulent misrepresentation is discovered or by

exercise of due diligence should have been reasonably discovered that the statute begins to run." *Id.* "Issues of when a fraud should reasonably have been discovered, as with most issues of reasonableness, are typically best left to the jury." *Id. (*citation omitted).

### 2. Oklahoma Law

Under Oklahoma law, a party may assert equitable estoppel where there is "any false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry which induces one to refrain from timely bringing an action." *Melson v. Wachovia Bank, NA*, 245 P.3d 77, 80 (Ok. Civ. App. Oct. 22, 2010).  Moreover, under Oklahoma law, a cause of action grounded in fraud "shall not be deemed to have accrued until the discovery of the fraud." *Horton v. Hamilton*, 345 P.3d 357, 363 (Ok. 2015) (quoting 12 O.S.2011, 95(A)(3)).  "'The question of when [a plaintiff] possessed sufficient information to trigger the running of the statute of limitations is one of fact,'" to be determined "'on the basis of the facts and circumstances of the particular case.'" *Lavender v. Craig Gen. Hosp*., 308 P.3d 1071, 1077 (Ok. Civ. App. 2013) (*quoting Hawk Wing v. Lorton*, 261 P.3d 1122, 1127 (Okla. 2011)).

A defendant is not entitled to summary judgment simply based upon the fact that a plaintiff has concerns about the defendant's conduct; instead, the defendant must produce evidence "to establish what [the plaintiff] should have discovered" within the statute of limitations. *Horton*, 345 P. 3d 363 (reversing granting of summary judgment on statute of limitations ground on a fraud claim finding that despite showing that the plaintiff had concerns about the defendant's conduct, the defendant "failed to submit sufficient evidentiary material to establish an undisputed accrual date."). Here, TMS makes no such showing, but simply contends that Plaintiffs should have known their HVAC Systems were defective when they smelled the odor.  This is not sufficient to support summary judgment.

### 3. Florida Law

16

Under Florida law, to succeed on a motion for summary judgment based upon the Statute of Limitations, the movant must "conclusively show that there exists no disputed issue of fact with respect to the date of commencement of the limitations period," an inquiry which "is, ordinarily, a question of fact which should be left to the jury." *Bd. of Trustees of Santa Fe Cmty. Coll. v. Caudill Rowlett Scott, Inc.*, 461 So. 2d 239, 242–43 (Fla. Dist. Ct. App. 1984). Additionally, under Florida law "[t]he doctrine of fraudulent concealment will operate to toll the statute of limitations 'when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury.'" *Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp. 2d 1254, 1272 (M.D. Fla. 2013) (quoting *Nardone v. Reynolds*, 333 So. 2d 25, 39 (Fla. 1976), modified on other grounds).

TMS has not conclusively established that Plaintiffs should have known that the HVAC Systems in their vehicles were defective when they first sensed the odor.  Moreover, there is sufficient evidence already in the record, and more to be gathered as discovery progresses, to demonstrate that TMS actively took steps, as

Ex. S.

### D. There are Triable Issues As to Whether TMS Breached Its Common Law Implied Warranty of Merchantability

Under Florida, Oklahoma, and Virginia law, the implied warranty of merchantability requires a product to be "reasonably fit for the ordinary or general purpose intended." *Maronda Homes, Inc. of Florida v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1268 (Fla. 2013). *See also Perry v. Lawson Ford Tractor Co.*, 613 P.2d 458, 463 (Ok. 1980) (implied warranty requires "that goods operate for their ordinary purpose"); *Morgen Indus., Inc. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996) (implied warranty requires goods to be

17

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

fit for the use to which they would ordinarily be put). This Court has already recognized that experiencing "noxious and foul odors" can render a vehicle unfit for its ordinary purpose. Dkt. 50 at 29-31.

Plaintiffs did not purchase vehicles that came in a standard condition – i.e., without odor. It is undisputed that Plaintiffs experienced HVAC odor. *See* Def's UF 2; UF 10; UF 19; UF 28; UF 35; UF 42. Plaintiff Beil explained that the odor, "smells like really sour milk," "vomit or dirty diapers," and "dirty gym bag, dirty gym socks that sort of lingers in the car." SUF 118. Plaintiff Alley describes the HVAC odor as a "stinky, dusty smell, musty." SUF 53. Plaintiff Dey described the odor as "something moist, dampy . . . like a fungus, kind of fungus." SUF 76. The Stockingers recounted a "musty, wet smell," similar to "mildew or mold" and a "musty water smell." SUF 87; SUF 94. Plaintiff Casper complained of a "noxious, foul odor, moldy, musty, mildewy," SUF 97. Plaintiff Kennedy and Mr. Barabe smelled "musty, unpleasant funk, a funky smell, like wet socks," and "sweet, moldy, dirty sock-type" respectively. SUF 108; SUF 114. Indeed, TMS internally acknowledges that having a HVAC system that does not smell "is a basic requirement of the system" and that it is "challenging to explain why to get what a customer should expect as a standard condition for the air conditioner (no odor) we charge more." SUF 139 (Ex. RR (Carter 13)).

TMS incorrectly argues that "[a] vehicle is merchantable so long as it is not ***unreasonably dangerous*** for the use to which it would ordinary be put." Mot. at 19 (emphasis added). None of the cases TMS cites require a safety hazard to establish a breach of implied warranty[11]. Indeed, as this Court made clear in its

---

[11] For example, TMS cites *All Underwriters Subscribing to Policy of Ins. No. B0621MMILSYB15055 v. Rika Boats Ltd.*, 16-20498, 2017 WL 1439944 (S.D. Fla. Jan. 20, 2017) to support its implied warranty argument under Florida law; however, the court in *Rika Boats* nowhere mentions that a plaintiff must establish a safety hazard. Rather, as the Florida Supreme Court explained in *Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1268-1269 (Fla. 2013), the test for the implied warranty of fitness or

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

Opinion, the touchstone of merchantability is fitness for ordinary purpose and whether the product would pass without objection in trade.  Dkt. 50 at 29-31 (citing cases). Quite simply, nobody expects to have putrid air blown into their passenger cabin from their vehicles' HVAC Systems.

TMS also misstates the standard for breach of implied warranty under Oklahoma and Virginia law. Again, neither *Hyundai Motor Co., Ltd. v. Duncan,* 766 S.E. 2d 893 (Va. 2015) nor *Miller v. Gen. Motors Co.,* 2013 WL 11247612 (W.D. Okla. May 16, 2013) require a safety hazard to demonstrate unmerchantability. While the courts in both *Miller* and *Duncan* examined implied warranty claims in connection with airbags, the courts' decisions turned on whether the plaintiffs could link their personal injuries to the defect – not whether implied warranty claims can be asserted in the absence of a safety hazard. More on point are *In re Gen. Motors Corp.*, 2005 WL 1924331, at *2 (W.D. Okla. Aug. 8, 2005) and *Barber v. Sam's Club E., Inc.*, 2017 WL 4479221, at *3 (W.D. Va. Oct. 6, 2017), where the courts reiterated the general standard for breach of implied warranty—namely whether the vehicle would "pass without objection in the trade" and whether the car buying public would object to purchasing vehicles with the defect at issue. The answer to these questions, as the court recognized in *Barber,* is "normally a jury question." *Barber,* 2017 WL 4479221, at *3 (citing *Bayliner Marine Corp. v. Crow*, 257 Va. 121, 128–29 (1999)).

Further, Kennedy, Alley, and Casper's implied warranty claims do not fail for lack of pre-suit notice. In Virginia and Florida, manufacturers are not the "sellers" to whom notice must be given to assert breach of warranty claims.[12]  In

---

merchantability is simply whether the product "meet[s] ordinary, normal standards reasonably to be expected."

[12] *See, e.g., Board of Directors of Bay Point Condominium Ass'n, Inc. v. RML Corp.*, 57 Va. Cir. 295, 317 (2002) (buyer is not required to give notice to manufacturer who is not the seller); *Kerr v. Hunter Division*, 32 Va. Cir. 497, 508 (1981) (notice required to sellers, not remote manufacturers); *Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, 2010 WL 1223126, at * 5 (M.D. Fla. Mar. 25,

Oklahoma, the filing of a complaint by retail customers is sufficient notice.[13]

## E.   There are Triable Issues of Material Fact on Plaintiff Dey and Plaintiff Beil's Song-Beverly Warranty Claims

California's Song-Beverly Act was enacted "to regulate warranties and strengthen consumer remedies for breaches of warranty." *Keegan v. Am. Honda Motor Co., Inc*., 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012). "The [Song-Beverly Act] is a remedial measure intended for the protection of consumers and should be given a construction consistent with that purpose*." Brand v. Hyundai Motor Am*., 226 Cal. App. 4th 1538, 1545 (Cal. Ct. App. 2014). On this record, TMS is not entitled to summary judgment on plaintiff Dey and Beil's Song-Beverly claims.

### 1.   The Fact that a Consumer Continues to Use a Product Does Not, As a Matter of Law, Mean the Product is Merchantable

As with other states, under California law, a defendant breaches the implied warranty of merchantability if the product is not "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a). California courts are clear that a car is not "merchantable" simply because it "provides transportation." *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability.").

By string citing cases such as *Cholakyan v. Mercedes-Benz USA, LLC,* 796 F. Supp. 2d 1220, 1243-44 (C.D. Cal. June 30, 2011) and *Ehrlich v. BMW of North America, LLC,* 801 F. Supp. 908, 918, 923-24 (C.D. Cal. Aug. 11, 2010) that "emphasi[zed] potential safety risks," TMS implies that a vehicle is unfit for its ordinary purpose of transportation only if the vehicle is unsafe or poses a

---

2010) (finding "[t]he plan language of the statute . . . does not require notice to a manufacturer"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 977-79 (N.D. Cal) (following *Bay Point Condo, Kerr*, and *Lazzara*).

[13] *Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1111 (N.D. Okla. 2016).

health risk. Motion at 22. Not so. Plaintiffs *can* satisfy breach of implied warranty by showing a risk of safety, but Plaintiffs are not required to prove that their vehicles are unsafe or pose a health risk to establish a breach of implied warranty.

For example, in *Isip*, the court held that a vehicle that "smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Isip*, 155 Cal. App. 4th at 27. *See also Brand*, 226 Cal. App. 4th at 1546 (citing *Isip*); *Bryde v. Gen. Motors, LLC*, 2016 WL 6804584, at *15 (N.D. Cal. Nov. 17, 2016) (observing that "[c]ourts have found a range of defects that make a vehicle unfit for its ordinary purpose", including a spontaneously opening sunroof, a noisy timing chain, an engine that uses too much oil"). As this Court has recognized in other cases against TMS, "whether the vehicle was fit for driving," includes whether or not it "provides for a minimum level of quality." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (quoting *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995)).

That plaintiffs Dey and Beil continue to use their vehicles does not preclude or undermine their breach of implied warranty claim. For a violation of implied warranty, there is no requirement that "the alleged defect must preclude any use of the product at all." *Stearns v. Select Comfort Retail Corporation*, 2009 WL 1635931 at *8 (N.D. Cal. 2009) ("As in *Isip*, the fact that a person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of implied warranty of merchantability."). The fact that a consumer continues to use the product does not, as a matter of law, render the product merchantable. *Id.*

### 2. Whether Plaintiffs' Vehicles are "Merchantable" is a Disputed Question of Fact to be Decided by the Jury.

Whether or not a vehicle is "merchantable" is a question of fact. *See Galitski v. Samsung Telecommunications America, LLC,* No. 3:12-CV-4782, 2015 WL 5319802 *10 (N.D. Texas, Sept. 11, 2015) ("Whether a product is unfit

21

for its ordinary purpose is a question of fact for the jury") (citing *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014) as modified on denial of reh'g (July 16, 2014)).

Plaintiff Dey and Beil's own testimony confirms the severity of the "noxious and foul odors" plaintiffs Dey and Beil allege in their complaint and establishes triable issues of fact with respect to whether their vehicles meet a "minimum level of quality," regardless of whether they are still drivable. As plaintiffs Beil testified, the HVAC System in his vehicle emits an odor that smells like "really sour milk… vomit or dirty diapers," and like a "dirty gym bag, dirty gym socks." SUF 118. Beil further testified that the smell is so powerful that "I think a person who is noseblind would smell this odor. No matter what your sensitivity is, there's certain things that just go beyond any calibration of someone's sense of smell. This is one of them." SUF 119; Ex. JJ. (Beil Dep. at 89:10-14). Plaintiff Dey further explained that the smell is "obnoxious," like "mold" or a "fungus smell," similar to "stagnant water" in an "old house" with "no ventilation for a long time" SUF 68. Dey further testified that the odor sometimes manifests as a "burning insect smell" and a "very bad" smell. *Id.* at 119:6. For both Dey and Beil, the smell was constant and lingered for the whole ride. SUF 77; SUF 120.

Despite these odors, plaintiffs Dey and Beil continue to use the HVAC system. As Dey explained: "I have no choice. I have to continue to use it" (Ex. CC at 124:5-18); "[w]e need something to drive." Ex. JJ at 24:13. Beil refuses to drive the vehicle and his wife only uses the vehicle for short errands, and refrains from using the vehicle for long trips. SUF 129. Plaintiff Beil has also attempted on multiple occasions to get Toyota to address the issue to no avail and also has been unable to sell has car because of the odor. SUF 121-128. Plaintiff Beil testified that he would not have purchased his vehicle had he known of the

PLS' MEM. OF P. & A. IN OPP'N TO DEF'S MSJ

HVAC odor. SUF 130. Plaintiff Dey would only have purchased the car at a 90% discount. SUF 78.

Plaintiffs are not alone in their complaints about the HVAC odor. According to Toyota's own documents, customers have complained that the HVAC odor does not meet their expectations of a vehicle interior free of unpleasant and potentially toxic fumes. For example, ███████████████████████████████████████████████ SUF 36 (Ex. U). Another told Toyota ████████████████████████████████████████████████████████████████████████████████████████████████████████ SUF 37 (Ex. V). Yet another ████████████████████████████████████████████████████████████████████████████████ SUF 38 (Ex. W).

To the extent that merchantability requires goods to be safe as well as reliable, there are also triable issues of fact with respect to whether the HVAC odor poses a safety risk.   As this Court has noted, Plaintiffs must only demonstrate there is a possible safety hazard, not that Plaintiffs or anyone else was actually injured. Dkt. 50 at 50 ("plaintiffs sufficiently allege an unreasonable safety hazard"). Health concerns associated with mold and other organic, microbial growth are a matter of public record.  *See* Okçuoğlu Decl., Ex. 1 (Initial Report at 15-16). Both Dey and Beil believe that the HVAC defect presents a risk to their health. *See, e.g.,* SUF 79; SUF 131. Plaintiff Beil is concerned both with the risk of mold exposure as well as the risks presented by Toyota's recommendations for mitigating the HVAC defect. SUF 131.   Authoritative sources confirm that bacteria and other microbes in HVAC Systems cause putrid odors.  SUF 41 (Ex. X); SUF 42-43 (Ex. Y); SUF 44 (Ex. Z); Dkt No. 140-12, at Page 68).  These issues will be further explored as discovery continues and full

23

merits reports are produced.

The foregoing facts raise triable issues that are more than sufficient to defeat summary adjudication. A trier of fact should determine whether the alleged defect has impaired the named Plaintiffs' use of their vehicles to a degree sufficient to render their vehicles unmerchantable.

### F. There are Triable Issues on Plaintiffs' MMWA Claims
#### 1. TMS' Motion Fails Regarding the State Law Warranty Claims and Thus Fails as to Plaintiffs' MMWA Claims

Because summary judgment must be denied as to the implied warranty claims, summary judgment also must be denied as to Plaintiffs' MMWA claims. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) (finding claims under the MMWA stand or fall with express and implied warranty claims).

#### 2. Plaintiffs' MMWA Claims Do Not Fail for Lack of Pre-Suit Notice

Pursuant to MMWA §2310(e), plaintiffs bringing class actions are not required to provide a pre-suit opportunity to cure but instead must do so "once the Court determines that the named plaintiffs are adequate representatives under Rule 23(a)(4)." *In re ALMA Litig.*, 320 F.Supp. 3d 578, 596 (S.D.N.Y. 2018). *See also In Re Porsche Cars N. Am. Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 880, 824- 826 (S.D. Ohio 2012) (observing that the "plain language of the statute imposes different requirements on individual plaintiffs and class action plaintiffs regarding the time at which they must satisfy the opportunity to cure requirement," and noting that any court dismissing class action for failure to provide pre-suit notice "failed to account for this language in the statute."). Accordingly, there is no basis for granting summary judgment based upon MMWA §2310(e).  Notice can be provided any time before class certification.

### G. There are Triable Issues of Material Fact on Plaintiffs' CLRA Claims[14]

---

[14] In a footnote, Toyota states that "Beil presently does not assert a claim under the CLRA because he never amended his complaint to seek damages under the

PLS' MEM. OF P. & A. IN OPP'N TO DEF'S MSJ

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

### 1.     The CLRA Applies to Purchases Outside of California

California courts routinely recognize that out-of-state plaintiffs may seek recovery under California consumer protection laws where the wrongful conduct at issue occurred in California.[15] Here, discovery is still ongoing, but there is strong evidence that the locus of wrongful conduct — i.e., Toyota's marketing and sales of Class Vehicles containing defective HVAC Systems while concealing the defect

---

CLRA" and that "even if asserted, his CLRA claim is meritless for the same reasons set forth herein." Mot. at p. 23, fn. 5. Plaintiff Beil does assert a CLRA claim, and respectfully requests that the Court confirm so in its MSJ Order.

When Plaintiff Beil's action was consolidated with the *Stockinger v. Toyota* action, in lieu of filing an amended complaint, Plaintiff Beil and Toyota stipulated to making Beil's claims subject to the Court's ruling on Toyota's Motion to Dismiss First Amended Complaint, where this Court *sustained* the Plaintiffs' CLRA claims and dismissed their California Unfair Competition Law claim and claims for equitable relief. *See* Dkt. Nos. 50, 105. The Stipulation and Order enumerated the claims that Plaintiff Beil was stipulating to dismiss—his UCL claim and claims for equitable relief—and did not make any reference to Plaintiff Beil's CLRA claim, as Plaintiffs' CLRA claims were sustained in the Court's Motion to Dismiss Order. *See* Dkt. 106, July 16, 2018 ("1. Plaintiff Beil's claims and relief are subject to this Court's ruling on Toyota's Motion to Dismiss the First Amended Complaint in the *Stockinger* Action (Dkt. 50); 2. Plaintiff Beil's California Unfair Competition Law claim is hereby dismissed; 3. Plaintiff Beil's claims for equitable relief are hereby dismissed." Given that the purpose of the Parties' Stipulation was to streamline the consolidation process by obviating the need to file a further amended consolidated complaint in the *Stockinger* action and to brief a second, identical Motion to Dismiss, the fact that Mr. Beil did not amend his individual complaint does not, and should not, in fairness, eliminate his CLRA claim.

[15] *See, e.g., In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (California "state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California") (citation omitted)); *In re Mattel*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (non-California plaintiffs may assert California state law claims where conduct occurred in California); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 905 (N.D. Cal. 2008) (same); *In re Clorox*, 894 F. Supp. 2d 1224, 1238 (N.D. Cal. 2012) (same); *Gianino v. Alacer Corp.*, 2010 WL 11468710, at *2 (C.D. Cal. Aug. 4, 2010) (same).

25

from consumers — emanated from Toyota's headquarters in California.  Indeed, it was a TMS executive who, in furtherance of Defendant's efforts to defraud and conceal the HVAC odor defect, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. S.

Toyota's reliance on *Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012) is misplaced.  First, *Mazza* was not decided on a motion for summary judgment; rather, *Mazza* was considered in connection with class certification and examined whether differences between state consumer protection laws precluded certification.  *See Mazza*, 666 F.3d at 594.  Additionally, the *Mazza* court did ***not*** hold that California's consumer protection statutes cannot apply to out-of-state purchases; instead, the court held under the facts of that case and a choice of law analysis, that each class member's consumer protection claim should be governed by the state where the transaction took place.  In the face of inapposite law, Toyota attempts to conflate the issue, setting forth an unnecessary and premature choice of law analysis that would indicate California law does not apply.  Mot. at 24-26. This is irrelevant, as California courts have declared that California consumer protection laws apply to wrongful conduct occurring in California, even where the product at issue was purchased out of state.  As such, this is an issue for class certification, not summary judgment.

### 2.    CLRA Claims are Tolled Pursuant to the Discovery Rule

The CLRA statute of limitations is subject to the discovery rule. *Chamberlan v. Ford Motor Co*., 369 F. Supp. 2d 1138, 1148 (N.D. Cal. 2005) (noting that the statute of limitations for CLRA claims runs "from the time a reasonable person would have discovered the basis for a claim.") (internal quotations omitted).  "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery

26

rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cnty. of Los Angeles*, 159 Cal.App.4th 42, 61, 71 Cal.Rptr.3d 415 (2008).  Here, there remains a triable issue of material fact as to when a reasonable person would have discovered the basis of their CLRA claims.

TMS contends that plaintiffs Kennedy, Alley and Casper's CLRA claims began to run when they first suspected something was wrong due to the HVAC odor.  Mot. at 26.  But, as the court in *Chamberlan* observed, "[t]he mere fact that a consumer's manifold failed does not necessarily mean that that person should have discovered Defendant's alleged non-disclosure at that time."  *Chamberlan*, 369 F. Supp. 2d at 1148.  While Plaintiffs may have experienced HVAC odor, Toyota's repeated denial that it was defective impeded any possibility that Plaintiffs would discover they had claims under the CLRA.

### 3.     Triable Issues of Fact Regarding Materiality and Safety Defeat Summary Judgment.

With respect to a safety concern, this Court has found that a "[f]ailure to disclose defects that manifest before the end of a seller's warranty is a violation of the CLRA 'if the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff." Dkt. 50 at 48 ("On the other hand, to state a claim for failure to disclose a defect that manifests after a seller's warranty ends, the defect must relate to the product's safety.")  TMS argues that *Williams*, 851 F.3d 1015(9th Cir. 2017) ("*Williams*") precludes this and other courts from treating fraudulent omissions cases differently depending on whether the claim arose post-warranty or in-warranty, arguing that "*Williams* made no such distinction." Mot. at 27. This is wrong on both counts.

*Williams* quoted *Apodaca v. Whirlpool Corp.,* 2013 WL 6477821, \*9 (C.D. Cal. 2013), which explained that "a key fulcrum in the duty to disclose analysis" is "the expiration of the warranty." *See Williams*, 851 F.3d at 1025-26.  In turn, the *Apodaca* court agreed with *Decker v. Mazda Motor of America, Inc.*, 2011 WL

27

510705, *4 (C.D. Cal. 2011) that the duty to disclose analysis is a two-step process: "First, a manufacturer has a duty to disclose any defects that fall within the warranty period, whether relating to safety or to costly repairs, that would have caused the consumer to not purchase the car if they had been disclosed. Second, a manufacturer also has a duty to disclose safety issues that fall outside of the warranty period." *Apodaca*, 2013 WL 3477821 at *7.

Other courts have similarly held that a plaintiff alleging a product defect which manifests during the warranty period need not allege that the defect posed a safety concern. *See Tait v. BSI Home Appliance Corp.*, 289 F.R.D. 466, 488-89 (C.D. Cal. 2011) (rejecting notion that safety related defect must be alleged for defects arising during the warranty period); *Rasmussen v. Apple*, 27 F.Supp.3d 1027, 1038-39 (N.D. Cal. 2014) ("A number of courts have noted that the 'safety concern' requirement for a fraudulent omission claim under the CLRA does not apply where the defect in question arises during the products' warranty period."); *Elias v. Hewlett-Packard Co.*, 950 F.Supp.2d 1123, 1136 (N.D. Cal. 2013) ("Plaintiff may allege fraudulent omissions beyond safety-related concerns if those omissions led to malfunctions during the warranty period.").

Judge Olguin's opinion is *Salas* is instructive. Ex. NN. In *Salas,* another HVAC odor lawsuit against TMS, the Court denied the Defendant's Motion for Summary Judgment, finding that a safety concern was *not* required to establish a duty to disclose, since the HVAC defect manifests during the warranty period. *Id.* Toyota argued that *Williams* compelled a different result. The Court in *Salas* disagreed, and ruled in the plaintiffs' favor.

Here, as in *Salas*, it is undisputed that Plaintiffs' vehicles were within their express warranty periods at the time the HVAC Defect manifested. *See* UF 2; UF 10; UF 19; UF 28; UF 35; UF 42.  Accordingly, TMS had a duty to disclose material facts regarding the HVAC defect, notwithstanding its safety implications. "In order for non-disclosed information to be material, a Plaintiff must show that

**PLS' MEM. OF P. & A. IN OPP'N TO DEF'S MSJ**

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk v. GMC*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007). The evidence raises, at a minimum, a disputed issue of fact as to whether, had they known of the HVAC defect, Plaintiffs would have acted differently.

Lastly, even if a safety hazard was required for in-warranty claims (which it is not), Plaintiffs' expert has submitted competent evidence of a design defect which creates an "ideal breeding habitat for organic matter" including "microbes, bacteria, mold, and fungus. Okçuoğlu Decl., Ex. 1 (Initial Report. at p. 14); *See also* SUF 41 (Ex. X); SUF 42-43 (Ex. Y); SUF- 44 (Ex. Z); Dkt No. 140-12, at Page 68). The defect is unreasonably hazardous in that it causes a risk of microbial or mold growth, with the resulting unhealthy by-products blowing directly into the driver's face in the enclosed vehicle cabin. *See Id*., generally.

### 4. Triable Issues Exist Regarding Actual Reliance

To prove reliance on an omission, a plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision. *Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1225 (9th Cir. 2015). "A Plaintiff may [prove reliance] simply by proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Id.* "Furthermore, actual reliance may be presumed [where] the alleged [] defect is material." *In re Toyota Motor Corp.,* 790 F. Supp. 2d 1152, 1169 (C.D. Cal. 2011).

Evidence that a Plaintiff "interacted with and received information from sales representatives at authorized [Toyota] dealerships" before purchase is sufficient to sustain a factual finding that Plaintiffs would have been aware of disclosures. *Id.* Plaintiffs have presented such evidence. *See* SUF 61 (Alley received general information and brochures from sales representative); SUF 70-71 (Dey reviewed Toyota's website, which including information on the HVAC

system and talked to representatives at Toyota dealership); SUF 84-85 (Stockingers test drove the vehicle and spoke with sales representative at Toyota dealership regarding their vehicle's features); SUF 102 (Casper spoke to sales representatives at a number of Toyota dealerships); SUF 115 (Barabe test drove the vehicle multiple times); SUF 133-134 (Beil reviewed disclosures on Lexus website, read the brochure, and test drove the vehicle). Moreover, irrespective of interaction with a dealership salesperson, a pre-purchase review of a "brochure, website, or promotional material that might have contained a disclosure of the [HVAC] defect" also supports a finding of actual reliance under the CLRA. *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919-20. Here, all of the Plaintiffs purchased their vehicles from authorized Toyota dealership, reviewed promotional materials, and spoke with dealership sales representatives in the process. *See* SUF 61; SUF 70-71; SUF 84-85; SUF 102; SUF 115; SUF 133-134. Accordingly, Plaintiffs' testimony establishes ample triable facts regarding reliance.

In an apparent effort to create a smokescreen and escape *Daniel*'s clear finding, TMS asked the Plaintiffs at deposition where *they* would have liked to learn more about the HVAC defect, and now argues that Plaintiffs' speculative answers, as consumers, somehow vitiate reliance. Mot. at 28. For example, TMS argues that, because Plaintiff Beil testified that he thinks Toyota should have posted its HVAC Odor TSB on Toyota's website, and because, in Toyota's view, the TSB is unrelated to the HVAC defect, Plaintiff Beil lacks reliance. Mot. at 29. But Beil also did extensive pre-purchase research, including reviewing Toyota's website information regarding his vehicle, speaking with Toyota dealership salespeople, and test driving his vehicle. SUF 133-134.

Similarly, TMS argues that, because the Stockinger Plaintiffs "state that the disclosure should have been made during the sales process," they lack reliance

30

because "these interactions were solely with independent dealerships—not Toyota." Mot. at 28. But like all Plaintiffs, as well as the Plaintiffs in *Daniel*, the Stockinger Plaintiffs purchased their vehicle from a Toyota-authorized dealership. Likewise, TMS argues that plaintiff Dey lacks reliance because he "admits that he did not rely on any statements contained in the Toyota.com" website or anything related to the HVAC system. *Id.* This misstates Plaintiff Dey's testimony – Dey did *not* testify that he did not rely on any statements on the Toyota.com website; in fact, Plaintiff Dey researched his Subject Vehicle on Toyota's corporate website prior to purchase, where he reviewed information about the air conditioning system as well as safety features. SUF 70.

Finally, TMS argues that because the Stockingers and Alley "were aware of the potential for HVAC Odor in automobiles" before purchase, they lack reliance. *Id.* Not so. Toyota was obligated to disclose all material facts, including the fact that the Subject Vehicles' HVAC system was defectively designed such that it "allows condensing water to accumulate and allows naturally present organic contaminants to be trapped, kept moist and cultivate organic matter such as microbes, bacteria, mold and fungus . . . creating an ideal breeding habitat for organic matter . . . [and] . . . strong unpleasant fumes and odor." Okçuoğlu Decl., Ex. 1 (Initial Report at 14). Plaintiffs' vague awareness of the potential for undefined "HVAC odor" does not negate TMS' omissions of material facts regarding a systemic defect, particularly in light of the triable factual issues described above.

### H. There are Triable Issues of Material Fact on Plaintiffs' State Law Consumer Protection Claims
#### 1. Washington

To prevail on a consumer protection act claim under Washington law, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Wash., Inc. v.*

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

*Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 83 (2007).  The Stockingers have presented sufficient evidence to bring this claim to a jury.  Elizabeth Stockinger testified that, had she known of the Defective HVAC System, she possibly would not have purchased her vehicle or paid less for it, and further, that she wanted to purchase a vehicle that performed at a "standard level." SUF 83; SUF 89.

As TMS acknowledged internally, no reasonable consumer expects to purchase a vehicle with an HVAC System that emits foul and noxious odors.  To the contrary, TMS acknowledges that "a customer should expect as a standard condition for the air conditioner (to not emit odor)." Ex. RR (Carter 13).  Accordingly, based on the facts here, a jury must decide whether the Stockingers were harmed by Defendant's practices.  *See Zwicker v. Gen. Motors Corp.*, No. 07-cv-291, 2007 WL 5309204, at *1 (W.D. Wash. July 26, 2007) (plaintiffs adequately alleged WCPA claim where knowledge of the concealed defect would have impacted their decisions to purchase the vehicles); *In re Porsche Cars N. Am., Inc.*, 880 F.Supp.2d 801, 880 (S.D. Ohio 2012) (upholding WCPA claim where plaintiff alleged that "had the consumer known of the undisclosed information, it would have affected his or her purchasing the decision").

### 2.  Florida

With respect to Casper's FDUPTA claims, TMS again argues for dismissal based on the lack of an expert opinion calculating damages. Mot. at 30-31.  Again, TMS' motion is premature.  *See* Section III; 56(d) Declaration.  Judgment as a matter of law is inappropriate on a FDUTPA claim and the defendant's underlying unfair practice when discovery is still ongoing.  *See AT&T Mobility, LLC v. Digital Antenna, Inc.*, 2010 WL 11506068, at *20, 24 (S.D. Fla. Feb. 9, 2010) (declining to dismiss FDUTPA claims predicated on tortious interference and trademark infringement). Moreover, FDUPTA also provides for injunctive relief, for which a plaintiff need not prove actual damages.  *See Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172–73 (Fla. 1st DCA 2015)) (noting that FDUTPA's injunctive relief

provision does not require a showing of damages and provides broader relief).

### 3.    Virginia

TMS' also argues that Kennedy cannot prove a loss under the VPCA without expert testimony; however, TMS' argument is contradicted by the very case it cites.  As the court explains in *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 546 (E.D. Va. 2001), "[e]xpert testimony is not necessary to prove statutory amounts" as "a factfinder can rely on the documents submitted by the parties and other testimonial evidence to calculate damages for the Virginia Consumer Protection Act, breach of contract, fraud, and conversion claims."

Moreover, TMS has otherwise mischaracterized the holding of *Nigh*, in which plaintiff *conceded* he had no evidence of an inaccurate odometer. *Id*. at 553. In contrast to *Nigh*, Kennedy has testified that that she has been harmed by "buying a vehicle with a problem," and "having a vehicle with a known problem and not being told and breathing a really bad odor for a very extended period of time." Ex. HH (Kennedy Dep. 111:3-22).   As her husband, Timothy Barabe, further explained, they "would not have bought the car had we known about the problem, and therefore the car is worth less because of the problem."  SUF 117.

### I.    Fraudulent Non-Disclosure

### 1.    Plaintiffs Raise a Triable Issue of Material Fact Concerning Exposure to and Reliance on a Material Omission

As set forth above in Sections IV.A, V.G.3 and V.G.4, the evidence to date demonstrates that there are triable issues of fact regarding Plaintiffs' exposure to and reliance on a material omission.  First, as detailed in Section A, it is undisputed that all Plaintiffs experienced HVAC odor. TMS acknowledges that HVAC odor is a problem and has attempted to implement countermeasures to address the issue. These countermeasures only provided incremental improvements, but failed to address the root cause of the odor—the HVAC Systems' design.    Indeed, Plaintiff's expert concluded that HVAC Systems installed in the Subject Vehicles

REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL

contain several defective design features which inhibit proper draining and airflow and thus promote the accumulation of water and moisture and an environment leading to HVAC odor.  *See* Okçuoğlu Decl. Ex. 1 (Initial Report, at 42-43).  As such, there are triable issues concerning the fact of HVAC odor in the Plaintiffs' Subject Vehicle, and thus, whether failure to disclose the HVAC odor was a material omission.

The evidence further shows that when the Plaintiffs purchased their vehicles from an authorized TMS dealership, they spoke to a sales representative, and at no point in time, was it disclosed that their vehicles would have an HVAC odor. SUF 58; SUF 73.   Had they been aware of their vehicles possessed HVAC odor, the Plaintiffs would have taken different steps in purchasing their vehicles.  *See e.g.,* SUF 66, 78, 89, 117, 130.   This evidence raises triable issues as to Plaintiffs' reliance on TMS' intentional concealment of the HVAC odor.

### 2. Plaintiffs Raise a Triable Issue of Material Fact Concerning Defendant's Intent to Defraud

Defendant's assertion that there is no evidence that TMS was aware of the HVAC defect and intentionally concealed it is belied by their own documents, testimony and reports.[16]  As set forth above in Section V.A, the evidence shows that TMS was aware of the HVAC Odor problem since at least 1997 and intentionally concealed it, by claiming, *inter alia*, that HVAC odor is naturally occurring.  In fact, TMS took certain actions to avoid remedying the issue

SUF 25 (Ex. J (Young Dep. 76:9-82:4; 121:22-122:6)). The fact that TMS discloses different information to its dealers, via TSBs, about the HVAC Odor problems than it discloses to customers by way of owners' manuals, further shows a concerted effort to keep the truth from the public.  Further, Plaintiff's

---

[16] Plaintiffs have not had the opportunity for full discovery of additional facts concerning TMS's knowledge and intent in concealing the HVAC odor.  *See* 56(d) Affidavit.

expert's findings that, to solve the HVAC odor problem, the HVAC Systems need to be redesigned, is consistent with Toyota's internal acknowledgements. This evidence, alone, raises triable facts regarding TMS' intent to defraud, and will be bolstered by continued discovery.

### J. Negligent Misrepresentation
#### 1. An Omission Can Serve as a Basis of a Negligent Misrepresentation Claim

TMS incorrectly states that negligent misrepresentation claims cannot be based on omissions. Mot. at 34. To the contrary, a plaintiff may proceed on a negligent omission claim where, as here, the plaintiff has established fraudulent omission based on a duty to disclose. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *63 (S.D.N.Y. Aug. 4, 2015), amended sub nom. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 WL 13122396 (S.D.N.Y. Oct. 19, 2015) (applying California law). As discussed above, TMS had a duty to disclose material facts regarding the HVAC Defect.

#### 2. Plaintiffs Casper and Alley Have Raised Triable Issues of Material Fact of Reliance on TMS's Omission

As described above, Plaintiffs Casper and Alley both purchased their vehicles from authorized dealers and engaged in conversations with the dealerships, in which the HVAC Defect was not disclosed. *See supra*, Sections V.I & V.G. Plaintiffs Casper and Alley further testified that they would have acted differently had they known about the HVAC Defect when purchasing their vehicle. SUF 95-106; 66. As such, there are triable issues of material fact of reliance on TMS's omission precluding summary judgment on Plaintiffs Casper and Alley's claims for negligent misrepresentation.

### CONCLUSION

Toyota's Motion should be denied for all the reasons set forth above.

1

2

3          DATED: December 18, 2018

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KESSLER TOPAZ
   MELTZER & CHECK, LLP

By:     /s/ Peter A. Muhic
        Joseph H. Meltzer
        jmeltzer@ktmc.com
        Peter A. Muhic
        pmuhic@ktmc.com
        Tyler S. Graden
        tgraden@ktmc.com
        Natalie Lesser
        nlesser@ktmc.com
        280 King of Prussia Road
        Radnor, PA  19087
        Tel.: (610) 667-7706
        Fax:  (610) 667-7056

KIESEL LAW LLP
Paul R. Kiesel
Jeffrey A. Koncius
Nicole Ramirez

Attorneys for Plaintiffs and
the Proposed Classes

CAPSTONE LAW APC
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Tel:  (310) 556-4811
Fax: (310) 943-0396

Attorneys for Plaintiff Norman Beil