**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Paul Stockinger et al,

Plaintiff,

v.

Toyota Motor Sales, U.S.A., Inc.,

Defendant.

2:17-cv-00035-VAP-KSx

**Order DENYING Motion to Certify Class (Dkt. 202) and DENYING Motions to Exclude Expert Opinions, Reports, and Testimony (Dkts. 231–235).**

Before the Court is a Motion to Certify Class (the "Motion") filed by Plaintiffs Paul Stockinger, Elizabeth Stockinger, Gailyn Kennedy, Basudeb Dey, Normal Beil, Yvette Alley, and Eliezer Casper (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated. (Dkt. 202). Defendant Toyota Motor Sales, U.S.A., Inc. ("Defendant") filed its opposition on October 21, 2019 (Dkt. 213), and Plaintiffs replied on December 12, 2019 (Dkt. 226). The parties have also filed several motions to exclude, in whole or in part, the expert opinions, reports, and (the "Motions to Exclude"). (Dkts. 231-235). After considering all papers filed in support of, and in opposition to, the Motion, the Court DENIES the Motion.

# I. BACKGROUND

Plaintiffs filed this lawsuit over three years ago, and the parties are familiar with its history and facts. Plaintiffs are purchasers of Defendant's cars, crossovers,

and sports utility vehicles who allege their vehicles' heating, ventilation, and air conditioning ("HVAC") systems emitted "noxious and foul odors" and blew airborne mold into the passenger compartments of their vehicles.  (Dkt. 204-1 at 11).

The vehicles in question incorporate HVAC systems supplied by a single manufacturer, DENSO Corporation (*id.* at 15), and include 84 distinct models: the AC2 Class Vehicles, which use a DENSO AC2 HVAC module, include the 2009-2015 Sienna, 2007-2015 Lexus ES 350, 2007-2015 Avalon, 2013-2015 Avalon HV, 2009-2015 Venza, 2008-2015 Highlander, 2013-2014 Lexus ES 300h, 2008-2014 Lexus RX 350, and 2010-2014 Lexus RX 450 (*id.* at 12 n.3); and the AC3 Class Vehicles, which use the DENSO AC3 HVAC module, include the 2009-2015 Corolla, 2010-2015 Prius, 2012-2015 Prius V, and 2006-2015 RAV4 (*id.* at 13 n.4) (together, the AC2 Class Vehicles and AC3 Class Vehicles are referred to herein as the "Class Vehicles").

Despite this range of makes, models and production years, Plaintiffs allege a common defect in the HVAC systems of all Class Vehicles systems is responsible for the odors Plaintiffs experienced and that Defendant "knew of the defect and, rather than remedy the defect, actively concealed its existence."  (*Id.* at 15). Specifically, Plaintiffs argue that design of the HVAC systems "allows condensing water to accumulate and allows naturally present organic contaminants to be trapped, kept moist and cultivate organic matter such as microbes, bacteria, mold and fungus."  (*See* Dkt. 204-25 at 28).  Defendant's concealment of the defect, Plaintiffs allege, "subject[ed] Plaintiffs and [putative class] members  . . . to odors

2

and health hazards and caus[ed] them to suffer economic damages, including overpayment for the Class Vehicles."  (Dkt. 204-1 at 11).

Following this Court's ruling on Defendant's motion to dismiss (Dkt. 50) and consolidation of the instant lawsuit with a related case (Dkt. 104), the following claims remain: (1) violations of the California Consumers Legal Remedies Act ("CLRA"), (2) fraud under the laws of California, Oklahoma, Florida, Virginia, and Washington, (3) negligent misrepresentation under the laws of Oklahoma, Florida, and Virginia, (4) breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and the laws of California, Oklahoma, Florida, and Virginia, (5) and violations of the consumer protection statutes of Florida, Virginia, and Washington (*see* Dkt. 204-1 at 23).

Plaintiffs seek to certify the following ten classes:[1]

1. Nationwide AC2 Class: All persons or entities who purchased, leased, or own an "AC2 Class Vehicle" equipped with a DENSO AC2 HVAC module.

2. NationwideAC3 Class: All persons or entities who purchased, leased, or own an "AC3 Class Vehicle" equipped with a DENSO AC3 HVAC module.

---

[1] Plaintiffs' Reply seeks to change the parameters of proposed classes to exclude (1) persons or entities who purchased Class Vehicles other than for personal, family, or household purposes (Dkt. 228-1 at 18 n.13) and (2) all persons and entities who did not purchase or lease their Class Vehicle from a Toyota or Lexus authorized dealership or who own a Class Vehicle not purchased from a Toyota or Lexus authorized dealership (*id.* at 21 n.17).  As the Court explained in its Minute Order Denying Defendant's Motion for Leave to File Surreply, however, the Court declines to consider new evidence or arguments raised in reply.  (*See* Dkt. 248 at 2).

3

United States District Court
Central District of California

3. California AC2 Sub-Class: All persons or entities who purchased or leased an AC2 Class Vehicle in the State of California and all persons or entities in the State of California who purchased, leased or own an AC2Class Vehicle.

4. California AC3 Sub-Class: All persons or entities who purchased or leased an AC3 Class Vehicle in the State of California and all persons or entities in the State of California who purchased, leased or own an AC3Class Vehicle.

5. Song-Beverly AC2 Sub-Class: All persons or entities who purchased or leased an AC2 Class Vehicle in the State of California.

6. Song-BeverlyAC3 Sub-Class: All persons or entities who purchased or leased an AC3 Class Vehicle in the State of California.

7. OklahomaAC3 Sub-Class: All persons or entities who purchased or leased an AC3 Class Vehicle in the State of Oklahoma and all persons or entities in the State of Oklahoma who purchased, leased or own an AC3Class Vehicle.

8. Florida AC2 Sub-Class: All persons or entities who purchased or leased an AC2 Class Vehicle in the State of Florida and all persons or entities in the State of Florida who purchased, leased or own an AC2 Class Vehicle.

9. Virginia AC2 Sub-Class: All persons or entities who purchased or leased an AC2 Class Vehicle in the Commonwealth of Virginia and all persons or entities in the Commonwealth of Virginia who purchased, leased or own an AC2 Class Vehicle.

United States District Court
Central District of California

10. Washington AC2 Sub-Class: All persons or entities who purchased or
leased an AC2 Class Vehicle in the State of Washington and all
persons or entities in the State of Washington who purchased, leased
or own an AC2 Class Vehicle.

(*Id.* at 12–13).  Plaintiffs ask the Court to certify these classes under Federal Rule of Civil Procedure 23(b)(3) or, in the alternative, Rule 23b(2), appoint Plaintiffs as class representatives for the putative classes, and appoint Kessler Topaz Meltzer & Check, LLP as Lead Class Counsel and Capstone Law, APC as Class Counsel.  (*Id.* at 14–15).

## II.    MOTIONS TO EXCLUDE

Before addressing the merits of the certification motion, the court must consider the parties' challenges to expert testimony.  Federal Rule of Evidence 702 governs the admissibility of expert testimony and states:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) the testimony is based on sufficient facts or data;
> c) the testimony is the product of reliable principles and methods; and
> d) the expert has reliably applied the principles and methods to the facts of the case."

United States District Court
Central District of California

Rule 702 emphasizes the Court's "gatekeeping" obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999) (expanding *Daubert* to all expert testimony). The trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The Supreme Court has held that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. In the Ninth Circuit, Rule 702 "contemplates a *broad conception* of expert qualifications." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). "When an expert meets the threshold [for admissibility] . . . the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). The party offering the expert bears the burden of establishing that Rule 702 is satisfied. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 515 (C.D. Cal. 2012) (citations omitted).

The *weight* a court accords expert testimony in class certification involves an inquiry related to but distinct from admissibility. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005–6 (9th Cir. 2018) (citation and subsequent history omitted). In the Ninth Circuit, "a district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met. . . . Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that

evidence is given at the class certification stage." *Id.*  Thus, at the class certification stage, a court may find important evidence that is inadmissible, and equally may attach little or no importance to admissible testimony.

The parties have lodged five motions to exclude expert testimony—two filed by Defendant and three by Plaintiffs.  (Dkts. 231–235).  To resolve the instant Motion for Class Certification, the Court need only reach Defendant's motion to exclude or give no weight to the opinion, reports, and testimony of Steven Parkhurst.

## A.   Plaintiffs' Expert: Steven Parkhurst

In support of their Motion, Plaintiffs proffer the expert report of Steven Parkhurst, an industrial hygienist and environmental scientist.  (Dkt. 204-27).  Parkhurst opines that "the conditions in the HVAC systems of the Class Vehicles support microbial growth, resulting malodors, and health hazards."  (*Id.* at 16).  He further states that "[t]he musty odor detected by Class Vehicle occupants is a metabolic by-product that microorganisms release during reproduction or active growth."  (*Id.* at 5).  Defendant challenges the admissibility of Parkhurst's report, arguing Parkhurst's failure to test any Class Vehicles "creates too great an analytical gap between the actual facts and Parkhurt's opinions."  (Dkt. 233-1 at 6).  In the alternative, Defendant urges the Court to give Parkhurst's report no weight, insisting his opinions are "too conclusory and unsupported by any actual analysis of class vehicles."  (*Id.* at 7).

Insofar as Parkhurst states certain general opinions—*i.e.*, that the design of the HVAC systems "are consistent with the sentinel criteria . . . requisite for micro-

United States District Court
Central District of California

organism growth and resulting odors" and that airborne micro-organisms "may lead to hazardous health effects" (Dkt. 204-27 at 7, 14)—there is no evidence his testimony fails to satisfy *Daubert*, and Defendant makes no such argument. Defendant attacks Parkhurst's conclusions concerning the actual conditions in Class Vehicles, arguing there is a difference between conditions that *may* support mold growth and the *actual existence* of mold.  (*See, e.g.*, Dkt. 233-1 at 12 ("Parkhurst's opinion is not reliable, because he has not tested any vehicle to ascertain that those conditions actually occur in any Class Vehicle.  Parkhurst never inspected any HVAC systems or any class vehicles to observe the existence or amount of any accumulated moisture; the existence, amount, or duration of any microbial growth; or the presence of MVOCs, much less levels sufficient to create a health hazard." (emphasis omitted)).

Defendant's insistence that Parkhurst "has no factual basis to support his conclusion about Class Vehicles" (Dkt. 233-1 at 12) goes too far.  A witness may rely on the admissible findings of other experts, and here Parkhurst bases much of his testimony on the report of Murat Okçuoğlu, an automotive engineering expert for Plaintiffs who analyzed the design of the HVAC systems in the Class Vehicles.  (*See* Dkt. 204-27 at 12–14).  Defendant does not challenge Mr. Okçuoğlu's report.  Parkhurst also considered air and surface samples collected from six Class Vehicles by defense expert Jeffrey Hicks.  (*Id.* at 14–16).

Parkhurst's failure to examine any Class Vehicles does, however, inform the Court's assessment of how much weight to accord his opinions, which the Court finds are entitled to little weight.  Parkhurst's reasoning is almost entirely theoretical: it focuses on how the design of the HVAC systems *could* lead to mold

growth, and mold growth *could* result in health hazards.  This hypothetical analysis may be sound so far as it goes, but it does little to answer whether the HVAC systems at issue here *in fact* develop malodorous and dangerous mold.  Where Parkhurst opines on actual conditions in Class Vehicles, there is little to link his opinions with his analysis.  He states that mold may flourish in certain conditions and those conditions appear to exist in Class Vehicles; from that he concludes the odors Plaintiffs allegedly experienced were caused by mold from defective HVACs. The gaps in Parkhurst's reasoning are not saved by his review of Hicks's data, as he draws conclusions from a handful of outliers and ignores the majority of the sampling.  (*See* Dkt. 204-27 at 14–16).  Parkhurst's opinion that the alleged HVAC defect results in health hazards is particularly unsupported, and Plaintiffs offer no evidence of putative class members suffering harm to their health due to the alleged defect.  The Court thus declines to credit his conclusions.  *See also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995) ("Triton's entire case rests precariously on the opinion of its expert, Douglas Bennett, who never examined the allegedly defective circuit breaker. This substantially impaired his ability to express a reliable expert opinion based upon specific facts. Therefore, we find that Bennett's expert opinion and the inferences Triton seeks to draw from it are not of sufficient quantum or quality . . ..").

Accordingly, the Court DENIES Defendant's motion to exclude Parkhurst's opinions, reports, and testimony, but gives little weight to such evidence.

### III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might

9

not be able to present claims on an individual basis." *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)).  Federal Rule of Civil Procedure 23 governs class actions.  A district court may certify a class only if

> "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. Proc. 23(a).  In addition, a district court must also find that at least one of the following three conditions is satisfied:

> "(1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (quoting Fed. R. Civ. Proc. 23(b)).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties,

United States District Court
Central District of California

common questions of law or fact, etc." *Id.* at 350.  *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 ("the party seeking certification . . . bears the burden of showing she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The court can only certify a class if the court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160–61 (1982).

## IV.  DISCUSSION

Defendant does not contest that Plaintiffs have met the numerosity, typicality, or adequacy requirements of Rule 23(a), as evidenced by Defendant's failure to address these issues in its opposition.  Accordingly, the Court turns to the other requirements for class certification.

### A.  Commonality and Predominance

Although commonality and predominance are distinct inquiries, they apply a similar test with different areas of scrutiny.  "While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate.  Though there is substantial overlap between the two tests, the 23(b)(3) test is 'far more demanding,' *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997), and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation,' *id.* at 623."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

United States District Court
Central District of California

Commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is liberally construed, and the existence of even a single common legal and factual issues is sufficient to satisfy it.  *See Dukes*, 564 U.S. at 359; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  Indeed, Rule 23(a)(2) has been construed permissively.").   As the Ninth Circuit has noted: "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019.  The common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.  What matters to class certification . . . is not the raising of common 'questions'— even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350 (citations and quotation marks omitted).

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate.  *Hanlon*, 150 F.3d at 1022 (citing *Amchem Products*, 521 U.S. 591).  "In essence, this Court must determine whether common evidence and common methodology could be used to prove the elements of the underlying cause of action."  *Butler v. Porsche Cars N. Am., Inc.*,

2017 WL 1398316, at *5 (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)).  The Court must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members.  *In re N.D. Cal., Dalkon Shield IUD Products Liability Litig.*, 693 F.2d 847, 856 (9th Cir. 1982).

As discussed below, Plaintiffs fail to satisfy both the predominance standard and, although it is a closer call, "the relatively 'minimal' showing required to establish commonality," *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon*, 150 F.3d at 1020).

1.   Existence of a Class-Wide Defect

Plaintiffs argue there are numerous questions common to all putative class members, including, *inter alia*, whether the alleged HVAC defect exists in all Class Vehicles.  (Dkt. 204-1 at 25 ("[W]hether the HVAC Defect exists . . . will drive the resolution of this litigation.").  Plaintiffs contend such questions are susceptible to common proof, as courts have found in other automotive defect cases.  (*See id.* at 26 (collecting cases)).

Defendant counters that "there is no common evidence capable of 'generat[ing] common answers apt to drive the resolution of the litigation.'" (Dkt. 213 at 30 (citing *Dukes*, 564 U.S. at 350)).  Defendant asserts that even the fundamental question of whether a class-wide defect exists is not suitable for common resolution, given variances in HVAC design among the many models and model years included in the proposed classes.  (*Id.* at 31).  Defendant also argues "there is no class-wide evidence that HVAC odor will occur in each Class Vehicle. .

United States District Court
Central District of California

. . [O]nly a small percentage of Class Vehicles experience HVAC odor, and complaints differ by model and year.  Moreover, various external factors affect whether odor will occur in any Class Vehicle."  (*Id.*).

Ninth Circuit precedent forecloses Defendant's second argument.  Where the injury alleged is a design defect[2], the Ninth Circuit has "held that proof of the manifestation of a defect is not a prerequisite to class certification."  *Wolin*, 617 F.3d at 1173.  This is because the injury occurred at the point of sale—when a putative member drove her car off the lot—not when the car's HVAC system began producing malodors.  *See Butler*, 2017 WL 1398316, at *6 ("In general, courts have found consumer fraud claims amenable to class-wide treatment where the claims were premised on the existence of a common, class-wide defect present in all of the relevant products at the time of sale.").  For the same reason, individual differences in how putative class members used their vehicles do not defeat commonality.  *See Wolin*, 617 F.3d at 1173 ("Although individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect.").

Defendant argues that a substantial likelihood of manifestation is required where the defect alleged does not pose a safety hazard.  Recent Ninth Circuit cases,

---

[2] The parties dispute how Plaintiffs define their theory of liability.  Plaintiffs argue in the Reply that their "theory of liability is straightforward: the common HVAC Defect is present in all Class Vehicles at the point of sale because these vehicles contain a common design defect."  (Dkt. 228-1 at 9).  Defendant contends the injury alleged is exposure to "an unpleasant and unexpected odor."  (Dkt. 213 at 13).  This dispute results from Plaintiffs' failure to articulate a clear theory of liability; the nearest they come is the following: "As a result of common design defects in the Class' Vehicles [HVAC] systems, noxious and foul odors are emitted into the passenger compartments of the vehicles."  (Dkt. 204-1 at 11).  Nonetheless, for the purpose of this analysis, the Court assumes, but does not decide, that the injury alleged is the defect itself rather than manifestation of odor.

14

United States District Court
Central District of California

however, hold a duty to disclose also arises where the alleged defect is central to a product's function, *see Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176 (N.D. Cal. 2019), and the Court finds that whether HVAC odor undermines the central function of Class Vehicles is a triable question of fact.  Thus, while certain state law claims (*e.g.*, California breach of warranty) may ultimately require evidence that all Class Vehicles are "substantially likely" to exhibit HVAC odor, proof of manifestation does not defeat commonality or predominance at this stage.  *See Keegan*, 284 F.R.D. at 527–29 (reconciling *Wolin* and *Am. Honda Motor Co. v. Superior Court*, 199 Cal. App. 4th 1367 (2011) and concluding that *Wolin* controls the Rule 23 analysis but *American Honda* constitutes persuasive authority on the substantive elements of California law).

Defendant's argument about variance in HVAC design is more persuasive. Robert Kuhn, an expert on automotive HVAC design, opines that "many basic design, software, and other differences exist between each of these subject vehicle models included in both the proposed AC2 and AC3 subclasses."  (Dkt. 214-3 at 4). He specifies that differences include "(1) air inlet design, orientation, and size; (2) location and number of HVAC systems; (3) evaporator design; (4) evaporator coating; (5) HVAC software; and (6) cabin filters."  (*Id.*).  Kuhn's report explains how the design of Class Vehicles' HVAC systems evolved over time and the resulting effect on airflow and evaporation—the precise factors Plaintiffs contend cause malodors.  (*See generally* Dkt. 214-3).  For instance, Denso changed the coatings on the surfaces of its evaporator units several times during the class period, in some cases "to improve the odor mitigation performance" of HVAC systems. (*Id.* at 7).

15

United States District Court
Central District of California

In contrast, Okçuoğlu's findings on the Class Vehicles are relatively superficial.  Plaintiffs allege Okçuoğlu has inspected the HVAC systems of 88 Class Vehicles and determined the same design defect exists in all of them.  (*See generally* Dkt. 204-24).  Although the Court does not question Okçuoğlu's qualifications or methods, he fails to establish that the Class Vehicles are similar enough to conclude the alleged defect is uniform across the class.  *See Butler*, 2017 WL 1398316, at *5 (stating courts at the class certification stage "cannot require Plaintiffs to prove the elements of their substantive case," but courts must still "determine whether . . . expert evidence is persuasive . . .." (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).  His report repeatedly states the design elements of the HVAC systems are "identical or substantially similar" or "mostly interchangeable" but does not explain his reasoning or provide analysis.  (*See* Dkt. 204-24; *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017–18 (D.C. Cir. 1986) ("Class action proponents may not be called upon to prove their case in order to obtain certification.  However, appellees must tender some creditable basis for claiming that differences in design among [the allegedly defective automobile] systems are minor and immaterial.")).

Okçuoğlu's rebuttal report first argues that Kuhn "does not disagree with [Okçuoğlu's] conclusion that [certain] design features are the same or substantially similar" across Class Vehicles and, second, addresses the variances identified in Kuhn's report.  The first argument relies on a deposition taken after Defendant filed its opposition (*see* Dkt. 228-12 at 3–4), and as discussed above, the Court does not credit arguments or evidence raised for the first time in a reply.   Even if the Court were to consider the entire report, however, whether Kuhn challenges Okçuoğlu's

conclusions does not solve the underlying issue—that Okçuoğlu does not support *his own* conclusion.

Okçuoğlu's treatment of the six design differences identified by Kuhn fails to pass the "rigorous analysis" required by Rule 23, *see Falcon*, 457 U.S. at 160–61. For instance, rather than provide evidence that variations in evaporator coatings do not create individualized issues, Okçuoğlu (relying again on deposition testimony the Court does not consider) shifts the burden by arguing Kuhn does not establish the alleged changes are material. (Dkt. 228-12 at 6–7.) Okçuoğlu then argues that "field data on the consequences of different evaporator coatings also demonstrates that evaporator coating changes . . . actually resulted in an increase in odor problem warranty claims" (*id.*), indicating that differences in evaporator coating *are* material. Indeed, by Okçuoğlu's logic, one could argue that the measurable effect changes in evaporator coatings has on odor means it is a defect in the coating, rather than "air flow distribution," "nooks and crevices," or "seal foam design" (Dkt. 228-12 at 3–4) that causes the injury alleged. In any event, the rebuttal does little to disprove—and in some cases supports—the Court's finding that Plaintiffs' claims require individual proof and will produce varying answers. *Compare Salas v. Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 1940619, at *4 (C.D. Cal. Mar. 27, 2019) ("Finally, as plaintiffs point out, Toyota's expert, [Kuhn], agreed that the design of the HVAC system in the Subject Vehicles is the same for every Class Vehicle. Thus, the differences identified by Kuhn do not affect the design defect identified by plaintiffs." (citation omitted)).

"In general, courts have found consumer fraud claims amenable to class-wide treatment where the claims were premised on the existence of a common,

United States District Court
Central District of California

class-wide defect present in all of the relevant products at the time of sale.  By contrast, courts have found class treatment inappropriate where the relevant components of a device differ across class members such that proof that one device is defective may not lend itself to establishing that another device is defective." *Butler*, 2017 WL 1398316, at *6 (citations and quotation marks omitted).  The Court acknowledges the commonality requirement is unexacting, *see Hanlon*, 150 F.3d at 1020, but Plaintiffs must show that at least one question is "of such a nature that . . . determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Every common question offered by Plaintiffs depends on the HVAC systems at issue being similar enough that a defect, if it exists, is present in the same way in all Class Vehicles.  Plaintiffs' failure to show the HVAC systems are sufficiently similar is fatal.

Plaintiffs fail to satisfy predominance for the same reason.  Given the permutations in HVAC design described by Kuhn, the putative class is not cohesive.  Thus, although "nothing in the record definitively precludes an ultimate finding of a common defect," and the "Court makes no determination regarding the merits of Plaintiffs' claims," for purposes of class certification, "Plaintiffs have failed to demonstrate that a fact-intensive inquiry will not be required of many, if not all, of the members of the proposed Class[es]."  *Arabian v. Sony Elecs., Inc.*, 2007 WL 627977, at *1 (S.D. Cal. Feb. 22, 2007).

Reviewing other automotive defect cases helps illustrate the flaws in Plaintiffs' case.  Courts generally find a plaintiff satisfies commonality where the proposed classes are far less varied, often consisting of only a few car models or

years, and there is no evidence the allegedly defective component was redesigned during the class period or varied by car model. *See, e.g.*, *Wolin*, 617 F.3d at 1171–72 (a single car model produced during a three-year period) ("The claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model."); *Keegan*, 284 F.R.D. at 511 (two car models produced over either a two- or three-year period); *Salas*, 2019 WL 1940619, at *1 (a single car model produced during a four-year period). Here, Plaintiffs seek to certify a single class consisting of  thirteen different car models, each produced over a several year period, resulting in a total of 84 model years.

### 2.   Coherence of Class

Plaintiffs propose to certify classes that include "[a]ll persons or entities who purchased, leased, or own" a Class Vehicle (Dkt. 204-1 at 12–13), which would encompass many persons who purchased a used Class Vehicle from a third party in a private sale.  For the reasons discussed below, the Court finds the proposed classes are not cohesive, and individual determinations would overwhelm common ones.

#### i.   *Exposure and Reliance*

A duty to disclose, exposure to, or reliance on an omission is an element of Plaintiffs' claims under: the CLRA; the Florida, Virginia, and Washington consumer protection statutes (Dkt. 204-1 at 37–40); each fraud claim (*id.* at 42–43; Dkt. 213 at 44); and each negligent misrepresentation claim (Dkt. 228-1 at 18; Dkt. 213 at 47).  The Ninth Circuit allows a finder of fact to infer exposure and reliance on an omission where putative class members "interacted with and received information from sales representatives at authorized . . . dealerships prior to purchasing their"

United States District Court
Central District of California

vehicles.  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015).  In

contrast, "[a] presumption of reliance does not arise when class members were

exposed to quite disparate information . . ." *Mazza v. Am. Honda Motor Co.*, 666

F.3d 581, 596 (9th Cir. 2012) (quotations and citation omitted); *see also Butler*,

2017 WL 1398316, at *10 ("[D]istrict courts have found that individualized issues

predominated over common issues in UCL and CLRA cases where the information

to which class members were exposed was not uniform and where the evidence

establish[ed] that awareness of a disclosure would almost certainly vary from

consumer to consumer." (citations and quotations omitted)).  Because the inference

of exposure and reliance is not available in sales outside an authorized dealership,

individual inquiries would be required here to determine whether putative class

members purchased their Class Vehicles from Toyota or a third party.  *See Butler*,

2017 WL 1398316, at *11 ("[G]iven the range of purchasing situations across the

class, some class members were likely not exposed to a Porsche representation with

omissions, and would likely not have been aware of a disclosure from Porsche had a

disclosure been made.  . . . Although a class member who purchased a Class

Vehicle from a Porsche dealership would have interacted with a Porsche

representative and viewed material from Porsche—such as stickers on the vehicle or

brochures about the vehicle—prior to purchase, a class member who purchased a

used Class Vehicle from a third party may not have interacted with a Porsche

representative at all prior to purchase, and indeed may not have viewed any material

or advertisements from Porsche.  Given the potential range of purchasing situations

across the class, awareness of a disclosure . . . would almost certainly vary from

consumer to consumer."); *Oddo v. Arcoaire Air Conditioning & Heating*, 2019 WL

1460627, at *8 (C.D. Cal. Mar. 22, 2019) ("Plaintiffs do not explain how

homebuyers could have suffered an injury in the form of paying a premium price

United States District Court
Central District of California

for their HVAC units when they purchased a home that already had the Carrier HVAC system installed.  Thus, it appears that homebuyers, if they suffered any injury at all, suffered an injury of a different nature than purchasers of new HVAC units.").  Accordingly, the Court finds individual issues predominate with respect to whether any given class member would have been exposed to Defendant's disclosure of the alleged defect if it had made one.

For the same reason, individual issues predominate in Plaintiffs' implied warranty claims.  Plaintiffs contend the basic "inquiry is whether the Class Vehicles were sold or leased 'in a safe condition and substantially free of defects'" under the implied warranty laws of California, Oklahoma, Florida, and Virginia.  (Dkt. 204-1 at 40 (citation omitted)).  California's Song-Beverly Act, however, applies only to "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes."  Cal. Civ. Code § 1791 (West); *see also Leber v. DKD of Davis, Inc.*, 237 Cal. App. 4th 402, 407 (2015).  The proposed Song-Beverly Sub-Classes include putative class members who have purchased used Class Vehicles, however, and as Defendant points out, "cover[] all 'persons' or 'entities' regardless of whether they are consumers" (Dkt. 213 at 39).  The Court agrees that Plaintiffs "offer no common evidence capable of resolving th[ese] issue[s] on a class-wide basis."  (*Id.*).

The breadth of the proposed classes also implicates differences between the laws of California, Oklahoma, and Florida as to the privity requirement for bringing an implied warranty claim.[3]  Privity is required by California and Florida, *see*

[3] Defendant also points out that the Court dismissed Plaintiffs' implied warranty claims under Virginia law to the extent they seek economic damages (Dkt. 50 at

United States District Court
Central District of California

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) ("In California, a plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant. . . . [T]here is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale.") (citations and quotations omitted)); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1222 (S.D. Fla. 2017) ("[T]he Court evaluates Plaintiffs' claim pursuant to Florida law, which requires privity of contract for an implied warranty to exist." (citation omitted)), whereas the Court is not aware of any Oklahoma authority that speaks to whether a plaintiff may hold liable the original merchant, despite purchasing the goods used from a third party, *cf. Elden v. Simmons*, 1981 OK 81 (1981).  Privity is absent where a putative class member purchased her car from a third party, barring liability.  Litigating Plaintiffs' implied warranty claims thus requires individual evidence *within* the California and Florida subclass with respect to privity and, because the elements vary, *between* each subclass with an implied warranty claim.

In sum, it is Plaintiffs' burden to "affirmatively demonstrate" that class certification is appropriate. *See Dukes*, 564 U.S. at 350. Based on the current record, the Court can only speculate regarding the nature of the alleged defect in this case, whether exposure to and reliance upon Defendant's omission can be proven on a class-wide basis, or whether variations in state laws require individualized inquiries. Thus, Plaintiffs have failed to meet their burden to show that their claims are amenable to class-wide proof.

## B.   Superiority

---

34), and Plaintiffs may therefore be unable to maintain such claims under Rule 23(b)(3).

United States District Court
Central District of California

Rule 23(b)(3) also requires that the Court find a class action proceedings superior to other methods for the fair and efficient adjudication of the controversy. "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed.2005)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. *See Zinser*, 253 F.3d at 1190–1193.

Plaintiffs assert the Rule 23(b)(3) factors support finding a class action is the superior method of adjudicating their claims. They first argue that the putative class members have little interest in individually controlling the prosecution. (Dkt. 204-1 at 48). The Court agrees; vehicle defect cases are often tailor-made for class resolution, as "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis," *Wolin*, 617 F.3d at 1175.

Plaintiffs also contend concentration in one forum is desirable, because this case involves a "core set of documents, fact witness testimony and expert testimony," and "[a]djudication of those core legal and factual issues in a single proceeding is more efficient than repetitive proceedings addressing the same facts and issues." (Dkt. 204-1 at 49). The Court notes Plaintiffs provide no support for

this proposition, but neither does Defendant address it.  Thus, the Court weighs it slightly in favor of superiority.

Defendant's primary attack on the superiority question is that "the predominating individual issues here would require mini-trials and render any class trial 'unmanageable'" (Dkt. 213 at 54).  The Court agrees.  As an initial matter, Plaintiffs seek to certify ten classes in this suit, an unusually high number as compared to similar cases.  *See, e.g.*, *Salas*, 2019 WL 1940619, at *1 (two sub-classes); *Wolin*, 617 F.3d at 1171 (two classes); *Keegan*, 284 F.R.D. at 552 (certifying two class and splitting the second into three sub-classes); *Philips*, 2016 WL 7428810, at *5 (denying certification of three classes); *Walsh*, 807 F.2d at 1001–2 (denying certification of three classes).  Although a large number of classes does not make class adjudication inappropriate, it increases the likelihood that trial could become unmanageable.

A class action is not the superior method of resolving Plaintiffs' causes of action for two reasons.  First, the earlier commonality and predominance analysis reveals an enormous variety and quantity of evidence will be needed.  Given the sparseness of Okçuoğlu's report, Plaintiffs will need to produce various sets of evidence to determine whether there is one, substantially identical HVAC defect across Class Vehicles or several distinct defects that happen to produce similar symptoms.  Plaintiffs' 17 claims will then require individualized evidence, jury instructions, and verdict forms.  Individual inquiries will then be needed even within certain classes to determine whether putative class members purchased or leased their vehicles from Defendant or a third party, and whether they did so for personal or business use.

United States District Court
Central District of California

24

United States District Court
Central District of California

Also relevant to this determination are differences in state law not yet discussed, such as statutes of limitations, accrual, notice, and scienter requirements. (*See generally* Dkt. 213-1 (describing relevant differences in state laws)). Resolving disparate claims with different elements and requirements would be unwieldy at best.  *See, e.g.*, *Mazza*, 666 F.3d at 591 (finding material differences in the scienter and reliance elements of states' consumer protection laws, as well as the remedies available); *Keegan*, 284 F.R.D. at 544 (finding material differences in statutes of limitations required subclasses).  The Court finds these individualized differences will effectively require trials-within-a-trial, undercutting the efficiency of class action adjudication.

Finally, the parties devote the majority of their superiority discussion to Plaintiffs' nationwide CLRA claim.  (Dkt. 213 at 54–56; 228-1 at 32–33).  Their debate revolves around the effect of *Mazza* on this case.  (*Id.*).  In *Mazza*, the Ninth Circuit applied California's choice-of-law rules to a proposed nationwide CLRA class and concluded that the extension of California law to non-residents who purchased their cars outside the state was unwarranted.  *Mazza*, 666 F.3d at 589–94.  The *Mazza* court found "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory," *id.* at 592 (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 91), and, "[c]onversely, California's interest in applying its law to residents of foreign states is attenuated" *id.* at 594. *Mazza* articulated generalizable principles, though its ultimate conclusion was limited to "the facts and circumstances of th[at] case," *id.* at 594.

Defendant contends *Mazza* forecloses the certification of a nationwide CLRA class. (Dkt. 213 at 54). Plaintiffs counter that "*Mazza* does not stand for the proposition that all consumer class actions must be adjudicated under the laws of the individual states . . .," and "[d]istrict courts routinely apply the California consumer protection laws at issue in *Mazza* . . . to nationwide classes." (Dkt. 228-1 at 32 (quoting *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012) (quotations omitted)). Plaintiffs are correct that *Mazza* did not create a bright-line prohibition on nationwide CLRA classes. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 657 (C.D. Cal. 2014) ("*Mazza* could not have abrogated the California Supreme Court's instruction that the governmental interest test is a case-by-case determination . . .. [I]f . . . all consumer class actions must be adjudicated under the laws of the different states as a matter of law, nationwide consumer class actions would become unmanageable and impossible to certify, and such an outcome would be contrary to the express purpose of CAFA to assure fair and prompt recoveries for class members with legitimate claims." (quotations and citation omitted)).

Plaintiffs contend that, having made a threshold showing that imposing California law nationwide would not be unconstitutional, the burden shifts to Defendant to demonstrate that foreign law should apply, which Defendant has failed to do.[4] (Dkt. 228-1 at 32–33; *see Washington Mutual Bank, FA v. Superior Court*,

---

[4] Plaintiffs plead no facts showing "California has a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair." *Keegan*, 284 F.R.D. at 538 (citations and quotations omitted). Plaintiffs merely assert, in conclusory fashion, "Plaintiffs have met their burden to show that California has sufficient contacts to the claims at issue to ensure that the application of California law is constitutional." (Dkt. 204-1 at 36). In the interests of thoroughness, the Court nonetheless proceeds to the second step of the analysis.

24 Cal.4th 906, 921 (2001) (explaining the defendant must "shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims.")).  The Court disagrees.

Defendant has proffered extensive appendices detailing differences in state consumer protection statutes.  (Dkt. 213-1 at 8–19; *see also* Dkt. 213 at 56 n.19 (collecting cases)).  Its evidence shows these laws vary widely in terms of reliance and scienter requirements, statutes of limitations periods and accrual, pre-suit notice requirements, and even *whether* class actions are allowed for consumer protection claims.  (*Id.*).  The Court is persuaded these differences are material—in some cases, likely dispositive—and require the application of each jurisdiction's law to the transactions that took place there to protect each state's interest in "mak[ing] its own reasoned judgment about what conduct is permitted or proscribed within its borders," *Mazza*, 666 F.3d at 591.  *See id.* at 591–94 (finding differences in scienter, reliance, and available remedies "material" and, therefore, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."); *Keegan*, 284 F.R.D. at 544–45 (holding variances in statutes of limitations and accrual even in a three-state class meant "the class would include individuals whose claims are time-barred under the law of their own" and "would create fairness issues. . ..").

The cases Plaintiffs cite are distinguishable.  In *Bruno v. Eckhart Corp.*, the party opposing certification merely cited *Mazza* as "a case reaching the legal conclusion they urged" and "provide[d] no law from any jurisdiction for the Court to consider, instead citing another court's conclusion that there are material conflicts between California's consumer protection laws and the consumer protection laws of

United States District Court
Central District of California

the other forty-nine states" *id.*, 280 F.R.D. at 549 (citations and quotations omitted). The same was true in *Allen*, where the court noted, "Defendants have not borne their burden of demonstrating that foreign law applies.  Defendants assert that *Mazza* and other cases have held that there is an actual conflict in the consumer protection laws of the various states, but they fail to provide any case-specific analysis addressing the differences among the state laws at issue." *Id.*, 300 F.R.D. at 658.  Here, there is no "wholesale reliance on *Mazza*," *id.* at 658 (citing *Bruno*, 280 F.R.D. at 547); rather Defendant provided a thorough survey of state consumer protection laws.  Based on the record, the Court finds applying the CLRA to a nationwide class is inappropriate.

The *Keegan* court distinguished *Mazza* on the grounds that the latter involved class members who were "exposed to quite disparate information from various representatives of the defendant," *Mazza*, 666 F.3d at 596; in *Keegan*, however, there was "no question of different statements being made to different groups of consumers, or certain class members being exposed to information others were not," and therefore no concern whether "potential differences in state law concerning the proof of reliance that is necessary to prevail on consumer protection claims," *id.* at 542.  Given the proposed classes' inclusion of persons who had no interaction with Defendant's representatives, this case is more analogous to *Mazza*.

Accordingly, Plaintiffs' consumer protection claims will require applying the law of all 50 states.  The Court is convinced this vast undertaking would make a class action unmanageable.  In *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096 (C.D. Cal. 2012), the court described the challenges of such a case: "[t]he trial would devolve quickly into an unmanageable morass of divergent legal issues.  Certain

evidence would be admissible for some class members but not others.  Fifty

different sets of jury instructions and verdict forms would have to be crafted with

the jury having the daunting task of applying those instructions and verdicts to a

nationwide class encompassing millions of consumers.  Needless to say, the trial

would be incredibly time-consuming, unnecessarily disjointed, hopelessly

confusing, and unfairly prejudicial to . . . many, if not all, of the members of the

class." *Id.* 1104.  The *Gianino* court concluded, "Justice demands that this case not

be adjudicated as a nationwide class action." *Id.* at 1103–04.  The Court finds the

same concerns would attend the present lawsuit, and, therefore, a nationwide class

action is not the super method of adjudication.

## C.   Certification Under Rule 23(b)(2)

In the alternative, Plaintiffs seek certification of the following class under

Federal Rule of Civil Procedure 23(b)(2): All persons or entities who currently own

or lease a Class Vehicle (the "Nationwide 23(b)(2) Class").  (Dkt. 204-1 at 14).

Rule 23(b)(2) applies where "the party opposing the class has acted or refused to act

on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."

"Class certification under Rule 23(b)(2) is appropriate only where the primary relief

sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986.

Plaintiffs argue that "[i]njunctive relief is appropriate here to address TMS'

ongoing failure to remedy the HVAC Defect or alleviate the foul and noxious odors

caused by the HVAC Defect."  (Dkt. 204-1 at 49).  They request "injunctive and

equitable relief in the form of an order: (1) enjoining TMS from denying warranty

claims associated with remedying HVAC odor and from declaring HVAC odor a

United States District Court
Central District of California

maintenance issue rather than a repair covered under warranty; (2) requiring TMS to extend warranty coverage to provide, at no expense to current owners and lessees of Class Vehicles, evaporator assembly cleanings and charcoal filter installation and replacement every 10,000 miles for 10 years from date of purchase or lease; and (3) requiring TMS to notify all current owners and lessees of Class Vehicles of the HVAC Defect, resulting odor and health hazards, the extended warranty coverage, and that the repairs will be provided free of charge." (*Id.* at 50).

Defendant opposes Rule 23(b)(2) certification, arguing "[t]he predominant relief sought by Plaintiffs here is damages. . . .  Plaintiffs' requested injunctive relief is merely a basis for TMS to incur the costs of repairs by dealers." (Dkt. 213 at 57).

The Supreme Court has held that claims for monetary relief may not be certified under Rule 23(b)(2) where "monetary relief is not incidental to the injunctive or declaratory relief." *Dukes*, 564 U.S. at 360.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360–61 (citations and quotations omitted).

Certification of the proposed Nationwide 23(b)(2) Class is not appropriate. As a threshold matter, this Court previously dismissed Plaintiffs' claim for equitable relief under the CLRA (Dkt. 50 at 55), and, Plaintiffs do not even identify under what cause of action they seek injunctive relief (*see* Dkt. 204-1 at 49–50).  Indeed, Plaintiffs' argument for Rule 23(b)(2) certification is perfunctory in all respects. (*See id.*).  Moreover, given the lack of cohesiveness in the proposed class—*i.e.*, the inclusion of persons who never interacted with Defendant's representatives—the Court finds that Plaintiffs are not challenging a "pattern or practice that is generally applicable to the class as a whole."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125.

The Court also find the equitable relief sought here is little different from the monetary damages Plaintiffs claim under 23(b)(3).  An injunction requiring Defendant to extend warranty coverage, honor all repair claims associated with HVAC odor, and provide evaporator assembly cleanings and install charcoal filters (Dkt. 204-1 at 50) is almost indistinguishable from Plaintiffs' request for benefit-of-the-bargain damages equal to "the average cost necessary to remediate the defect absent redesign of the HVAC Systems" by "install[ing] high-performance charcoal filters, changed at regular intervals, and clean any microbes which have accumulated within the evaporator housing to repair their vehicles" (id. at 47). "Though framed in terms of declaratory and injunctive relief, this class claim is for monetary damages. 'Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'"  *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 561 (C.D. Cal. 2012) (quoting *Great–West Life & Annuity Ins. Co. v. Knudson*, 534

U.S. 204, 210 (2002)); *accord Philips*, 2016 WL 7428810, at *25; *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481-82 (N.D. Cal. 2014).

Accordingly, the Court DENIES certification under Rule 23(b)(2).

## V.    CONCLUSION

The Court therefore DENIES Plaintiffs' Motion for Class Certification and DENIES the Parties' Motions to Exclude.

**IT IS SO ORDERED.**

Dated:      3/3/20

Virginia A. Phillips
Chief United States District Judge